# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

Student DOE #1, Student DOE #2, Student DOE #3, Student DOE #4, Student DOE #5, and Student DOE #6,

      *Plaintiffs*,[1]

  v.

Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security, Todd LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, Ricky J. PATEL, in his official capacity as Newark Special Agent in Charge, Homeland Security Investigations, U.S. Immigration and Customs Enforcement, and John TSOUKARIS, in his official capacity as Newark Field Office Director, Enforcement and Removal Operation, U.S. Immigration and Customs Enforcement,

      *Defendants*.

Case No. _____

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

[1] Plaintiffs' Motion to Proceed Under Pseudonyms is forthcoming.

## INTRODUCTION

1.      Since late March 2025, hundreds – if not thousands – of students and recent graduates with F-1 visas have had their Student Exchange and Visitor Information System ("SEVIS")[2] records abruptly terminated, effectively stripping them of their F-1 status.[3] Upon information and belief, Immigration and Customs Enforcement ("ICE") terminated these SEVIS records – and effectively terminated F-1 student status, considering the benefits and privileges that depend upon having

---

[2] The Student and Exchange Visitor Information System ("SEVIS") is "the web-based system that [DHS] uses to maintain information regarding" F-1 "students studying in the United States[.]" U.S. Dep't of Homeland Sec., *About SEVIS*, *Study in the States*, https://studyinthestates.dhs.gov/site/about-sevis (last visited Apr. 18, 2025). The database tracks students' compliance with their status.

[3]      Inside Higher Ed, *International Student Visas Revoked*, https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked (last accessed Apr. 21, 2025) (reporting that "[a]s of April 21, over 250 colleges and universities have identified 1,680-plus international students and recent graduates who have had their legal status changed by the State Department"); *see also* Shev Dalal-Dheini & Amy Grenier, Policy Brief: The Scope of Immigration Enforcement Actions Against International Students at 1, AILA (Apr. 17, 2025), https://www.aila.org/library/policy-brief-the-scope-of-immigration-enforcement-actions-against-international-students ("According to a verified source, ICE has terminated 4,736 SEVIS records since January 20, 2025, the majority on F-1 status.").

an active SEVIS record – in violation of the relevant regulations, and without notice, adequate explanation, or an opportunity to be heard.[4]

2.     The termination of a student's SEVIS record, and the termination of F-1 student status that is communicated as a result, causes irreparable harm, including immediately terminating the student's employment authorization, foreclosing future F-1 based employment applications like Curricular Practical Training ("CPT") and Optional Practical Training ("OPT"), precluding the student from continuing and completing their course of study, preventing the student from reentering the United States on his or her F-1 visa should they depart, and immediately rendering the student vulnerable to ICE arrest, detention, and deportation. *See infra* ¶ 42.

3.     Plaintiffs Students Doe ## 2, 3, 4, 5, and 6 are current PhD and master's degree students at Rutgers University ("Rutgers") – some of whom also engage in authorized employment conducting research – and Plaintiff Student Doe #1 is a recent graduate of Rutgers who has been living and working in the United States under OPT. OPT permits recent graduates on F-1 visas to accept temporary employment "directly related to the student's major area of study," including after

---

[4] In accordance with Local Civil Rule 10.1, Plaintiffs, who will be moving to appear pseudonymously, can be reached at the address of their undersigned counsel. The office address of Defendant Kristi Noem is 2707 Martin Luther King Jr. Ave. SE, Washington D.C. 20528-0525. The office address of Defendant Todd Lyons is 500 12th Street SW, Washington D.C. 20024. The office address of Defendant Ricky J. Patel is 620 Frelinghuysen Avenue, Newark, N.J. 07114 and that of Defendant John Tsoukaris is 970 Broad Street, 11th Floor, Newark, New Jersey, 07102.

they have completed their course of study. 8 CFR § 214.2(f)(10)(ii).[5] Plaintiffs

Students Doe ## 2, 3, 4, 5, and 6, would be prevented from seeking OPT after

graduation if their SEVIS records remain terminated because their Designated

School Official ("DSO") at Rutgers cannot recommend OPT or "issue a signed Form

I-20 indicating that recommendation" as required under 8 CFR 214.2(f)(11)(i).

4.    Plaintiffs are all citizens of India or China. Plaintiffs are accomplished

electrical engineers, software developers, biomedical scientists, and students in these

fields. All have worked very hard to achieve what they have in their academic

careers, in which they are seeking or have recently obtained advanced graduate

degrees. They have also invested significant time and money in their education. In

choosing to come to the United States to study, Plaintiffs relied on existing laws,

regulations, and policies.

5.    All Plaintiffs were among the students whose SEVIS records were

recently terminated, reflecting termination of their F-1 student status.

6.    Between April 3 and April 8, 2025, ICE terminated Plaintiffs' SEVIS

records. The termination notations for Students Doe ## 1, 2, 3 and 6 initially read

"OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in

---

[5] U.S. Citizenship and Immigration Services, *Optional Practical Training (OPT) for F-1 Students*, https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-opt-for-f-1-students (last updated Nov. 25, 2024). Students who participate in OPT usually do so after the completion of their studies.

criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Sometime after the initial termination and before April 9, ICE changed their termination notations in SEVIS to "OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." The SEVIS records for Students Doe ## 4 and 5 were terminated on April 8 and were marked as "OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." ICE has provided no additional information as to the reason for termination.

7.    Student Doe #1 has also received a notification from the Student and Exchange Visitor Program ("SEVP") unit of ICE stating that their OPT authorization period had ended and notifying them that their "SEVP portal account will close on October 5, 2025, with the account becoming read-only on April 19, 2025." *See* Student Doe #1 Decl. ¶ 13. The only notification all other Plaintiffs received was from a DSO – a Rutgers employee who learned of the terminations through the SEVIS system. *See* Student Doe #2 Decl. ¶ 9; Student Doe #3 Decl. ¶ 10; Student Doe # 4 Decl. ¶ 9; Student Doe #5 Decl. ¶ 8; Student Doe #6 Decl. ¶ 14.

8.    The grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiffs' SEVIS records or F-1 student status. Prior to the terminations, Plaintiffs were all "maintaining status," in that they were "making normal progress toward completing a course of study" as contemplated by the

governing regulation, 8 C.F.R. § 214.2(f)(5)(i), or were participating in OPT programs as their F-1 visas allowed. ICE also terminated SEVIS records and the status reflected therein without identifying any lawful basis for such termination. *See* 8 C.F.R. § 214.1(d) (exclusive list of termination grounds).

9.      Because of the termination of their SEVIS records, several Plaintiffs immediately lost employment authorization, creating an immediate financial crisis for some Plaintiffs and their families who rely on funds from their authorized employment to pay for rent and daily necessities. As Plaintiffs detail in their sealed declarations, appended to the application for a Temporary Restraining Order filed herewith, some are now facing housing insecurity and the prospect of being unable to meet other basic needs. *See* Student Doe #1 Decl. ¶ 17 ("By the end of April I do not know how I will afford these expenses," including rent, insurance, phone bill, groceries, and car lease); Student Doe #4 Decl. ¶ 13 (explaining the loss of their annual stipend as a Research Assistant resulting from the SEVIS record termination, and that "now that I am without an income I expect to run out of money in approximately two months," which is "extremely stressful for me and my family"). At least one Plaintiff has family abroad relying on their financial support; the Plaintiff is now worried about the well-being of their family in the absence of this support. *See* Student Doe #1 Decl. ¶¶ 15, 17.

10.    The termination also upends Plaintiffs' promising academic careers. For those in their OPT period or other authorized employment, even a temporary interruption in employment authorization can result in their being terminated from their employment, and facing much greater difficulty in finding jobs in their fields of study. Moreover, due to their reasonable fear of enforcement actions by ICE, some Plaintiffs do not feel safe going outside, *see* Student Doe #1 Decl. ¶ 18, presenting their research, Student Doe #3 Decl. ¶ 13, or traveling domestically to meet with other academics about their research, *see* Student Doe #5 Decl. ¶ 11, rendering them unable to complete their studies or fulfill their academic objectives, *see* Student Doe #6 Decl. ¶ 19 ("I am afraid to leave my home out of fear that I will be detained. I feel that I am in a home prison."). The high level of stress and fear they are experiencing itself interferes with their ability to study, research, and work. *See* Student Doe #2 ¶ 14 ("Until now, I had been performing well this semester, but suddenly feeling unable to attend classes and exams puts my strong academic standing at risk[.]"); Student Doe #5 Decl. ¶ 10 ("I have sought therapy and been diagnosed with post-traumatic stress disorder (PTSD) for events that happened prior in my life, and the SEVIS termination is increasing the distress that I am experiencing.").

11.    Students whose SEVIS records have been terminated also cannot re-enter the United States on the terminated SEVIS record; if they need to return home

to attend to a family matter the SEVIS termination would prevent them from returning to their studies or OPT in New Jersey.

12.     In practice, students who have had their SEVIS record terminated are at imminent risk of arrest and detention by ICE.

13.     ICE's website informs students that "[w]hen an F-1/M-1 SEVIS record is terminated," "Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student," confirming that the student is a potential target of removal – or at least that the student is expected to depart from the United States – and thus at risk of ICE detention.[6] Indeed, once a student's SEVIS record is terminated, that student "is no longer in an authorized period of stay in the United States."[7] That puts them at risk of enforcement, since a noncitizen "who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status" in which they were admitted, or fails "to comply with the conditions of any such status, is deportable." 8 U.S.C. § 1227(a)(1)(C)(i).

14.     And regardless of the technical legal import of a SEVIS record termination, Plaintiffs' practical risk of ICE detention is currently very serious. ICE

---

[6] U.S. Dep't of Homeland Sec., *Terminate a Student*, *Study in the States*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last updated Nov. 7, 2024).

[7] U.S. Dep't of Homeland Sec., *Maintaining Accurate SEVIS Records, Study in the States*, https://studyinthestates.dhs.gov/schools/report/maintaining-accurate-sevis-records (last visited Apr. 18, 2025).

has recently detained other students whose F-1 visas and/or SEVIS status have been revoked. For example, after ICE terminated the SEVIS record of Tufts child development PhD student Rümeysa Öztürk, Ms. Öztürk was suddenly and without notice arrested on the street by plainclothes ICE officers.[8] ICE officers drove her around to multiple locations in New England before finally detaining her in an ICE detention center in Louisiana and placing her in removal proceedings, where she has now been denied release on bond though there is no evidence of flight risk or danger to the community.[9] The only removal charge against her is based upon her F-1 student status having been terminated.[10] Likewise, Aditya Harsono, a 33-year-old father living in Minnesota, while completing OPT employment at a healthcare company and applying for status through his U.S. citizen wife and caring for his young daughter, was arrested without prior notice by plainclothes ICE officers.

---

[8] Opinion and Order at 6, *Öztürk v. Hyde et al.*, No. 1:25-cv-00374 (WKS) (D. Vt. Apr. 18, 2025), ECF No. 104.

[9] *Id.* at 7, 11.

[10] First Am. Pet. for Writ of Habeas Corpus and Compl. at 8, ECF No. 12, *Öztürk v. Hyde et al.*, No. 1:25-cv-00374-WKS (explaining that Öztürk's "SEVIS designation had been terminated" and the charging document subsequently issued to her alleged her removability only on the fact that her visa had been revoked by the U.S. Department of State and that she was deportable under INA § 237(a)(1)(B), which provides that individuals are deportable when they are in the United States "in violation of [the INA] or any other law of the United States" or when their "nonimmigrant visa . . . has been revoked" at the discretion of the consular officer or the Secretary of State; Chloe Atkins & Phil Helsel, *Video Shows Tufts Graduate Student Grabbed Off the Street by Federal Immigration Officials*, NBC News (Mar. 26, 2025), https://www.nbcnews.com/news/us-news/federal-immigration-authorities-detain-international-tufts-graduate-st-rcna198158.

Although an immigration judge granted Mr. Harsono bond, ICE appealed that decision, leaving him detained in a county jail that contracts with ICE.[11] Although these individuals are not parties in this action, they demonstrate the risks that Plaintiffs face.

15.    As a result, Plaintiffs now live in constant fear that they may be arrested, detained, and deported by DHS. *See* Student Doe #1 Decl. ¶ 18 ("I am looking over my shoulder everywhere I go. I don't know whether I should go outside, because I hear that ICE can come at any time and arrest me. . . . The fear is debilitating."); Student Doe #5 Decl. ¶ 11 (stating the fact that "I may be subject to enforcement actions" by ICE "has caused me worry about leaving my home"); Student Doe #6 Decl. ¶ 19 ("I wake up several times in the middle of the night thinking that someone is there to get me.").

16.    Due Process, which is guaranteed by the Fifth Amendment to the Constitution of the United States, requires notice and a meaningful opportunity to be heard. No such process was provided here.

---

[11] Samantha Davis, *Marshall Resident Detained by ICE on Student Visa*, Marshall Independent (Apr. 14, 2025), https://www.marshallindependent.com/news/local-news/2025/04/marshall-resident-detained-by-ice-on-student-visa/ (reporting the detention of an F-1 student visa-holder working under OPT a few days after his visa was revoked); Becky Z. Dernbach, *Immigration Judge Rules Marshall Man Who Protested Police Killings is 'Removable,'* Sahan Journal (Apr. 17, 2025), https://sahanjournal.com/immigration/marshall-minnesota-ice-arrest-deportation-aditya-harsono/.

17.    Upon information and belief, ICE's policy of unlawfully and unconstitutionally terminating SEVIS records is designed to coerce international students, including Plaintiffs, into abandoning their studies and leaving the country, despite their ongoing academic progress and their contributions to Rutgers and the United States. *See infra* ¶ 64.

18.    By unilaterally terminating students' SEVIS records on grounds that fall outside the regulatory limits, and providing only vague explanatory notations without any notice to students or opportunity to contest the grounds for these terminations, ICE is misusing SEVIS to circumvent the law and the Constitution, and to drive international students out of the country without due process and in violation of DHS regulations. As Rutgers President Jonathan Holloway recently wrote in a message to the Rutgers community, even a small number of status terminations "is understandably chilling to our international community."[12]

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b) (federal defendant), and 5 U.S.C. § 702 (right of review of agency action).

---

[12] Letter from Jonathan Holloway, President and University Professor, Rutgers University (Apr. 6, 2025), https://www.rutgers.edu/president/we-support-our-international-community-at-rutgers.

20.    Defendants have waived their sovereign immunity for suits seeking injunctive relief against constitutional and statutory violations. 5 U.S.C. § 702.

21.    Venue is proper in the District of New Jersey under 28 U.S.C. §1391(e) as Plaintiffs reside in New Jersey and no real property is involved in the action, and because a substantial part of the events giving rise to this claim occurred in New Jersey.

22.    An actual justiciable question exists between the parties under 28 U.S.C. § 2201 and this Court has the authority to issue declaratory and injunctive relief. *Id.* §§ 2201, 2202.

23.    SEVIS record termination is not reviewable before an Immigration Judge. *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182-83 (3d. Cir. 2019). Thus, no other forum exists for Plaintiffs to bring these claims.

## **PARTIES**

24.    **Student Doe #1** is a native and citizen of India who currently resides in New Jersey and is in their initial year of OPT after recently completing a degree in computer science. Their SEVIS record was initially terminated on or about April 5.

25.    **Student Doe #2** is a native and citizen of China who currently resides in New Jersey and is a master's student in health science and anticipates entering a

PhD program this fall. Their SEVIS record was initially terminated on or about April 4.

26.    **Student Doe #3** is a native and citizen of China who currently resides in New Jersey and is a PhD candidate in engineering. Their SEVIS record was initially terminated on or about April 5.

27.    **Student Doe #4** is a native and citizen of China who currently resides in New Jersey and is a PhD candidate studying health science with an anticipated graduation date of August 2025. Their SEVIS record was initially terminated on or about April 8.

28.    **Student Doe #5** is a native and citizen of China who currently resides in New Jersey and is a PhD candidate in computer engineering. Their SEVIS record was initially terminated on or about April 8.

29.    **Student Doe #6** is a native and citizen of India who currently resides in New Jersey and is a PhD candidate in engineering. Their SEVIS record was initially terminated on or about April 3.

30.    **Defendant Kristi Noem** is sued in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. Defendant Noem has broad authority over the operation and enforcement of U.S. immigration laws.

31.    **Defendant Todd Lyons** is sued in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"), a component of DHS. Defendant Lyons has authority over the operations of ICE and broad authority over the enforcement of immigration laws.

32.    **Defendant Ricky J. Patel** is sued in his official capacity as the Special Agent in Charge for the Newark Field Office of ICE Homeland Security Investigations. Upon information and belief, Defendant Patel has authority over the operations of the Student and Exchange Visitor Program and SEVIS and is responsible for the enforcement of immigration laws within this district.

33.    **Defendant John Tsoukaris** is sued in his official capacity as the Field Office Director for the Newark Field Office of ICE Enforcement and Removal Operations. Defendant Tsoukaris is responsible for the enforcement of immigration laws within this district.

## FACTS

### F-1 Student Visas and Student Status

34.    Under 8 U.S.C. § 1101(a)(15)(F), noncitizen students who enroll in government-approved academic institutions in the United States are eligible for an F-1 student visa. Students are issued the F-1 visa by the U.S. Department of State, and this visa allows them to enter the United States, after which they are granted F-1 student status. They are permitted to remain in the United States for the duration

of this status so long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f).

35.     An F-1 student visa differs from F-1 student status. The F-1 student visa refers only to the document that grants permission for a noncitizen student to enter the United States, whereas F-1 student status refers to that student's formal immigration classification in the United States after they have entered. *See, e.g.*, 22 C.F.R. § 41.112(a) (noting that the "period of visa validity has no relation to the period of time the immigration authorities at a port of entry may authorize the alien to stay in the United States").

36.     ICE's Student and Exchange Visitor Program ("SEVP") administers the F-1 student program and tracks information on students in F-1 student status through SEVIS. SEVIS is a government database that colleges and universities use to track international students' compliance with their F-1 student status. *See* 9 FAM 402.5-4(B) (SEVIS is the "definitive record of student or exchange visitor status.")

37.     Typically, it is the academic institution's Designated School Officials ("DSOs") who update SEVIS with changes in student status. "Each school that educates F-1 students has a Designated School Official ("DSO") who monitors, advises, and oversees the students attending his or her institution." *Jie Fang*, 935 F.3d at 175. Under the regulation, DSOs at schools must report through SEVIS when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2). Students whose SEVIS

records have been terminated are "no longer in an authorized period of stay in the United States."[13,14]

**Effect of SEVIS Record Termination on F-1 Student Status**

38.　　F-1 students admitted to the United States receive a Form I-94 Arrival/Departure Record which shows their authorized period of stay. Students admitted in F-1 status are admitted for the "duration of status" (D/S) and the Form I-94 is marked "D/S", meaning the student may stay in the United States for the

---

[13] U.S. Dep't of Homeland Sec., *Maintaining Accurate SEVIS Records*, *supra* n. 7.

[14] In several recent cases examining the legality of SEVIS record terminations, courts have understood the termination of a student's SEVIS record to also terminate a student's F-1 student status. *See, e.g.*, *Student Doe v. Noem*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *6 (E.D. Cal. Apr. 17, 2025) ("Because plaintiff offers evidence supporting the conclusion that neither reason given for termination is permitted by the applicable regulations, plaintiff will also likely show that defendants' decision to terminate his SEVIS record, effectively terminating his F-1 status, was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA."); *Roe v. Noem*, No. CV 25-40-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) ("8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa. . . . Moreover, Plaintiffs' academic record and lack of criminal history fails to support an alternative basis for termination of their F-1 status; at any rate, DHS's decision does not purport to rely upon such a reason."); *Isserdasani v. Noem*, No. 25-cv-00283-WMC, 2025 WL 1118626, at *5 (W.D. Wis. Apr. 15, 2025) ("[P]laintiff Isserdasani has shown a substantial, if not overwhelming, likelihood of success on the merits of his claim in Count 2 that DHS violated the APA when it summarily terminated his F-1 student status in SEVIS without cause."); *Liu v. Noem*, No. 25-cv-133-SE, op. at 3 (D.N.H. April 10, 2025) ("Liu has shown a likelihood of success on the merits of his claim in Count 2, that DHS violated the APA when it terminated his F-1 student status in the SEVIS system.").

duration of their program, course of study, or temporary work assignment to the United States, plus any additional grace periods that may be authorized afterward.[15]

39.    Noncitizen students in F-1 student status are "subject to an array of regulations." *Jie Fang*, 935 F.3d at 175 (citing 8 C.F.R. § 214.2(f)). These include maintaining a full course of study or engaging in authorized practical training after completing their studies, *see* 8 C.F.R. § 214.2(f)(5)(i), and avoiding unauthorized employment, *see* 8 C.F.R. § 214.2(f)(9). "A student who 'fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status' must depart the United States immediately or seek reinstatement," with no grace period. *Jie Fang*, 935 F.3d at 175-76 (quoting 8 C.F.R. § 214.2(f)(5)(iv)).

40.    SEVIS status termination is governed by SEVP policy and regulations. The regulations distinguish between two separate ways a student may lose status: either (1) a student fails to maintain status, or (2) through an agency-initiated termination of status. *See* 8 C.F.R. §§ 214.1(d), 214.2(f).

41.    Students fail to maintain F-1 student status under the SEVIS system when they do not comply with the regulatory requirements, such as by failing to maintain a full course of study, engaging in unauthorized employment, or violating other requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§ 214.1(e)-(g)

---

[15] *See* 9 FAM 402.5-5(L)(1)(a); U.S. Citizenship & Immigr. Servs., *Unlawful Presence and Inadmissibility*, https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-inadmissibility (last updated Jan. 25, 22.

outlines specific circumstances where certain conduct by an nonimmigrant visa holder "constitute[s] a failure to maintain status," including engaging in unauthorized employment, providing false information to DHS, or being convicted (not merely charged) of a crime of violence with a potential sentence of more than a year.[16]

42.    When ICE terminates a student record in SEVIS, this action reflects and communicates that ICE no longer considers the student in F-1 student status. The ICE SEVIS Help Hub, *Terminate a Student* webpage instructs that where, as in Plaintiffs' case, the stated "Termination Reason" is "Termination for any violation of status" – as opposed to "Authorized Early Withdrawal," "Change of Status Approved," or "Change of Status Denied" – this ends the student's "Duration of Status" with "[n]o grace period," and "the student must either apply for reinstatement, or the student and dependents must leave the United States

---

[16] "A condition of a nonimmigrant's admission and continued stay in the United States is obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed. A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status under section 241(a)(1)(C)(i) of the Act." 8 C.F.R. § 214.1(g). A crime of violence "means an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Borden v. United States*, 593 U.S. 420, 427 (2021) (internal quotation marks omitted). Misdemeanor offenses and traffic violations cannot meet this threshold. Charges for a crime of violence – rather than convictions – likewise cannot constitute a failure to maintain status.

immediately."[17] According to the Department of State website for F-1 students, "Failure to depart the United States on time will result in being out of status. Visas of individuals who are out of status are automatically voided (Section 222(g) of the Immigration and Nationality Act)."[18]

43.     Agency-initiated termination of F-1 student status via the SEVIS system "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can only terminate F-1 student status in three scenarios: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d).

44.     Students who have lost their F-1 status – either through a failure to maintain their status or through agency-initiated revocation – may seek reinstatement through an administrative process. Under regulations, United States Citizenship and Immigration Services ("USCIS") "may consider" reinstating a student who demonstrates that he or she: (1) "[h]as not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement (or demonstrates that the failure to file within the 5 month period was the result of

---

[17] *See* U.S. Dep't of Homeland Sec., *Terminate a Student*, *supra* n. 6.

[18] *See* U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html (last accessed Apr. 21, 2025).

exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances)"; (2) "[d]oes not have a record of repeated or willful violations of Service regulations"; (3) "[i]s currently pursuing, or intending to pursue, a full course of study"; (4) "[h]as not engaged in unauthorized employment"; (5) "[i]s not deportable on any ground other than 8 U.S.C. § 1227(a)(1)(B) and (C)(i) of the Act"; and (6) establishes "to the satisfaction of USCIS" either that "[t]he violation of status resulted from circumstances beyond the student's control," or that "[t]he violation relates to a reduction in the student's course load that would have been within a DSO's power to authorize, and that failure to approve reinstatement would result in extreme hardship to the student." 8 C.F.R. §§ 214.2(f)(16)(i)(A)-(F); *see also Jie Fang*, 935 F.3d at 176.

45.    While individuals whose F-1 status or SEVIS records have been terminated can apply for reinstatement, there is no opportunity to seek review of the status termination itself, *Jie Fang*, 935 F.3d at 183, and it does not prevent ICE enforcement actions as a result of those terminations. In fact, a student must already be out of status to be considered for reinstatement. *See* 8 C.F.R. § 214.2(f)(7)(iii), (8)(i). Moreover, reinstatement is entirely at the discretion of USCIS, and no appeal is available to the student. *Jie Fang*, 935 F.3d 172, 176 (3d Cir. 2019) (citation omitted).

46.     ICE's termination of a student's SEVIS record effectively strips these students of the benefits and privileges attendant to F-1 status, causing severe consequences. It immediately forecloses the student's access to pre-completion OPT, post-completion OPT, and prohibits them from changing their immigration status to other nonimmigrant or immigrant statuses. It also disables a DSO's ability to authorize and issue an active Form I-20 for that student, a form which USCIS requires in order to approve an international student's application for work authorization approval.[19] *See* Declaration of Eric Garfunkel (filed in this matter with Plaintiffs' Emergency Motion for a Temporary Restraining Order) ("Garfunkel Decl.") ¶¶ 7, 8, 20.[20] The corresponding regulations reads, "[a] student *must* initiate the OPT application process by requesting a recommendation for OPT from his or her DSO. Upon making the recommendation, the DSO will provide the student a signed Form I-20 indicating that recommendation." (Emphasis Added). A SEVIS record termination makes this impossible.

---

[19] The Form I-765 instructions for F-1 Students Seeking Pre-completion OPT, Post Completion OPT, and a 24-month STEM extension, require students to submit a "Certificate of Eligibility of Nonimmigrant Students Status (F-1) Student Status (Form I-20)" endorsed by the DSO. *Instructions for Application for Employment Authorization*, Edition Date 08/28/2024, last accessed April 21, 2025, at https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf

*Instructions for Application for Employment Authorization*, Edition Date 08/28/2024, last accessed April 24, 2025, at https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf

47.    Additional downstream immigration consequences include impacts on the student's ability to travel internationally and to apply to extend or change their immigration status. An F-1 student who is "out-of-status" cannot reenter on the original I-20,[21] nor can they change status to a different non-immigrant status based on employment, such as an H-1B, or a more permanent status (like that of lawful permanent resident) where adjustment is not permitted if an applicant was out of status during any prior entries.[22] *See* 8 CFR 245.1(b)(5) (barring certain applicants who are not in lawful immigration status on the date of filing their application from adjusting their status to permanent resident); 8 CFR 245.1(b)(6) (barring certain applicants who ever failed to continuously maintain a lawful status since entry into the United States from adjusting their status unless they can show that their failure to maintain status was through no fault of their own or for technical reasons).

48.    Further, students subjected to SEVIS terminations and the termination of F-1 status communicated thereby can be subject to removal from the United States. Any noncitizen "who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other

---

[21] *See* U.S. Dep't of Homeland Sec., *Terminate a Student*, *supra* n. 6.

[22] *See* USCIS Policy Manual, Chapter 4 - Extension of Stay, Change of Status, and Extension of Petition Validity, https://www.uscis.gov/policy-manual/volume-2-part-a-chapter-4 ("In general, USCIS does not approve an extension of stay or change of status for a person who failed to maintain the previously accorded status or where such status expired before the filing date of the application or petition.")

documentation authorizing admission into the United States as a nonimmigrant) has been revoked . . . is deportable." 8 U.S.C. § 1227(a)(1)(B). And a noncitizen "who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status" in which they were admitted, or fails "to comply with the conditions of any such status, is deportable." 8 U.S.C. § 1227(a)(1)(C)(i). *See supra*, para 13, *infra* para 57.

49.    Although proof that a student has maintained status can be grounds for dismissing removal proceedings when a student visa has been revoked, 8 C.F.R. § 1003.18(d)(ii)(B), the Immigration Judge has no ability to review the F-1 student status termination itself. *See Jie Fang*, 935 F.3d at 183.

50.    If DHS believes that a student is deportable for any reason, such as a revoked visa or criminal convictions, the agency may initiate removal proceedings in Immigration Court. The agency cannot lawfully do what the Defendants have done in this case: namely, strip students of their F-1 status by terminating SEVIS records without alleging any of the three, limited grounds upon which the agency can initiate a status termination, *see* 8 C.F.R. § 214.1(d), in an attempt to revoke their ability to lawfully remain in the United States.

51.    Notably, Plaintiffs do not challenge revocation of their F-1 visas through this action;[23] indeed, none of the Plaintiffs have received any notice that their F-1 visas were revoked, which would trigger notice and an opportunity to be heard. Rather, Plaintiffs bring this action to challenge the unlawful termination of their SEVIS records and F-1 student status, which is by contrast effectively unreviewable.

**Termination of Plaintiffs' SEVIS Records**

52.    Plaintiffs' SEVIS records were terminated between April 3 and April 8, by way of notations in SEVIS reflecting that ICE views their F-1 Status as terminated: specifically, the notation accompanying the terminations for Plaintiffs whose SEVIS records were terminated between April 3-7 first read: "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records

---

[23] In the event that any of the Plaintiffs do receive notice that their visas were revoked, however, the revocation of an F-1 visa does not constitute a failure to maintain F-1 student status and cannot serve as a basis for agency-initiated termination of F-1 student status in the SEVIS system. DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." U.S. Immigr. & Customs Enf't, *Policy Guidance 1004-04 – Visa Revocations* 3 (June 7, 2010), https://www.ice.gov/doclib/sevis/pdf/ visa_revocations_1004_04.pdf. Rather, only upon departure after a visa is revoked is the student's SEVIS record terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* U.S. Dep't of State, *Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION* (Sept. 12, 2016), https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

check and/or has had their VISA revoked. SEVIS record has been terminated." Then, sometime before April 9, the notations in these Plaintiffs' SEVIS files were adjusted to read: "OTHER - Individual identified in criminal records check and/or has had their VISA revoked." Two Plaintiffs' SEVIS records were terminated on April 8, and the notation in their SEVIS file read the same as the adjusted notation. No further explanation nor individualized reasoning has been provided. *See* Garfunkel Decl. ¶¶ 16; Student Doe #1 Decl. ¶ 14 ("To have my whole life turned upside down without any chance to understand why or to defend myself is truly unfathomable to me."); Student Doe #6 Decl. ¶ 18 ("I cannot understand how this happened. I was given no explanation, no notification, and no time to even process this abrupt overturn of my life plans.")

53.     Indeed, Plaintiffs have not received any notification from DHS or the Department of State concerning revocation of their visas. Student Doe #1 Decl. ¶ 16; Student Doe #2 Decl. ¶ 10; Student Doe #3 Decl. ¶ 11; Student Doe #4 Decl. ¶ 11; Student Doe #5 Decl. ¶ 9; Student Doe #6 Decl. ¶ 16.

54.     Regardless of why their SEVIS status was terminated, Plaintiffs have not engaged in any conduct that would trigger a termination of their F-1 student status. None of the Plaintiffs failed to maintain status under the requirements enumerated in 8 C.F.R. § 214.2(f). Nor did any of them engage in conduct that would result in a loss of status under 8 C.F.R. §§ 214.1(e)-(g). Rather, DHS unilaterally

terminated their F-1 student status by entering a boilerplate notation on SEVIS without providing any specific basis for doing so.

55.    DHS then failed to notify Plaintiffs and their DSOs about the terminations. The DSOs at Rutgers only learned about the SEVIS record terminations through their regular checks of the SEVIS system. Garfunkel Decl. ¶¶9, 14, 15, 16. Plaintiffs were subsequently alerted to the terminations by their DSOs through email. The email from Rutgers informed Plaintiffs that their "record was marked as terminated" and instructed them to "please cease any employment immediately" because "all employment authorization, on- or off-campus ends immediately when you fall out of valid status." It further delineated several options, including "[d]epart[ing] the U.S. as soon as possible," "[r]each[ing] out to an immigration attorney," and "[c]onsidering an application for reinstatement of F-1 status." Except for Plaintiff Student Doe #1, Plaintiffs and Rutgers staff members have not received any notice from DHS, including from ICE.

56.    The SEVIS record terminations have had immediate consequences for Plaintiffs. As an initial matter, Plaintiffs who are currently participating in the OPT program or in research-related activities have had their employment terminated. This has had an immediate financial impact on the affected Plaintiffs and their families, while also denying Plaintiffs the practical training and work experience that is part and parcel of their educational programs. *See* Student Doe #1 Decl. ¶17 ("By the end

of April, I do not know how I will afford [basic] expenses, and I am extremely concerned for my wellbeing and safety, as well as my family in India whom I send money to."); Student Doe #4 Decl. ¶ 13 ("[B]ut now the University has stopped paying me due to the SEVIS record termination . . . . I expect to run out of money in approximately two months. All of this is extremely stressful for me and my family."); Student Doe #6 Decl. ¶ 18 ("Because I was very precise in my calculations for my financial resources during my studies, I cannot afford to delay my studies.").

57.    The terminations place Plaintiffs at immediate risk of arrest, detention and deportation – an outcome that other students have already faced.[24] Plaintiffs are living with intense anxiety about the possibility of being detained and deported. Student Doe #1 Decl. ¶ 18 ("I am looking over my shoulder everywhere I go. I don't know whether I should go outside, because I hear that ICE can come at any time and arrest me . . . . The fear is debilitating."); Student Doe #6 Decl. ¶ 18 ("Since I was informed of my SEVIS record termination, I have had knots in my stomach and crying spells several times a day. I am overcome with stress[.]").

58.    Even if ICE does not seek to detain Plaintiffs or initiate removal proceedings on the basis of the SEVIS record termination, the SEVIS record termination itself means that Plaintiffs can no longer provide proof of lawful status

---

[24] *See, e.g., Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 U.S. Dist. LEXIS 64831 (D. Mass. Apr. 4, 2025).

in the event they are stopped and questioned by immigration enforcement authorities. Garfunkel Decl. ¶¶ 4, 8 ("The Form I-20 proves that an individual is legally enrolled in a program of study in the United States" and after a SEVIS record is terminated, "[t]he institution also cannot produce or issue an active Form I-20 or evidence of the student's F-1 status or authorization to work in the United States.")

59.    Plaintiffs' particular academic and career goals and projects have also been abruptly interrupted, leaving them unsure how they can salvage their research or their degrees. *See* Student Doe #2 Decl. ¶ 11 (explaining that because they are unable to work in their lab after the SEVIS termination, "some of [their] experiments have completely failed" given the experiments' time sensitivity); Student Doe #3 Decl. ¶ 10 (nearly three years into a PhD program, and now "do[es] not know where things stand, and the last several days have been very difficult"); Student Doe #4 Decl. ¶ 13 ("When I was informed of my SEVIS record termination, I was only a few months away from completing my PhD...but now I cannot complete my research or work toward that degree, and I am afraid I will not be able to prepare the lab work necessary to defend my dissertation[.]"); Student Doe #5 Decl. ¶ 10 ("[M]y PhD program has been entirely disrupted, which has caused me severe distress. My qualifying exam will need to be extended and I am not able to continue my research. I fear that if I am not able to complete my PhD, I will have wasted the past three years, and my future will be completely disrupted.")

**DHS Pattern, Practice, and/or Policy of F-1 Visa Revocations and SEVIS Record Terminations**

60.    The unlawful terminations of Plaintiffs' SEVIS records are part of a large-scale pattern, practice, and/or policy being pursued by Defendants, whether written or not, to cancel the status of hundreds – if not thousands – of international students nationwide who have not engaged in any conduct whatsoever that would warrant the termination of their F-1 status. Defendants have done so without having any lawful basis for the terminations and without complying with the process required for status termination. Under the normal process, a failure to maintain status would be reported by the student or the DSO, then the DSO would upload documentation to support to termination in SEVIS. Garfunkel Decl. ¶ 12. Here, however, ICE's purpose is to compel students to leave the United States by leveling vague, boilerplate accusations of failure to maintain status against them with no clear forum for redress.

61.    As of April 21, 2025, *Inside Higher Ed*, an industry publication, reported more than 1,680 terminations at 250 different educational institutions.[25] The same publication indicated that it is likely that many visa revocations and SEVIS status terminations are going unreported, suggesting that estimates are "almost certainly a fraction of the total because "[m]any . . . colleges are reluctant to publicly

---

[25] *See* Inside Higher Ed, *International Student Visas Revoked*, *supra* n. 3.

confirm any student visa revocations" and are "anxious to avoid attracting federal scrutiny and uncertain how to navigate an increasingly fraught gray zone."[26] Mass terminations of SEVIS records have also been documented in numerous news outlets.[27]

62.     Upon information and belief, a DHS task force has been targeting the status of international students.[28] This task force has been using data analytic tools to search the social media histories of about 1.5 million international students who study or work in the United States, in an effort to deport international students and recent graduates.[29] The task force is deploying the data analytic tools to identify people on the basis of past charges that would not justify either then termination of the F-1 status or their deportation from the United States, such as municipal violations and dismissed charges that were later expunged.[30] *See, e.g.*, Student Doe

---

[26] Laim Knox, *Student Visa Dragnet Reaches Small Colleges*, Inside Higher Ed (April   8,   2025),   https://www.insidehighered.com/news/global/international-students-us/2025/04/08/trump-admin-broadens-scope-student-visa.

[27] *See, e.g.,* Annie Ma, Makiya Seminera, and Christopher L. Keller, *Visa Cancellations Sow Panic for International Students, with Hundreds Fearing Deportation*, AP News (Apr. 16, 2025), https://apnews.com/article/international-student-f1-visa-revoked-college-f12320b435b6bf9cf723f1e8eb8c67ae   (reporting that at least 901 students have been impacted, according to an Associated Press count, and"[f]ew corners of higher education have been untouched").

[28] Julia Ainsley, *Inside the DHS Task Force Scouring Foreign Students' Social Media*, NBC News (Apr. 9. 2025), https://www.nbcnews.com/politics/national-security/dhs-task-force-scouring-foreign-students-social-media-rcna198532.

[29] *See id.*

[30] *Id.*

#5 Decl. ¶ 7 ("I have had some parking and driving violations in the United States, as well as a dismissed and expunged case. I have no criminal convictions."); Student Doe #6 Decl. ¶ 8 (describing a false charge of simple assault that was dismissed and expunged). Some of these are based upon a record of an encounter with a law enforcement official – no matter how innocuous and regardless of whether charges were dropped.[31] *See, e.g.*, Student Doe #3 Decl. ¶ 9 (describing a non-criminal municipal violation of loitering, and some parking and driving violations); Student Doe #5 Decl. ¶ 7 (acknowledging parking and driving violations, as well as a dismissed and expunged case).

63.    The analytic tools used by this task force are maintained by U.S. Customs and Border Protection's ("CBP's") National Targeting Center and National Vetting Center.[32] Upon information and belief, once a student is identified in this automated system, the task force initiates a chain of actions across several agencies and ultimately "informs Immigration and Customs Enforcement agents in local field offices to arrest and deport the student."[33] Thus, the task force is seeking to effect the deportation of international students.

---

[31] Any encounter with criminal law enforcement is not grounds for terminating status. Students can only fail to maintain their status and therefore lose their F-1 status on the basis of criminal history if they are convicted of a crime of violence. 8 C.F.R. § 241.1(g); *see supra* ¶ 41.

[32] *Id.*

[33] *Id.*

64.     Upon information and belief, ICE also seeks to coerce students into leaving the United States by terminating their status. For example, after Columbia University doctoral student Ranjani Srinivasan was informed that her SEVIS record was terminated and her F-1 student visa had been canceled, she elected to leave the United States in light of the "volatile and dangerous" atmosphere.[34] After Ms. Srinivasan traveled to Canada, Defendant Noem celebrated her departure, writing on X (formerly Twitter) that she was "glad to see" Ms. Srinivasan "use the CBPHome app to self deport."[35] Another student whose visa was revoked, Cornell University student Momodou Taal, likewise elected to leave the United States after he "lost faith [he] could walk the streets without being abducted."[36] Some students whose status has been revoked have reportedly been encouraged to "self-deport" rather than risk detention.[37] Defendant Noem has also stated that if noncitizens do

---

[34] Luis Ferré-Sadurni and Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, New York Times (Mar. 15, 2025), https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristi-noem-video.html.

[35] Kristi Noem (@Sec_Noem), X (Mar. 14, 2025), https://x.com/Sec_Noem/status/1900562928849326488

[36] Momodou Taal (@MomodouTaal), X (Mar. 31, 2025), https://x.com/MomodouTaal/status/1906842790778057173.

[37] Andy Rose and Carroll Alvarado, *More Than 500 Student Visas Revoked as the Government Expands Reasons for Deportation*, CNN (Apr. 11, 2025), https://www.cnn.com/2025/04/09/us/us-immigration-student-visas-revoked/index.html.

not "self-deport," "we will find them, we will deport them, and they will never return."[38]

65.    The timing and uniformity of these terminations, along with news of this task force, leave little question but that DHS has adopted a nationwide policy, whether written or not, of mass terminations of F-1 student status via SEVIS terminations, which are being made indiscriminately and without sufficient review.

66.    Upon information and belief, DHS has targeted students from China and India for SEVIS record terminations. Whereas 120 countries are represented in the Rutgers international student community,[39] Plaintiffs are all from India and China, and 13 of the 14 Rutgers students who have recent SEVIS record terminations are nationals of these two countries. Garfunkel Decl. ¶ 19. Other recently filed lawsuits challenging the SEVIS terminations have documented the same pattern.[40]

---

[38] Press Release, U.S. Dep't of Homeland Sec., DHS Launches CBP Home App with Self-Deport Reporting Feature (Mar. 10, 2025), https://www.dhs.gov/news/2025/03/10/dhs-launches-cbp-home-app-self-deport-reporting-feature.

[39] Rutgers, By the Numbers, https://www.rutgers.edu/about/by-the-numbers (last visited Apr. 19, 2025).

[40] *See, e.g.*, *Jane Doe 1, et al., v. Bondi et al.*, No. 1:25-cv-01998 (N.D. Ga. filed Apr. 15, 2025) (brought on behalf of 133 plaintiffs, of which 69 are Indian nationals and 29 are Chinese nationals, far outnumbering students from other countries); *Chinmay Deore v. Noem*, No. 25-cv-11038-SJM-DRG (E.D. Mi. filed Apr. 10, 2025) (identifying one plaintiff as a citizen of India and the three other plaintiffs as Chinese citizens); *Liu et al., v. Noem*, No. 1:25-cv-00716-JPH-TAB (S.D. In. filed Apr. 15, 2025) (identifying six plaintiffs as Chinese citizens or nationals, and one plaintiff from Nigeria).

A policy brief from the American Immigration Lawyers Association ("AILA") revealed that of the 327 reports of visa and/or SEVIS terminations collected by AILA, 50 percent of affected students are from India, and 14 percent are from China.[41]

67.    Project 2025, which the Trump Administration has adopted as a blueprint for its policies, advises that the U.S. should "[s]ignificantly reduce or eliminate the issuance of visas to Chinese students or researchers to prevent espionage and information harvesting."[42] A recent tweet by Donald Trump, Jr., supported the idea of "pulling all the student visa [*sic*] and sending all the spies home."[43] And Republicans in the House of Representatives recently introduced legislation to amend the Immigration and Nationality Act to permanently bar all Chinese nationals from obtaining student visas, called the "Stop Chinese Communist Prying by Vindicating Intellectual Safeguards in Academia Act of 2025."[44]

68.    The unlawful SEVIS terminations have also been the subject of lawsuits filed in federal district courts across the country. In the last few days, several district courts have issued temporary restraining orders similar to the one sought

---

[41] Shev Dalal-Dheini and Amy Grenier, Policy Brief, *supra* n.3.

[42] Heritage Foundation, Mandate for Leadership: The Conservative Promise at 790 (2023), https://static.project2025.org/2025_MandateForLeadership_FULL.pdf.

[43] Donald Trump, Jr. (@DonaldJTrumpJr), X (Apr. 9, 2025), https://x.com/DonaldJTrumpJr/status/1909967476441436561.

[44] Stop CCP VISAs Act of 2025, H.R. 2147, 119th Cong. (2025), https://www.congress.gov/bill/119th-congress/house-bill/2147/text.

here, and on similar legal theories, including this Court. *See, e.g., Doe #1 v. Trump,* No. 2:25-cv-02825-MCA-LDW, ECF 13 (D.N.J., Apr. 18, 2025); *C.S. v. Noem,* No. 2:25-cv-00477-WSS, ECF 22 (W.D. Pa. Apr. 15, 2024); *Doe v. Noem,* No. 2:25-cv-00040- DLC, ECF 11 (D. Mont. Apr. 15, 2025); *Doe v. Trump,* No. 4:25-cv-00175-AMM, ECF 7 (D. Ariz. Apr. 15, 2025); *Hinge v. Lyons,* No. 1:25-cv-01097-RBW, ECF 11 (D.D.C. Apr. 15, 2025); *Rantsantiboom v. Noem,* No. 0:25-cv-01315-JMB-JFD, ECF 20 (D. Minn. Apr. 15, 2025); *Wu v. Lyons,* No. 1:25-cv-01979-NCM, ECF 9 (E.D.N.Y. Apr. 11, 2025); *Zheng v. Lyons,* No. 1:25-cv-10893-FDS, ECF 8 (D. Mass. Apr. 11, 2025); *Liu v. Noem,* No. 25-cv-133-SE, ECF 13 (D.N.H. April 10, 2025); *Bejugam v. Lyons*, 2:23-cv-0057, ECF No. 17, (N.D. Ala. April 17, 2025) .

## CLAIMS FOR RELIEF

### COUNT ONE
**Violation of the Administrative Procedure Act and *Accardi* Doctrine
(Unlawful F-1 Student Status Terminations)**

69.     The foregoing allegations are realleged and incorporated herein.

70.     Under the APA, this Court "shall . . . hold unlawful . . . agency action" that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and/or "without observance of procedure required by law." 5 U.S.C.

§ 706(2)(A)-(D). Agency action is arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, . . . offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co. (State Farm)*, 463 U.S. 29, 43 (1983).

71.    Defendants' termination of Plaintiffs' F-1 student status under the SEVIS system is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").

72.    Defendants' termination of Plaintiffs' SEVIS records violates the Administrative Procedure Act ("APA") and should be set aside pursuant to 5 U.S.C. § 706(2)(A)-(D) because it was arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of authority, including the regulatory regime at 8 C.F.R. § 214.1(d).

73.    Defendants did not follow DHS's own regulations in deciding to terminate Plaintiffs' student status, as reflected in the SEVIS terminations. Defendants had no statutory or regulatory authority under 8 C.F.R. § 214.1(d) to terminate Plaintiffs' SEVIS records – effectively terminating their F-1 student status. Nothing in Plaintiffs' records provides a statutory or regulatory basis for termination

or even for determining that any of the Plaintiffs have failed to maintain their F-1 status. Defendants further failed to consider Plaintiffs' individual circumstances, and did not provide any explanation – let alone reasoned explanation – justifying their determinations, and thereby did not comport with the regulatory regime at 8 C.F.R. § 214.1(d).

74.    Defendants' termination of Plaintiffs' SEVIS records was also a violation of the *Accardi* doctrine because in terminating the records, ICE failed to follow the federal agency's own rules, including 8 C.F.R. § 214.1(d), which specifies the lawful mechanisms through which F-1 status can be terminated. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Leslie v. Attorney General of U.S.*, 611 F.3d 171 (3d Cir. 2010) (describing "the long-settled principle" applied in *Accardi* "that rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency").

## COUNT TWO
### Violation of the Due Process Clause of the Fifth Amendment
### to the United States Constitution
### (Unlawful F-1 Student Status Termination)

75.    The foregoing allegations are realleged and incorporated herein.

76.    The United States Constitution requires notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The

fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

77.    Defendants terminated Plaintiffs' F-1 student status and associated SEVIS records without (i) notifying them about this termination decision, (ii) providing specific grounds for this decision, (iii) providing Plaintiffs with individualized hearings before an impartial adjudicator, and (iv) providing Plaintiffs with adverse evidence and an opportunity to confront and respond to such evidence.

78.    Defendants' disregard for, and failure to comply with, these fundamental well-established due process principles violated Plaintiffs' rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

**COUNT THREE**
**Violation of Administrative Procedure Act and *Accardi* Doctrine**
**(Pattern and Practice of Unlawful F-1 Student Status Terminations)**

79.    The foregoing allegations are realleged and incorporated herein.

80.    Defendants have adopted a policy, or have engaged in a pattern and practice, of unilaterally terminating students' SEVIS records for reasons that are not legitimate grounds for terminating status under 8 C.F.R. § 214.1(d).

81.    Defendants unlawfully terminated the SEVIS records of students at Rutgers and across the country, including Plaintiffs, indicating a loss of F-1 student status. As a part of this policy and/or practice, Defendants failed to provide notice to

students or DSOs concerning the terminations, and did not clarify the reasoning for their individual status terminations. Instead, Defendants provided a vague, boilerplate notation in affected students' SEVIS records that willfully denied them notice of the grounds for their status terminations.

82.     This policy and/or pattern and practice constitutes a final agency action and violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction, and a violation of the *Accardi* doctrine and federal agencies' own rules, *see Accardi*, 347 U.S. 260.

## COUNT FOUR
### Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution (Unlawful Detention)

83.     The foregoing allegations are realleged and incorporated herein.

84.     The Fifth Amendment requires fair, pre-deprivation process when a person's liberty hangs in the balance.

85.     No such process was provided here with respect to the termination of SEVIS records.

86.     Nonetheless, in light of this unlawful termination of Plaintiffs' SEVIS records and F-1 student status, Plaintiffs are at risk of abrupt detention without prior notice or an opportunity to be heard, the very fundamentals of Due Process.

87.     There is no credible argument for permitting Plaintiffs' detention by immigration authorities. Plaintiffs are students and recent graduates who have maintained status by complying with all conditions necessary to maintain F-1 student status; Plaintiffs have taken no actions that would justify a termination of status. If permitted, Plaintiffs intend to continue studying at Rutgers University and/or working in their positions through OPT in New Jersey.

88.     Nor can their detention, which is now a risk, be justified. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community).

## **PRAYER FOR RELIEF**

Plaintiffs respectfully ask that this Court grant the following relief:

(1).    Assume jurisdiction over this matter;

(2).    Declare that Defendants' termination of Plaintiffs' SEVIS records and F-1 student status, without affording them sufficient notice and opportunity to be heard, violated Plaintiffs' Fifth Amendment due process rights and the Administrative Procedure Act (including under 8 C.F.R. § 214.1(d)), and *Accardi v. Shaughnessy*, 347 U.S. 260 (1954);

(3).    Order Defendants to correct Plaintiffs' SEVIS records to reflect that status was never terminated and return plaintiffs to the status quo wherein they held valid F-1 student status.

(4).    Issue an injunction requiring Defendants to provide each Plaintiff a constitutionally adequate individualized proceeding and hearing before an impartial adjudicator, in which the Plaintiff will be entitled to review any adverse evidence and meaningfully respond to such evidence, prior to determining whether each Plaintiff's F-1 student status under SEVIS should be terminated;

(5).    Enjoin Defendants from directly or indirectly enforcing, implementing, or otherwise imposing legal consequences as a result of Defendants' decision to terminate Plaintiffs' SEVIS records or F-1 status, including arresting, detaining, or removing Plaintiffs from the Court's jurisdiction without 30 days' notice to the Court and to Plaintiffs' counsel during the pendency of this action;

(6).    Award attorney's fees and costs; and

(7).    Order any further relief this Court deems just and proper.

Date: April 22, 2025                    Respectfully submitted,
                                        */s/* Farrin R. Anello

                                        **American Civil Liberties Union**
                                        **of New Jersey Foundation**
                                        Jeanne LoCicero
                                        Farrin R. Anello
                                        Molly K.C. Linhorst
                                        570 Broad Street, 11th Floor
                                        Newark, New Jersey 07102
                                        (973) 854-1715
                                        jlocicero@aclu-nj.org

                                        **Rutgers Immigrant Community**
                                        **  Assistance Project (RICAP)**
                                        Center for Law and Justice
                                        Jason Hernandez*
                                        Jessica Rofe**
                                        Leena Khandwala
                                        123 Washington Street
                                        Newark, New Jersey 07102

                                        **Gibbons P.C.**
                                        John J. Gibbons Fellowship in
                                        Public Interest and Constitutional Law
                                        Lawrence S. Lustberg, Esq.
                                        Ruth O'Herron, Esq.
                                        One Gateway Center
                                        Newark, NJ 07102
                                        (973) 596-4500
                                        llustberg@gibbonslaw.com
                                        roherron@gibbonslaw.com

                                        *Attorneys for Plaintiffs*

                                        * *application for admission forthcoming*
                                        ** *pro hac vice motion forthcoming*