# EXHIBIT

This exhibit is a redline document created through Microsoft Word indicating the proposed deletions and additions in the Amended Class Action Complaint as compared to the Complaint filed on April 22, 2025, ECF No. 1.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Student DOE #1, Student DOE #2, Student DOE #3, Student DOE #4, Student DOE #5, and Student DOE #6, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,[1]<br><br>  v.<br><br>Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security, Todd LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, Ricky J. PATEL, in his official capacity as Newark Special Agent in Charge, Homeland Security Investigations, U.S. Immigration and Customs Enforcement, and John TSOUKARIS, in his official capacity as Newark Field Office Director, Enforcement and Removal OperationOperations, U.S. Immigration and Customs Enforcement, Edward V. OWENS, in his official capacity as Philadelphia Special Agent in Charge, Homeland Security Investigations, U.S. Immigration and Customs Enforcement, Brian McSHANE, in his official capacity as Philadelphia Acting Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, Rebecca C. GONZÁLEZ-RAMOS, in her official capacity as San Juan Special Agent in Charge, Homeland Security Investigations, U.S. Immigration and Customs Enforcement, and Garrett J. RIPA, in his official capacity as Miami Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, | Case No. ———2:25-cv-02998 (KSH) (AME)<br><br>**AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

---

[1] Plaintiffs' Motion to Proceed Under Pseudonyms is forthcoming.

_Defendants._

**<u>INTRODUCTION</u>**

1.    Since late March 2025, ~~hundreds    if not~~ thousands ~~~~of students and recent graduates ~~with~~in the United States in F-1 ~~visas~~status have had their Student Exchange and Visitor Information System ("SEVIS")[2] records abruptly and unlawfully terminated, effectively stripping them of their F-1 status.[3] ~~Upon information and belief,~~Plaintiffs Students Doe ## 1-6 ("Named Plaintiffs") and the class they seek to represent ("Plaintiff Class") are among these students.

---

[2] The Student and Exchange Visitor Information System ("SEVIS") is "the web-based system that [DHS] uses to maintain information regarding" F-1 "students studying in the United States[.]" U.S. Dep't of Homeland Sec., _About SEVIS_, _Study in the States_, https://studyinthestates.dhs.gov/site/about-sevis (last visited ~~Apr. 18~~June 19, 2025). The database tracks students' compliance with their status.

[3] ~~Inside Higher Ed, _International Student Visas Revoked_, https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked (last accessed Apr. 21, 2025) (reporting that "[a]s of April 21, over 250 colleges and universities have identified 1,680-plus international students and recent graduates who have had their legal status changed by the State Department"); _see also_~~ Shev Dalal-Dheini & Amy Grenier, Policy Brief: The Scope of Immigration Enforcement Actions Against International Students at 1, AILA (Apr. 17, 2025), https://www.aila.org/library/policy-brief-the-scope-of-immigration-enforcement-actions-against-international-students ("According to a verified source, ICE has terminated 4,736 SEVIS records since January 20, 2025, the majority on F-1 status."). By April 24, "over 280 colleges and universities ha[d] identified 1,800-plus international students and recent graduates who [] had their legal status changed by the State Department." Inside Higher Ed, _International Student Visas Revoked_, https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked (last visited June 12, 2025).

Immigration and Customs Enforcement ("ICE") terminated ~~these~~their SEVIS records – and effectively terminated their F-1 student status, considering the benefits and privileges that depend upon having an active SEVIS record – in violation of ~~the relevant~~statute, agency regulations, and without notice, adequate explanation, or an opportunity to be heard.[4]

2.      The termination of a student's SEVIS record, and the termination of F-1 student status that is communicated as a result, causes irreparable harm, including immediately terminating the student's employment authorization, foreclosing future F-1 based employment applications like Curricular Practical Training ("CPT") and Optional Practical Training ("OPT"), precluding the student from continuing and completing their course of study, preventing the student from reentering the United States on his or her F-1 visa should they depart, and immediately rendering the student vulnerable to ICE arrest, detention, and deportation. *See infra* ~~¶ 42~~¶¶ 71-73, 82-85.

3.      Plaintiffs Students Doe ## 2, 3, 4, 5, and 6 are current PhD and master's degree students at Rutgers University ("Rutgers") – some of whom also engage in authorized employment conducting research – and Plaintiff Student Doe #1 is a recent graduate of Rutgers who has been living and working in the United States under OPT. OPT permits recent graduates on F-1 visas to accept temporary employment "directly related to the student's major area of study," including

---

[4] In accordance with Local Civil Rule 10.1, Named Plaintiffs, who will be moving to appear pseudonymously, can be reached at the address of their undersigned counsel. ~~The~~Defendants' office ~~address of~~addresses are as follows: Defendant Kristi Noem is at 2707 Martin Luther King Jr. Ave. SE, Washington D.C. 20528~~-0525. The office address of~~; Defendant Todd Lyons is at 500 12th ~~Street~~St. SW, Washington D.C. 20024~~. The office address of~~; Defendant Ricky J. Patel is at 620 Frelinghuysen ~~Avenue,~~Ave., Newark, ~~N.J.~~NJ 07114 ~~and that of~~; Defendant John Tsoukaris is at 970 Broad ~~Street,~~Str., 11th Floor, Newark, ~~New Jersey,~~NJ 07102~~.~~; Defendant Edward V. Owens is at 220 Chestnut St., Room 200, Philadelphia, PA 19106; Defendant Brian McShane is at 114 North 8th St., Philadelphia, PA 19107; Defendant Rebecca C. González-Ramos is at Capitol Building, 800 Juan Ponce de Leon Ave., 12th Floor, San Juan, PR 00908; and Defendant Garrett J. Ripa is at 865 SW 78th Ave., Suite 101, Plantation, FL 33324.

after they have completed their course of study. 8 ~~CFR~~C.F.R. § 214.2(f)(10)(ii).[5] Plaintiffs Students Doe ## 2, 3, 4, 5, and 6, and other members of the Plaintiff Class who have not yet graduated, would be prevented from seeking OPT after graduation if their SEVIS records ~~remain~~are terminated because their Designated School Official ("DSO") at ~~Rutgers~~their respective schools cannot recommend OPT or "issue a signed Form I-20 indicating that recommendation" as required under 8 ~~CFR 214.2(f)(11)(i).~~C.F.R. § 214.2(f)(11)(i) when the student's SEVIS record is terminated. Plaintiff Student Doe #1 and Plaintiff Class members who recently graduated or are participating in OPT could not secure authorization to participate in OPT or extend their authorization while their SEVIS records were terminated for the same reason.[6] *Id.*

4.      Named Plaintiffs are all citizens of India or China. ~~Plaintiffs, and~~ are accomplished electrical engineers, software developers, biomedical scientists, and students in these fields. ~~All~~

5.      Upon information and belief, most members of the Plaintiff Class are citizens or nationals from Asia, predominantly China and India.

~~4.~~6.      All Plaintiff Class members have worked very hard to achieve what they have in their academic careers, in which they are seeking or have recently obtained undergraduate or advanced graduate degrees. They have also invested significant time and money in their education. ~~In~~In forgoing other educational and career opportunities and choosing to come to the United States to study, ~~Plaintiffs~~Plaintiff Class members relied on existing laws, regulations, and policies.

~~5.      All Plaintiffs were among the students whose SEVIS records were recently terminated, reflecting termination of their F-1 student status.~~

---

[5] U.S. Citizenship and ~~Immigration Services,~~Imm. Servs., *Optional Practical Training (OPT) for F-1 Students*, https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-opt-for-f-1-students (last updated Nov. 25, 2024). Students who participate in OPT usually do so after the completion of their studies.

[6] After the Court issued the Preliminary Injunction, ECF No. 39, and Plaintiff Student Doe #1's SEVIS record was reactivated, they were able to apply for their OPT extension in June.

6.7.    Between April 3 and April 8, 2025, ICE terminated Named Plaintiffs' SEVIS records.[7] The termination notations for Students Doe ## 1, 2, 3 and 6 initially read "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Sometime after the initial termination and before April 9, ICE changed their termination notations in SEVIS to "OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." The SEVIS records for Students Doe ## 4 and 5 were terminated on April 8 and were marked as "OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." ICE has provided no additional information to the students or to their DSOs as to the reason for termination.

7.8.    On April 5, 2025, Student Doe #1 has also received a notification from the Student and Exchange Visitor Program ("SEVP") unit of ICE stating that their OPT authorization period had ended and notifying them that their "SEVP portal account will close on October 5, 2025, with the account becoming read-only on April 19, 2025." *See* Student Doe #1 Decl. ¶ 13, ECF No. 3. The only notification all other PlaintiffsStudents Doe ## 2-6 received was from a DSO – a Rutgers employee who learned of the terminations through the SEVIS system. *See* Student Doe #2 Decl. ¶ 9, ECF No. 3-1; Student Doe #3 Decl. ¶ 10, ECF No. 3-2; Student Doe # 4 Decl. ¶ 9, ECF No. 3-3; Student Doe #5 Decl. ¶ 8, ECF No. 3-4; Student Doe #6 Decl. ¶ 14., ECF No. 3-5. On June 24, 2025, after checking the Consular Electronic Application Center website, Student Doe #1 learned that her visa was revoked on April 8, 2025, just three days after SEVP terminated her SEVIS record.

---

[7] As discussed further below, Named Plaintiffs' SEVIS records have been returned to "active status," *see infra* ¶¶ 23, 96, but the notations accompanying the terminations remain in their records, *see infra* ¶¶ 23-25, 97-98.

9.    Upon information and belief, the SEVIS records of other members of the Plaintiff Class were terminated in the same or a similar manner to the Named Plaintiffs in late March or early April 2025.

8.10.   The grounds cited by ~~ICE~~SEVP in the SEVIS ~~termination~~record terminations do not provide legal authority to terminate ~~Plaintiffs'~~Plaintiff Class members' SEVIS records or F-1 student status. Prior to the terminations, ~~Plaintiffs~~members of the Plaintiff Class were all "maintaining status," in that they were "making normal progress toward completing a course of study" as contemplated by the governing regulation, 8 C.F.R. § 214.2(f)(5)(i), or were participating in OPT programs as their F-1 visas allowed. ICE also terminated SEVIS records and the status reflected therein without identifying any lawful basis for such termination. *See* 8 C.F.R. § 214.1(d) (exclusive list of ~~termination grounds~~grounds for termination of status for nonimmigrants within period of initial admission or extension of stay).

9.11.   Because of the termination of their SEVIS records, several Named Plaintiffs immediately lost employment authorization, creating an immediate financial crisis for some Plaintiffs and their families who rely on funds from their authorized employment to pay for rent and daily necessities. As Plaintiffs Students Doe ## 1-6 detail in their sealed declarations, ~~appended to the application for a Temporary Restraining Order filed herewith~~ECF Nos. 3–3-5, some ~~are now facing~~faced housing insecurity and the prospect of being unable to meet other basic needs when their records were terminated. *See* Student Doe #1 Decl. ¶ 17 ("By the end of April I do not know how I will afford these expenses," including rent, insurance, phone bill, groceries, and car lease); Student Doe #4 Decl. ¶ 13 (explaining the loss of their annual stipend as a Research Assistant resulting from the SEVIS record termination, and that "now that I am without an income I expect to run out of money in approximately two months," which is "extremely stressful for me

and my family"). At least one Plaintiff has family abroad relying on their financial support; the Plaintiff ~~is now~~has worried about the well-being of their family in the absence of this support. *See* Student Doe #1 Decl. ¶¶ 15, 17. Members of the Plaintiff Class have faced, or will in the future face, the same loss of employment and related harm due to their SEVIS record terminations.

~~10.~~12.  The ~~termination~~terminations also ~~upends Plaintiffs'~~upended the promising academic careers of Named Plaintiffs and either already have, or will in the future, pose the same harm to members of the Plaintiff Class. For those in their OPT period or other authorized employment, even a temporary interruption in employment authorization can result in their being terminated from their employment, and facing much greater difficulty in finding jobs in their fields of study. Moreover, due to their reasonable fear of enforcement actions by ICE when their SEVIS records were terminated, some Named Plaintiffs ~~do~~did not feel safe going outside, *see* Student Doe #1 Decl. ¶ 18, presenting their research, *see* Student Doe #3 Decl. ¶ 13, or traveling domestically to meet with other academics about their research, *see* Student Doe #5 Decl. ¶ 11, rendering them unable to complete their studies or fulfill their academic objectives~~, see~~. *See also* Student Doe #6 Decl. ¶ 19 ("I am afraid to leave my home out of fear that I will be detained. I feel that I am in a home prison."). The high level of stress and fear they ~~are experiencing itself interferes~~have experienced as a result of their record terminations interfered with their ability to study, research, and work. *See* Student Doe #2 ¶ 14 ("Until now, I had been performing well this semester, but suddenly feeling unable to attend classes and exams puts my strong academic standing at risk[.]"); Student Doe #5 Decl. ¶ 10 ("I have sought therapy and been diagnosed with post-traumatic stress disorder (PTSD) for events that happened prior in my life, and the SEVIS termination is increasing the distress that I am experiencing.").

11.13.  Students whose SEVIS records have been terminated also who then depart the United States cannot re-enter the United States country on the terminated SEVIS record; if they need to return home to attend to a family matter, the SEVIS termination would prevent them from returning to their studies or OPT in New Jersey.to career training authorized by regulations governing OPT and CPT.

12.14.  In practice, students who have had theirwhose SEVIS recordrecords are terminated are at imminent risk of visa termination, arrest, and detention by ICE.

13.15.  ICE'sThe Department of Homeland Security's ("DHS") website informs students that "[w]hen an F-1/M-1 SEVIS record is terminated," "Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student," confirming that the student is a potential target of removal – or at least that the student is expected to depart from the United States – and thus at risk of ICE detention.[8] IndeedBy its own representation, once a student's SEVIS record is terminated, that student "is no longer in an authorized period of stay in the United States."[9] That puts them at risk of enforcement, since a noncitizen "who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status" in which they were admitted, or fails "to comply with the conditions of any such status, is deportable." 8 U.S.C. § 1227(a)(1)(C)(i).

14.16.  And regardless of the technical legal import of a SEVIS record termination, Plaintiffs'Plaintiff Class members' practical risk of ICE detention once their SEVIS record has been terminated is currently very serious. ICE has recently detained other students whose F-1 visas

---

[8]  U.S. Dep't of Homeland Sec., *Terminate a Student*, *Study in the States*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last updated Nov. 7, 2024May 19, 2025).

[9]  U.S. Dep't of Homeland Sec., *Maintaining Accurate SEVIS Records, Study in the States*, https://studyinthestates.dhs.gov/schools/report/maintaining-accurate-sevis-records (last visited Apr. 18June 19, 2025).

and/or SEVIS status have been revoked. For example, after ICE terminated the SEVIS record of Tufts child development PhD student Rümeysa Öztürk, Ms. Öztürk was suddenly and without notice arrested on the street by plainclothes ICE officers.[10] ICE officers drove her around to multiple locations in New England before finally detaining her in an ICE detention center in Louisiana and placing her in removal proceedings, where she ~~has now been~~was denied release on bond though there ~~is~~was no evidence of flight risk or danger to the community. Ms. Öztürk was finally ordered released by a federal court after forty-five days in detention.[12] The only removal charge against her is based upon her F-1 student status having been terminated.[13] ~~Likewise~~Similarly, Aditya Harsono, a 33-year-old father living in Minnesota, while completing OPT employment at a healthcare company and applying for status through his U.S. citizen wife and caring for his young daughter, was arrested without prior notice by plainclothes ICE officers. after his visa was revoked. Although an immigration judge granted Mr. Harsono bond, ICE appealed that decision, leaving him detained in a county jail that contracts with ICE.~~14~~ [ ] Mr.

---

[10] Opinion and Order at 6, *Öztürk v. Hyde et al.*, No. 1:25-cv-00374 (WKS) (D. Vt. Apr. 18, 2025), ECF No. 104.

[11] *Id*. at 7, 11.

[12] ~~*Id.* at 7, 11.~~ Order, *Öztürk v. Hyde et al.*, No. 2:25-cv-00374 (WKS) (D. Vt. May 9, 2025), ECF No. 131.

[13] First Am. Pet. for Writ of Habeas Corpus and Compl. at 8, ECF No. 12, *Öztürk v. Hyde et al.*, No. ~~1~~2:25-cv-00374-WKS (explaining that Öztürk's "SEVIS designation had been terminated" and the charging document subsequently issued to her alleged her removability only on the fact that her visa had been revoked by the U.S. Department of State and that she was deportable under INA § 237(a)(1)(B), which provides that individuals are deportable when they are in the United States "in violation of [the INA] or any other law of the United States" or when their "nonimmigrant visa . . . has been revoked" at the discretion of the consular officer or the Secretary of State~~;~~): Chloe Atkins & Phil Helsel, *Video Shows Tufts Graduate Student Grabbed Off the Street by Federal Immigration Officials*, NBC News (Mar. 26, 2025), https://www.nbcnews.com/news/us-news/federal-immigration-authorities-detain-international-tufts-graduate-st-rcna198158.

[14] ~~Samantha Davis, *Marshall Resident Detained by ICE on Student Visa*, Marshall Independent (Apr. 14, 2025), https://www.marshallindependent.com/news/local-news/2025/04/marshall-resident-detained-by-ice-on-student-visa/ (reporting the detention of an F-1 student visa holder~~

Harsono was ordered released by a federal judge after forty-eight days in detention.[56],[15]Although these individuals are not parties in this action, they demonstrate the risks that ~~Plaintiffs~~Plaintiff Class members face. when their SEVIS records are terminated.[16]

~~15.~~17.  As a result, prior to entry of this Court's text order on April 23, ECF No. 10, and the entry of this Court's Preliminary Injunction on May 8, ECF No. 39 ("PI Order"), Named Plaintiffs ~~now live~~lived in constant fear that they may be arrested, detained, and deported by ~~DHS~~immigration enforcement when their SEVIS records were terminated. *See* Student Doe #1 Decl. ¶ 18 ("I am looking over my shoulder everywhere I go. I don't know whether I should go outside, because I hear that ICE can come at any time and arrest me. . . . The fear is debilitating."); Student Doe #5 Decl. ¶ 11 (stating the fact that "I may be subject to enforcement actions" by ICE "has caused me worry about leaving my home"); Student Doe #6 Decl. ¶ 19 ("I wake up several times in the middle of the night thinking that someone is there to get me.").

18.    Upon information and belief, other members of the Plaintiff Class have experienced or will experience similar emotional distress in the face of this clear risk of arrest and deportation.

19.    After litigants across the country challenged the termination of their student SEVIS records, more information came to light concerning how specific students were targeted. Testimony by ICE Assistant Director Andre Watson in a separate matter revealed that "at the

---

~~working under OPT a few days after his visa was revoked); Becky Z. Dernbach, *Immigration Judge Rules Marshall Man Who Protested Police Killings is 'Removable,'* Sahan Journal (Apr. 17, 2025), https://sahanjournal.com/immigration/marshall-minnesota-ice-arrest-deportation-aditya-harsono/.~~

[15] Samantha Davis, *Marshall Resident Detained by ICE on Student Visa*, Marshall Independent (Apr. 14, 2025), https://www.marshallindependent.com/news/local-news/2025/04/marshall-resident-detained-by-ice-on-student-visa/ (reporting the detention of an F-1 student visa-holder working under OPT a few days after his visa was revoked); Becky Z. Dernbach, *Immigration Judge Rules Marshall Man Who Protested Police Killings is 'Removable,'* Sahan Journal (Apr. 17, 2025), https://sahanjournal.com/immigration/marshall-minnesota-ice-arrest-deportation-aditya-harsono/.

[16] Order, *Harsono v. Trump*, No. 0:25-cv-01976 (D. Minn. May 14, 2025), ECF No. 21.

instruction of [DHS] leadership," he and other ICE employees carried out what they termed the "student criminal alien initiative" in March and April 2025. Second Linhorst Decl. Ex. B ("Watson Tr.") at 3:15-5:25, 8:23-9:24, ECF No. 31. Through this initiative, ICE ran the names of all 1.3 million noncitizen students in the United States through the National Crime Information Center ("NCIC") database[17] to find matches, and then sent lists of the names of the approximately 6,400 matches to the Department of State ("DOS"). Watson Tr. at 5:12-14:4. DOS, in turn, revoked the visas of all of the students on these lists who had an unexpired visa, totaling approximately 3,000 individuals, and requested that DHS terminate the SEVIS records of the others since they did not have a visa that could be revoked. Watson Tr. at 15:18-16:4; 18:22-19:4. Then, DHS employees within the National Security Division instructed employees in ICE's SEVP unit to terminate the SEVIS records of all of the approximately 6,400 students, despite the fact that "they were still in status and validly here on status." Watson Tr. at 17:13-16, 18:16-25, 19:11-23:24.

20.     The NCIC database is by no means a list of individuals convicted of crimes, let alone of the "crimes of violence" that would constitute a nonimmigrant's failure to maintain status under 8 C.F.R. § 241.1(g). And yet merely based on matches between NCIC and SEVIS, with no apparent individualized review, ICE effectively terminated the F-1 status of thousands of students, causing immediate, severe, and irreparable harm.

21.     As confirmed by Watson's May 7, 2025, declaration submitted in this case, SEVP terminated Named Plaintiffs' SEVIS records as part of this initiative. Watson Decl. ¶¶ 4-6, ECF No. 38.

---

[17] The NCIC database is a "computerized index of documented criminal justice information" maintained by the Federal Bureau of Investigation. *See* "NCIC Turns 50," U.S. Fed'l Bureau of Investigation (Jan. 27, 2017), https://www.fbi.gov/news/stories/ncic-turns-50?. The database includes information from all kinds of individuals who have had contact with the criminal justice system, whether missing persons, crime victims, or people charged with an offense, regardless of the severity or outcome. Watson Tr. at 5:23–6:24.

22.    Upon information and belief, other members of the Plaintiff Class were also targeted for SEVIS termination as part of this initiative.

23.    In late April, SEVP reactivated Named Plaintiffs' records and stated that no "gaps" or "lapses" remain therein. *See* Hicks Decl. ¶ 3, ECF No. 35. However, the "event history" in each Named Plaintiff's SEVIS account remains visible and unchanged; the notations reading that the students were "identified in criminal records check," *see supra* ¶ 7, are visible to SEVIS users. *See* Hicks Decl. ¶¶ 3-4; Second Linhorst Decl. Exh. A (print-outs of Named Plaintiffs' SEVIS records showing these residual notations).

24.    Upon information and belief, these residual notations remain visible in other Plaintiff Class members' SEVIS records as well.

25.    Even for students whose SEVIS records have been reactivated,[18] the residual notations in their records continue to pose irreparable harm. *See infra* ¶¶ 98-102. The fact that these notations state that the students failed to maintain status and that they were identified through a criminal records check presents serious roadblocks to the students' work and their personal lives.

26.    Around the time SEVP reactivated Named Plaintiffs' records, the Government indicated that a "new process or guidelines" concerning SEVIS record termination was under development. Apr. 28 Tr. 7:5-9. The new policy, dated April 26 ("April 26 Policy" or "Policy"), was filed in the present matter shortly thereafter. ECF No. 32 at 2-3. The policy is titled "Broadcast Message: SEVIS Notice –Policy Regarding Termination of Records" and is designated "FOR INTERNAL SEVP USE ONLY." *Id.* at 2.

---

[18] Evidence suggests that not all members of the Plaintiff Class may have had their records reactivated, or that their SEVIS records may have been reterminated. *See, e.g.*, *SEVIS Record Reactivation and Re-termination Dashboard*, NAFSA, https://www.nafsa.org/policy-and-advocacy/nafsa-sevis-record-reactivation-and-re-termination-dashboard (last visited June 26, 2025) (providing data anonymously shared by DSOs revealing that some students' SEVIS records were not reactivated and several had their SEVIS records reterminated).

27.      The April 26 Policy makes no reference to the regulations governing when SEVP may lawfully terminate a SEVIS record. Rather, the Policy cites to 8 U.S.C. § 1372 – a statute which instructs the Attorney General, in consultation with the Secretaries of State and Education, "'to develop and conduct a program to collect from approved institutions of higher education' information regarding nonimmigrant students and exchange visitors and to 'establish and electronic means to monitor and verify' certain related information.'" ECF No. 32 at 2 (quoting the statute). 8 U.S.C. § 1372 thus provides authority to collect and verify information. But Congress omitted any mention of enforcement power in the statute. The only regulation that explicitly defines DHS's authority as it relates to SEVIS is 8 C.F.R. § 214.3, which regulates the certification and recertification of schools for enrollment of F and M nonimmigrants. Notably, this regulation authorizes DHS to terminate a certified educational institution's SEVIS access, but says nothing about DHS authority over terminating individual students' SEVIS records. Student SEVIS record termination appears only in 8 C.F.R. § 214.3(g)(1)(ix) within a subsection dedicated to the *school's* record keeping and reporting requirements. Nevertheless, the April 26 Policy claims without legal basis that SEVP's authority to "update and maintain the information in SEVIS" under 8 U.S.C. § 1372 also inherently authorizes SEVP to "terminate SEVIS records, as needed, to carry out the purpose of the program." ECF No. 32 at 2.

28.      The April 26 Policy goes on to instruct SEVP personnel that they can terminate a SEVIS record for a "variety of reasons," providing a nonexclusive list of such reasons. *Id*. Many of these reasons do not correspond with any lawful authority to terminate SEVIS records under 8 C.F.R. §§ 214.1(d), 214.2(f). *See infra* ¶¶ 104-109. The Policy also instructs that "[w]hen SEVP has objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason," officers may terminate SEVIS records, but they are not

13

required to present the evidence of alleged noncompliance or notify affected students. ECF No. 32 at 3. Accordingly, affected students would have no way of understanding or contesting the allegation that they are "no longer complying" with their nonimmigrant status.

29.    This diverges from the robust SEVIS record-keeping and reporting requirements that instruct schools to, for example, collect eligibility information, report any change in student records to SEVP within 21 days, and furnish DHS with records upon request, including "the total, unabridged academic history of the student at the institution." 8 C.F.R. § 214.3(g)(1)-(2). Under the existing regulatory scheme, schools are required to monitor whether their F-1 students maintain compliance under 8 C.F.R. § 214.2(f). *See* 8 C.F.R. § 214.3(k). SEVP certification obligates the school to notify SEVP of changes that may affect F-1 student eligibility. 8 C.F.R. § 241.3(g)(2).

30.    In contrast, the April 26 Policy purports to authorize SEVP to terminate SEVIS records based on vaguely defined "objective evidence that a nonimmigrant visa holder is no longer complying with their status for any reason," ECF No. 32 at 3, bypassing contact with DSOs at schools who are empowered by statute as the record-keepers with first-hand information regarding whether students have been maintaining status or have taken actions that might render them ineligible for F-1 status.

31.    The April 26 Policy further instructs that SEVP personnel may terminate a nonimmigrant's SEVIS record based on visa revocation with immediate effect, citing Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1227(a)(1)(B). *See* ECF No. 32 at 3. While it is possible that the revocation of a nonimmigrant visa may give rise to *deportability* under INA § 237(a)(1)(B), DHS cannot simply skip over the entire removal process and effectively terminate an individual's lawful F-1 status by terminating their SEVIS record without providing that individual the process prescribed for removal

proceedings under INA § 240 (8 U.S.C. § 1229a). DHS previously acknowledged this limitation in its own policy guidance issued in 2010, which states that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[19] Under the April 26 Policy, SEVP personnel are essentially instructed to put the "cart before the horse" effectuating the consequence of a finding of deportability without engaging in a removal proceeding under INA § 240 (8 U.S.C. § 1229a), which is the sole and exclusive process through which Congress granted the Department of Justice Executive Office of Immigration Review authority to adjudicate removability.

32.     As a result of the April 26 Policy, and as demonstrated by Defendants' issuance of this unlawful Policy even after courts throughout the United States found Defendants' SEVIS record terminations to be unlawful, the Plaintiff Class continues to face a looming threat that SEVP can and will unlawfully terminate their SEVIS records – and effectively terminate their F-1 status – at any moment, exposing them to at least the irreparable harm that arose from the earlier SEVIS record terminations. *See supra* ¶¶ 11-18; *see also* PI Order at 23-27.

33.     By their own terms, as represented in federal court prior to their disclosure of the April 26 Policy, Defendants only assured Named Plaintiffs that their SEVIS records would not be reterminated until issuance of a new "policy that will provide a framework for SEVIS record terminations." Second Linhorst Decl. Ex. C (April 28 Def. Statement) ("*Until such a policy is issued*, the SEVIS records for plaintiff(s) in this case (and other similarly situated plaintiffs) will remain Active or shall be re-activated if not currently active.") (emphasis added). Plaintiff Class

---

[19] U.S. Immigr. & Customs Enf't, *Policy Guidance 1004-04 – Visa Revocations* 3 (June 7, 2010), https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf. Rather, only upon departure after a visa is revoked is the student's SEVIS record terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* U.S. Dep't of State, *Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION* (Sept. 12, 2016), https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

members are therefore once again at risk of losing their F-1 status since ICE issued the April 26 Policy.

34.    Plaintiff Class members recognize the April 26 Policy for what it is: another way for ICE to target international students and scare them into leaving the United States without receiving their day in court under what can only be described as vibes of deportability rather than official allegations of deportability that require notice and a statutorily required removal proceeding. *See* 8 C.F.R. § 1239.1; 8 U.S.C. § 1229a (INA § 240). The April 26 Policy unlawfully expands ICE's power to terminate SEVIS records well beyond their regulatory authority under 8 C.F.R. § 214.2(f), which permits SEVIS record termination for failure to maintain status within the SEVIS DSO reporting scheme, by instructing SEVP personnel to terminate SEVIS records pursuant to INA § 237 (8 U.S.C. §1227), ignoring the statutorily required proceedings to adjudicate deportability prior to the loss of nonimmigrant status.

16.35.    Due Processprocess, which is guaranteed by the Fifth Amendment to the Constitution of the United States, requires notice and a meaningful opportunity to be heard. No such process was provided here., nor does the April 26 Policy suggest any process will be provided in future terminations.

17.36.    Upon information and belief, ICE's policy of unlawfully and unconstitutionally terminating SEVIS records is designed to coerce international students, including Named Plaintiffs and the Plaintiff Class they seek to represent, into abandoning their studies and leaving the country, despite their successful maintenance of status as reported by DSOs, ongoing academic progress, and their contributions to Rutgerstheir academic community and the United States. *See infra* ¶ 6491.

18.37.  By unilaterally terminating students' SEVIS records on grounds that ~~fall outside~~exceed the statutory and regulatory limits, and providing only vague explanatory notations without any notice to students or opportunity to contest the grounds for these terminations, ICE ~~is misusing~~has misused SEVIS to circumvent the law and the Constitution, and to drive international students out of the country without due process and in violation of DHS regulations. ~~As Rutgers President Jonathan Holloway recently wrote in a message to the Rutgers community, even a small number of status terminations "is understandably chilling to our international community."[20]~~

38.    ICE's April 26 Policy is no improvement; the Policy was neither properly adopted nor is it valid since it enumerates grounds for SEVIS record terminations that squarely fall outside the regulations that govern ICE's authority to terminate SEVIS records for failure to maintain F-1 status or under 8 C.F.R. § 214.1(d). Despite the Policy's requirement that SEVP personnel have "objective evidence" of noncompliance with a nonimmigrant's status prior to termination, ECF No. 32 at 3, this new framework for SEVIS termination still fails to provide due process under the Constitution or laws of the United States that set forth a whole host of obligations for DHS to meet, including to provide: written notice describing the nature of the proceedings against the noncitizen; the legal authority under which the proceedings are conducted; the charges against the noncitizen and the statutory provisions alleged to be violated; an opportunity to be represented by counsel; the time and place of proceedings; consequences of a failure to appear; and service of process. *See* INA § 239 (8 U.S.C. § 1229); 8 C.F.R. § 239.1; 8 C.F.R. § 1239.1. Additionally, the Policy circumvents INA § 240 (8 U.S.C. § 1229a), which Congress specifically legislated as the "sole and exclusive procedure" for deciding the deportability of a noncitizen, upending Plaintiff Class members' statutorily prescribed opportunity to meaningfully contest derogatory information and

---

~~[20] Letter from Jonathan Holloway, President and University Professor, Rutgers University (Apr. 6, 2025), https://www.rutgers.edu/president/we-support-our-international-community-at-rutgers.~~

evidence identified as a basis of deportability that justifies the deprivation of privileges and rights attendant to F-1 status. INA § 240 (8 U.S.C. § 1229a).

## JURISDICTION AND VENUE

19.39.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b) (federal defendant), and 5 U.S.C. § 702 (right of review of agency action).

20.40.  Defendants have waived their sovereign immunity for suits seeking injunctive relief against constitutional and statutory violations. 5 U.S.C. § 702.

21.41.  Venue is proper in the District of New Jersey under 28 U.S.C. §1391(e) as Plaintiffs Students Doe ##1-6 reside in New Jersey and no real property is involved in the action, and because a substantial part of the events giving rise to this claim occurred in New Jersey.

22.42.  An actual justiciable question exists between the parties under 28 U.S.C. § 2201 and this Court has the authority to issue declaratory and injunctive relief. *Id.* §§ 2201, 2202.

23.43.  SEVIS record termination is not reviewable before an ~~Immigration Judge.~~immigration judge. *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182-83 (3d. Cir. 2019). Thus, no other forum exists for Plaintiffs to bring these claims.

## PARTIES

44.    All Named Plaintiffs and Plaintiff Class members are current students or recent graduates in the United States in F-1 status who have had or will have their SEVIS records terminated by DHS. They all reside in or have F-1 status through a higher educational institution located in New Jersey, Pennsylvania, Delaware, or the Virgin Islands.

24.45.  **Plaintiff Student Doe #1** is a native and citizen of India who currently resides in New Jersey and is in their initial year of OPT after recently completing a degree in computer science. Their SEVIS record was initially terminated on or about April 5.

25.46.  **Plaintiff Student Doe #2** is a native and citizen of China who currently resides in New Jersey and is a master's student in health science and anticipates entering a PhD program this fall. Their SEVIS record was initially terminated on or about April 4.

26.47.  **Plaintiff Student Doe #3** is a native and citizen of China who currently resides in New Jersey and is a PhD candidate in engineering. Their SEVIS record was initially terminated on or about April 5.

27.48.  **Plaintiff Student Doe #4** is a native and citizen of China who currently resides in New Jersey and is a PhD candidate studying health science with an anticipated graduation date of August 2025. Their SEVIS record was initially terminated on or about April 8.

28.49.  **Plaintiff Student Doe #5** is a native and citizen of China who currently resides in New Jersey and is a PhD candidate in computer engineering. Their SEVIS record was initially terminated on or about April 8.

29.50.  **Plaintiff Student Doe #6** is a native and citizen of India who currently resides in New Jersey and is a PhD candidate in engineering. Their SEVIS record was initially terminated on or about April 3.

30.51.  **Defendant Kristi Noem** is sued in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. ("DHS"). Defendant Noem has broad authority over the operation and enforcement of U.S. immigration laws.

31.52.  **Defendant Todd Lyons** is sued in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"), a component of DHS. Defendant Lyons has

authority over the operations of ICE and broad authority over the enforcement of immigration laws.

32.53.  **Defendant Ricky J. Patel** is sued in his official capacity as the Special Agent in Charge for the Newark Field Office of ICE Homeland Security Investigations. Upon information and belief, Defendant Patel has authority over the operations of the ~~Student and Exchange Visitor Program~~SEVP and SEVIS and is responsible for the enforcement of immigration laws within ~~this district~~the jurisdiction of the Newark Field Office.

33.54.  **Defendant John Tsoukaris** is sued in his official capacity as the Field Office Director for the Newark Field Office of ICE Enforcement and Removal Operations. Defendant Tsoukaris is responsible for the enforcement of immigration laws within ~~this district~~the jurisdiction of the Newark Field Office.

55.      **Defendant Edward V. Owens** is sued in his official capacity as the Philadelphia Special Agent in Charge of ICE Homeland Security Investigations. Upon information and belief, Defendant Owens has authority over the operations of the SEVP and SEVIS and is responsible for the enforcement of immigration laws within the jurisdiction of the Philadelphia Field Office, which includes Pennsylvania and Delaware.

56.      **Defendant Brian McShane** is sued in his official capacity as the Acting Field Office Director for the Philadelphia Field Office of ICE Enforcement and Removal Operations. Defendant McShane is responsible for the enforcement of immigration laws within the jurisdiction of the Philadelphia Field Office, which includes Pennsylvania and Delaware.

57.      **Defendant Rebecca C. González-Ramos** is sued in her official capacity as the San Juan Special Agent in Charge of ICE Homeland Security Investigations. Defendant González-Ramos has authority over the operations of the SEVP and SEVIS and is responsible for the

enforcement of immigration laws within the jurisdiction of the San Juan Field Office, which includes the U.S. Virgin Islands.

58.    **Defendant Garrett J. Ripa** is sued in his official capacity as the Field Office Director of the Miami Field Office of ICE Enforcement and Removal Operations. Defendant Ripa is responsible for the enforcement of immigration laws within the jurisdiction of the Miami Field Office, which includes the U.S. Virgin Islands.

## FACTS

### F-1 Student Visas and Student Status

34.59.  Under 8 U.S.C. § 1101(a)(15)(F), noncitizen students who enroll in government-approved academic institutions in the United States are eligible for an F-1 student visa. Students are issued the F-1 visa by the U.S. Department of State, and this visa allows them to enter the United States, after which they are granted F-1 student status.[21] They are permitted to remain in the United States for the duration of this status so long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f).

35.60.   An F-1 student visa differs from F-1 student status. The F-1 student visa refers only to the document that grants permission for a noncitizen student to enter the United States, whereas F-1 student status refers to that student's formal immigration classification in the United States after they have entered. *See, e.g.*, 22 C.F.R. § 41.112(a) (noting that the "period of visa validity has no relation to the period of time the immigration authorities at a port of entry may authorize the alien to stay in the United States").

---

[21] Students who enter the United States on other nonimmigrant visas may also obtain F-1 status without leaving the country through an application to the U.S. Citizenship and Immigration Services ("USCIS").

36.61.  ICE's Student and Exchange Visitor Program ("SEVP") administers the F-1 student program and tracks information on students in F-1 student status through SEVIS. SEVIS is a government database that colleges and universities use to track international students' compliance with their F-1 student status. *See* 9 FAM 402.5-4(B) (SEVIS is the "definitive record of student or exchange visitor status.").").

37.62.  Typically, it is the academic institution's Designated School Officials ("DSOs") who update SEVIS with changes in student status. "Each school that educates F-1 students has a Designated School Official ("DSO")[DSO] who monitors, advises, and oversees the students attending his or her institution." *Jie Fang*, 935 F.3d at 175.; *see* 8 C.F.R. § 214.3(g)(1). Under the regulation, DSOs at schools must report through SEVIS when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2). The DSO does so by terminating the SEVIS record and providing a

reason for the termination. *See* 8 C.F.R. § 214.3(g)(1)(ix). Students whose SEVIS records have been terminated are "no longer in an authorized period of stay in the United States."[22],[23]

---

[22] ~~U.S. Dep't of Homeland Sec., *Maintaining Accurate SEVIS Records*, *supra* n. 7.~~ U.S. Dep't of Homeland Sec., *Maintaining Accurate SEVIS Records*, *supra* n. 9. In several recent cases examining the legality of SEVIS record terminations, courts have understood the termination of a student's SEVIS record to also effectively terminate a student's F-1 student status. *See, e.g., Doe v. Trump*, --- F.Supp.3d ----, 2025 WL 1467543, at *6-7 (N.D. Cal. May 22, 2025) (joining the "growing number of courts around the United States" that have "conclude[d] Defendants' argument that there is a distinction between having an active SEVIS record and maintaining lawful F-1 status is unpersuasive and unsupported by the record. By terminating Plaintiffs' SEVIS records, Defendants altered Plaintiffs' legal status within the United States."); *Doe v. Noem*, --- F.Supp.3d ----, 2025 WL 1399216, at *9 (W.D. Va. May 14, 2025) ("Defendants claim that they never actually terminated Doe's F-1 status…They assert that SEVP merely terminated Doe's *SEVIS record*, and that terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. This *post-hoc* distinction offends common sense. In fact, it appears Defendants have invented this distinction to avoid responsibility for an obvious attempt to communicate that Doe had lost F-1 status. It is implausible to suggest that the April 4, 2025 update to Doe's SEVIS record had no implications for his F-1 status. That update communicated in quite clear terms that Defendants terminated Doe's SEVIS record *because* his F-1 status was terminated.") (internal citations and quotation marks omitted) (emphasis in original); *Liu v. Noem*, --- F.Supp.3d ----, 2025 WL 1233892, at *5-6 (D.N.H. Apr. 29, 2025) ("To begin, although the defendants stated several times during the hearing that DHS did not terminate Liu's actual F-1 student status, they repeatedly declined the opportunity to offer any evidence to support that assertion…[T]he evidence before the court at this stage demonstrates that DHS officials and agencies follow this directive and construe a student's SEVIS record as the equivalent of his actual F-1 student status.").

[23] ~~In several recent cases examining the legality of SEVIS record terminations, courts have understood the termination of a student's SEVIS record to also terminate a student's F-1 student status. *See, e.g., Student Doe v. Noem*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *6 (E.D. Cal. Apr. 17, 2025) ("Because plaintiff offers evidence supporting the conclusion that neither reason given for termination is permitted by the applicable regulations, plaintiff will also likely show that defendants' decision to terminate his SEVIS record, effectively terminating his F-1 status, was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA."); *Roe v. Noem*, No. CV 25-40-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) ("8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa. . . . Moreover, Plaintiffs' academic record and lack of criminal history fails to support an alternative basis for termination of their F-1 status; at any rate, DHS's decision does not purport to rely upon such a reason."); *Isserdasani v. Noem*, No. 25-cv-00283-WMC, 2025 WL 1118626, at *5 (W.D. Wis. Apr. 15, 2025) ("[P]laintiff Isserdasani has shown a substantial, if not overwhelming, likelihood of success on the merits of his claim in Count 2 that DHS violated the APA when it summarily terminated his F-1 student status in SEVIS without cause."); *Liu v. Noem*, No. 25-cv-133-SE, op. at 3 (D.N.H. April 10, 2025) ("Liu has shown a likelihood of success on the merits of his claim in Count 2, that DHS violated the APA when it terminated his F-1 student status in the SEVIS system.").~~

**Effect of SEVIS Record Termination on F-1 Student Status**

~~38.~~63.  F-1 students admitted to the United States receive a Form I-94 Arrival/Departure Record which shows their authorized period of stay. Students admitted in F-1 status are admitted for the "duration of status" (D/S) and the Form I-94 is marked "D/S", ~~meaning~~which is defined as the period of stay during which an F-1 student ~~may stay in the United States for the duration of their program,~~is pursuing a full course of study~~, or temporary work assignment to the United States at an educational institution certified by SEVP, engaging in authorized post-completion practical training~~, plus any additional grace periods that may be authorized afterward.  8 C.F.R. § 214.2(f)(5)(i).[24]

~~39.~~64.  Noncitizen students in F-1 student status are "subject to an array of regulations." *Jie Fang*, 935 F.3d at 175 (citing 8 C.F.R. § 214.2(f)). These include maintaining a full course of study or engaging in authorized practical training after completing their studies, *see* 8 C.F.R. § 214.2(f)(5)(i), and avoiding unauthorized employment, *see* 8 C.F.R. § 214.2(f)(9). "A student who 'fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status' must depart the United States immediately or seek reinstatement," with no grace period. *Jie Fang*, 935 F.3d at 175-76 (quoting 8 C.F.R. § 214.2(f)(5)(iv)).

~~40.     SEVIS~~Nonimmigrant status termination is governed by ~~SEVP policy and~~ federal regulations~~.~~ and agency policy. The regulations distinguish between ~~two separate ways a student may lose status: either (1) a student fails to maintain~~termination of status for people in any nonimmigrant status, ~~or (2) through an agency-initiated~~governed by 8 C.F.R. § 214.1(d), and

---

[24] *See* 9 FAM 402.5-5(L)(1)(a); U.S. Citizenship & Immigr. Servs., *Unlawful Presence and Inadmissibility*, https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-inadmissibility (last updated Jan. 25, ~~22.~~2025).

termination of status. *See* for failure to specifically maintain F-1 status under 8 C.F.R. §§ 214.1(d),§ 214.2(f).

65.    Students fail to maintain F-1 student status under the SEVIS system8 C.F.R. § 214.2(f) when they do not comply with the regulatory requirements, such as by failing to maintain a full course of study, engaging in unauthorized employment, or violating other requirements under 8 C.F.R. § 214.2(f). In addition,.

41.66.  8 C.F.R. §§ 214.1(e)-(g) outlines specific circumstances where certain conduct by ana noncitizen with nonimmigrant visa holderstatus "constitute[s] a failure to maintain status," including engaging in unauthorized employment, providing false information to DHS, or being convicted (not merely charged) of a crime of violence with a potential sentence of more than a year.²⁵ one year.²⁶ However, failure to maintain status is clearly defined as within the meaning of INA § 237, requiring procedural due process guarantees under INA §§ 239 and 240.

---

²⁵ "A condition of a nonimmigrant's admission and continued stay in the United States is obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed. A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status under section 241(a)(1)(C)(i) of the Act." 8 C.F.R. § 214.1(g). A crime of violence "means an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Borden v. United States*, 593 U.S. 420, 427 (2021) (internal quotation marks omitted). Misdemeanor offenses and traffic violations cannot meet this threshold. Charges for a crime of violence – rather than convictions – likewise cannot constitute a failure to maintain status.

²⁶ "A condition of a nonimmigrant's admission and continued stay in the United States is obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed. A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status under section 241(a)(1)(C)(i) of the Act." 8 C.F.R. § 214.1(g). A crime of violence "means an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Borden v. United States*, 593 U.S. 420, 427 (2021) (internal quotation marks omitted). Misdemeanor offenses and traffic violations cannot meet this threshold. Charges for a crime of violence – rather than convictions – likewise cannot constitute a failure to maintain status.

42.67.  When ~~ICE~~SEVP terminates a student record in SEVIS, this action reflects and communicates that ~~ICE~~SEVP no longer considers the student in F-1 student status. The ~~ICE~~DHS SEVIS Help Hub~~,~~ *Terminate a Student* webpage instructs that where, as in Named Plaintiffs' ~~case~~cases, the stated "Termination Reason" is "Termination for any violation of status" – as opposed to "Authorized Early Withdrawal," "Change of Status Approved," or "Change of Status Denied" – this ends the student's "Duration of Status" with "[n]o grace period," and "the student must either apply for reinstatement, or the student and their dependents must leave the United States immediately."[27] According to the Department of State website for F-1 students, ~~"Failure~~"[f]ailure to depart the United States on time will result in being out of status. ~~Visas of individuals who are out of status are automatically voided (Section 222(g) of the Immigration and Nationality Act)."~~ "[28]

43.68.  Agency-initiated termination of F-1 student status ~~via the SEVIS system~~ "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can only terminate F-1 student status in three scenarios: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d).

44.69.  Students who have lost their F-1 status – either through a failure to maintain their status or through agency-initiated revocation – may seek reinstatement through an administrative process. Under regulations, United States Citizenship and Immigration Services ("USCIS") "may consider" reinstating a student who demonstrates that he or she: (1) "[h]as not been out of [valid

---

[27] *See* U.S. Dep't of Homeland Sec., *Terminate a Student*, *supra* n. ~~6~~8.

[28] *See* U.S. Dep't of State, *Student Visa*, https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html (last accessed ~~Apr. 21~~June 23, 2025).

F-1] status for more than 5 months at the time of filing the request for reinstatement (or demonstrates that the failure to file within the 5 month period was the result of exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances)"; (2) "[d]oes not have a record of repeated or willful violations of Service regulations"; (3) "[i]s currently pursuing, or intending to pursue, a full course of study"; (4) "[h]as not engaged in unauthorized employment"; (5) "[i]s not deportable on any ground other than 8 U.S.C. § 1227(a)(1)(B) and (C)(i) of the Act"; and (6) establishes "to the satisfaction of USCIS" either that "[t]he violation of status resulted from circumstances beyond the student's control," or that "[t]he violation relates to a reduction in the student's course load that would have been within a DSO's power to authorize, and that failure to approve reinstatement would result in extreme hardship to the student." 8 C.F.R. §§ 214.2(f)(16)(i)(A)-(F); *see also Jie Fang*, 935 F.3d at 176.

45.70.  While individuals whose ~~F-1 status or SEVIS~~ records have been terminated in SEVIS for failure to maintain status based on noncompliance with 8 C.F.R. § 214.2(f) can apply for reinstatement, there is no opportunity to seek review of the ~~status~~SEVIS record termination for failure to maintain status itself, *see Jie Fang*, 935 F.3d at 183, and ~~it~~reinstatement does not prevent ICE from taking enforcement ~~actions~~action as a result of those terminations. ~~In fact, a student must already be out of status to be considered for reinstatement. *See* 8 C.F.R. § 214.2(f)(7)(iii), (8)(i). Moreover, reinstatement is entirely at the discretion of USCIS, and no appeal is available to the student. *Jie Fang*, 935 F.3d 172, 176 (3d Cir. 2019) (citation omitted).~~

46.71.  ICE's termination of a student's SEVIS record effectively strips ~~these students~~the student of the benefits and privileges attendant to F-1 status, causing severe consequences. It immediately forecloses the student's access to pre-completion OPT~~,~~ or post-completion OPT, and

prohibits them from changing their immigration status to other nonimmigrant or immigrant statuses. It also disables a DSO's ability to authorize and issue an active Form I-20 for that student, a form which USCIS requires in order to approve an international student's application for work authorization approval.[29] *See* ~~Declaration of Eric Garfunkel (filed in this matter with Plaintiffs' Emergency Motion for a Temporary Restraining Order) ("~~Garfunkel Decl.~~")~~. ¶¶ 7, 8, 20.~~30~~, ECF No. 2-3. The corresponding ~~regulations~~regulation reads, "[a] student *must* initiate the OPT application process by requesting a recommendation for OPT from his or her DSO. Upon making the recommendation, the DSO will provide the student a signed Form I-20 indicating that recommendation." ~~(Emphasis Added).~~8 C.F.R. § 214.2(f)(11)(i) (emphasis added). A SEVIS record termination makes this impossible.

~~47.~~72. Additional downstream immigration consequences include impacts on the student's ability to travel internationally and to apply to extend or change their immigration status. An F-1 student who is "out~~ ~~of~~ ~~status" cannot reenter on the original I-20,[31] nor can they change status to a different ~~non-immigrant~~nonimmigrant status based on employment, such as an H-1B, or a more permanent status (like that of lawful permanent resident) where adjustment is not permitted if an applicant was out of status during any prior entries.[32] *See* 8 ~~CFR~~C.F.R. § 245.1(b)(5) (barring

---

[29] The Form I-765 instructions for F-1 Students Seeking Pre-completion OPT, Post Completion OPT, and a 24-month STEM extension, require students to submit a "Certificate of Eligibility of Nonimmigrant Students Status (F-1) Student Status (Form I-20)" endorsed by the DSO. *Instructions for Application for Employment Authorization*, Edition Date ~~08/28/2024,~~ 01/25/2025 (last accessed ~~April     21~~June     23, 2025~~,     at),~~ https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf ~~.~~
~~*Instructions for Application for Employment Authorization*, Edition Date 08/28/2024, last accessed April 24, 2025, at https://www.uscis.gov/sites/ default/files/document/forms/i-765instr.pdf~~
[31] *See* U.S. Dep't of Homeland Sec., *Terminate a Student*, *supra* n. ~~6~~8.
[32] *See* ~~USCIS Policy Manual,~~U.S. Citizenship and Imm. Servs., *Chapter 4 - Extension of Stay, Change of Status, and Extension of Petition Validity*, USCIS Policy Manual (current as of June 13,

certain applicants who are not in lawful immigration status on the date of filing their application from adjusting their status to permanent resident); 8 ~~CFR~~C.F.R. § 245.1(b)(6) (barring certain applicants who ever failed to continuously maintain a lawful status since entry into the United States from adjusting their status unless they can show that their failure to maintain status was through no fault of their own or for technical reasons).

48.73.  Further, students subjected to SEVIS record terminations and the termination of F-1 status communicated thereby can be subject to removal from the United States. ~~Any noncitizen "who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked . . . is deportable." 8 U.S.C. § 1227(a)(1)(B). And a~~A noncitizen "who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status" in which they were admitted, or fails "to comply with the conditions of any such status, is deportable." ~~8 U.S.C. § 1227(a)(1)(C)(i). *See supra*, para 13, *infra* para 57~~8 U.S.C. § 1227(a)(1)(C)(i). And a SEVIS record termination entered by a DSO would subject an individual to ICE investigation and potential enforcement because it alleges a failure to maintain nonimmigrant status.

49.74.  Although proof that a student has maintained status can be grounds for dismissing removal proceedings when a student visa has been revoked, 8 C.F.R. § 1003.18(d)(ii)(B), ~~the Immigration Judge has no~~termination of a SEVIS record under 8 C.F.R. § 213.2(f) and termination of status under 8 C.F.R. § 214.1(d) omit citation to any deportability grounds under INA § 237 that would require the initiation of removal proceedings under INA §§ 239 and 240. Rather, they

2025), https://www.uscis.gov/policy-manual/volume-2-part-a-chapter-4 ("In general, USCIS does not approve an extension of stay or change of status for a person who failed to maintain the previously accorded status or where such status expired before the filing date of the application or petition.~~")~~.").

prescribe reinstatement under 8 C.F.R. § 214.2(f)(16), which is not redress but a discretionary request requiring concession of violating status. In this case, Named Plaintiffs and Plaintiff Class had their SEVIS records terminated, effectively terminating access to benefits, protections and privileges associated with F-1 status for failure to maintain status under some unnamed authority that makes it indiscernible whether SEVP terminated the records based on INA §237, 8 C.F.R. § 214.2(f), 8 C.F.R. §§ 214.1(f)-(g), or something else entirely. By terminating the SEVIS record and failing to specify a deportability ground, ICE may never choose to initiate removal proceedings, and as such an immigration judge may never have the ability to review the F-1 student status termination itself. *See Jie Fang*, 935 F.3d at 183.

50.75.  If DHS believes that a student is deportable for any reason, such as a revoked visa or criminal convictions, the agency may initiate removal proceedings in Immigration Court. The agency cannot lawfully do what the Defendants have done in this case: namely, strip students of their F-1 status by terminating SEVIS records without alleging any of the three, limited grounds upon which the agency can initiate a status termination, *see* 8 C.F.R. § 214.1(d), in an attempt to revoke their ability to lawfully remain in the United States.

51.76.  Notably, Named Plaintiffs and the Plaintiff Class do not challenge revocation of their F-1 visas through this action;[33] indeed, none of the Plaintiffs have received any notice that

---

[33] In the event that any of the Plaintiffs do receive notice that their visas were revoked, however, the revocation of an F-1 visa does not constitute a failure to maintain F-1 student status and cannot serve as a basis for agency-initiated termination of F-1 student status in the SEVIS system. DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." U.S. Immigr. & Customs Enf't, *Policy Guidance 1004-04 — Visa Revocations* 3 (June 7, 2010), https://www.ice.gov/doclib/sevis/pdf/ visa_revocations_1004_04.pdf. Rather, only upon departure after a visa is revoked is the student's SEVIS record terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* U.S. Dep't of State, *Guidance Directive 2016-03, 9 FAM 403.11-3 — VISA REVOCATION* (Sept. 12, 2016), https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

their F-1 visas were revoked, which would trigger notice and an opportunity to be heard. Rather, ~~Plaintiffs~~Plaintiff Class members bring this action to challenge the unlawful termination of their SEVIS records and F-1 student status, which is ~~by contrast effectively unreviewable~~effectively unreviewable because reinstatement proceedings are neither required by statute or regulation nor do they afford the students an opportunity for review of DHS's decision to terminate their SEVIS records, and effectively their F-1 status. *See Jie Fang*, 935 F.3d at 185.

**Termination of Plaintiffs' SEVIS Records**

~~52.~~77.  Named Plaintiffs' SEVIS records were terminated between April 3 and April 8, by way of notations in SEVIS reflecting that ICE views their F-1 ~~Status~~status as terminated: specifically, the notation accompanying the terminations for Named Plaintiffs whose SEVIS records were terminated between April 3-7 first read: "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Then, sometime before April 9, the notations in these Named Plaintiffs' SEVIS files were adjusted to read: "OTHER - Individual identified in criminal records check and/or has had their VISA revoked." Two of the Named Plaintiffs' SEVIS records were terminated on April 8, and the notation in their SEVIS file ~~read~~reads the same as the adjusted notation. No further explanation nor individualized reasoning has been provided~~.~~ to the students or the DSOs. *See* Garfunkel Decl. ¶¶ 16; Student Doe #1 Decl. ¶ 14 ("To have my whole life turned upside down without any chance to understand why or to defend myself is truly unfathomable to me."); Student Doe #6 Decl. ¶ 18 ("I cannot understand how this happened. I was given no explanation, no notification, and no time to even process this abrupt overturn of my life plans.~~")~~.").

~~53.~~78.  Indeed, Named Plaintiffs ~~have~~did not ~~received~~receive any notification from DHS or the Department of State concerning revocation of their ~~visas~~F-1 status. Student Doe #1 Decl. ¶

16; Student Doe #2 Decl. ¶ 10; Student Doe #3 Decl. ¶ 11; Student Doe #4 Decl. ¶ 11; Student Doe #5 Decl. ¶ 9; Student Doe #6 Decl. ¶ 16.

79.     Upon information and belief, the SEVIS records of other members of the Plaintiff Class were terminated in the same or a similar manner to the Named Plaintiffs in late March or early April, 2025, with the same lack of notice.

54.80.  Regardless of why their SEVIS status was terminated, PlaintiffsPlaintiff Class members have not engaged in any conduct that would trigger a termination of their F-1 student status. None of the Plaintiffsclass members failed to maintain status under the requirements enumerated in 8 C.F.R. § 214.2(f). Nor did any of them engage in conduct that would result in a loss of status under 8 C.F.R. §§ 214.1(e)-(g). Rather, DHS unilaterally terminated their F-1 student status by entering a boilerplate notation on SEVIS without providing any specific factual basis or legal authority for doing so.

55.81.  DHS then failed to notify most Named Plaintiffs and their DSOs about the terminations. The DSOs at Rutgers only learned about the SEVIS record terminations of the Named Plaintiffs through their regular checks of the SEVIS system. Garfunkel Decl. ¶¶ 9, 14, 15, 16. Plaintiffs were subsequently alerted to the terminations by their DSOs through email. The email from Rutgers informed Named Plaintiffs that their "record was marked as terminated" and instructed them to "please cease any employment immediately" because "all employment authorization, on- or off-campus ends immediately when you fall out of valid status." It further delineated several options, including "[d]epart[ing] the U.S. as soon as possible," "[r]each[ing] out to an immigration attorney," and "[c]onsidering an application for reinstatement of F-1 status." Except for Plaintiff Student Doe #1, PlaintiffsStudents Doe ## 2-6 and Rutgers staff members have not received any notice from DHS, including from ICE.

56.82.  ~~The~~These SEVIS record terminations have had immediate consequences for ~~Plaintiffs.~~Plaintiff Class members. As an initial matter, Named Plaintiffs and other Plaintiff Class members who ~~are currently~~were participating in the OPT program or in research-related activities ~~have~~ had their employment terminated. This ~~has~~ had an immediate financial impact on the affected ~~Plaintiffs~~students and their families, while also denying ~~Plaintiffs~~them the practical training and work experience that is part and parcel of their educational programs. *See* Student Doe #1 Decl. ¶17 ("By the end of April, I do not know how I will afford [basic] expenses, and I am extremely concerned for my wellbeing and safety, as well as my family in India whom I send money to."); Student Doe #4 Decl. ¶ 13 ("[B]ut now the University has stopped paying me due to the SEVIS record termination . . . . I expect to run out of money in approximately two months. All of this is extremely stressful for me and my family."); Student Doe #6 Decl. ¶ 18 ("Because I was very precise in my calculations for my financial resources during my studies, I cannot afford to delay my studies.").

57.83.  The SEVIS record terminations ~~place Plaintiffs~~placed Plaintiff Class members at immediate risk of arrest, detention and deportation – an outcome that other students ~~have~~had already faced.[34] ~~Plaintiffs are living~~ – causing great emotional distress. *See supra* ¶¶ 17-18. When their SEVIS records were terminated, and until the Court issued a text order on April 23, ECF No. 10, and a Preliminary Injunction on May 8, ECF No. 39, Named Plaintiffs lived with intense anxiety about the possibility of being detained and deported. *See* Student Doe #1 Decl. ¶ 18 ("I am looking over my shoulder everywhere I go. I don't know whether I should go outside, because I hear that ICE can come at any time and arrest me . . . . The fear is debilitating."); Student Doe #6

---

[34] ~~*See, e.g., Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 U.S. Dist. LEXIS 64831 (D. Mass. Apr. 4, 2025).~~

Decl. ¶ 18 ("Since I was informed of my SEVIS record termination, I have had knots in my stomach and crying spells several times a day. I am overcome with stress[.]").

58.84.  Even if ICE does not seek to detain PlaintiffsPlaintiff Class members or initiate removal proceedings on the basis of the SEVIS record termination, the SEVIS record termination itself means that Plaintiffs can no longerterminations, the students cannot provide proof of lawful status in the event they are stopped and questioned by immigration enforcement authorities. when their SEVIS records are terminated. Garfunkel Decl. ¶¶ 4, 8 ("The Form I-20 proves that an individual is legally enrolled in a program of study in the United States" and after a SEVIS record is terminated, "[t]he institution also cannot produce or issue an active Form I-20 or evidence of the student's F-1 status or authorization to work in the United States.").").

59.85.  Named Plaintiffs' particular academic and career goals and projects havewere also been abruptly interrupted, leaving them unsure how they can salvage their research or their degrees. *See* Student Doe #2 Decl. ¶ 11 (explaining that because they are unable to work in their lab after the SEVIS termination, "some of [their] experiments have completely failed" given the experiments' time sensitivity); Student Doe #3 Decl. ¶ 10 (nearly three years into a PhD program, and now "do[es] not know where things stand, and the last several days have been very difficult"); Student Doe #4 Decl. ¶ 13 ("When I was informed of my SEVIS record termination, I was only a few months away from completing my PhD...but now I cannot complete my research or work toward that degree, and I am afraid I will not be able to prepare the lab work necessary to defend my dissertation[.]"); Student Doe #5 Decl. ¶ 10 ("[M]y PhD program has been entirely disrupted, which has caused me severe distress. My qualifying exam will need to be extended and I am not able to continue my research. I fear that if I am not able to complete my PhD, I will have wasted the past three years, and my future will be completely disrupted.").").  Members of the Plaintiff

class have faced, or will face, a similar interruption or halt to their academic and career paths due to Defendants' unlawful termination of their SEVIS records.

### DHS Pattern, ~~Practice, and/or Policy of~~ F-1 Visa Revocations and ~~SEVIS Record Terminations~~

~~60.~~86.  The unlawful ~~terminations~~termination of ~~Plaintiffs'~~Plaintiff Class members' SEVIS records are part of a large-scale pattern, practice, and/or policy being pursued by Defendants, whether written or not, to cancel the status of ~~hundreds — if not~~ thousands — of international students nationwide who have not engaged in any conduct whatsoever that would warrant the termination of their F-1 status. Defendants have done so without having any lawful basis for the terminations and without complying with the process required for status termination. Under the normal process, a failure to maintain status would be reported by the student or the DSO, then the DSO would upload documentation to support ~~to~~the termination in SEVIS. Garfunkel Decl. ¶ 12. ICE SEVP may only terminate status thereafter. Here, however, ~~ICE's purpose is~~ICE acted far outside its statutory powers in an effort to compel students to leave the United States by leveling vague, boilerplate accusations of ~~failure~~"failing to maintain status" against them ~~with~~that failed to specify charges or statutory provisions alleged to be violated, resulting in no clear forum for redress, if any.

~~61.        As of~~In April ~~21, 2025, *Inside Higher Ed*, an industry publication, reported more than 1,680 terminations at 250 different educational institutions.[35] The same publication indicated that it is likely that many visa revocations and SEVIS status terminations are going unreported, suggesting that estimates are "almost certainly a fraction of the total because "[m]any . . . colleges are reluctant to publicly confirm any student visa revocations" and are "anxious to avoid attracting~~

---

[35] ~~*See* Inside Higher Ed, *International Student Visas Revoked, supra* n. 3.~~

~~federal scrutiny and uncertain how to navigate an increasingly fraught gray zone."[36]  Mass terminations of SEVIS records have also been documented in numerous news outlets.[37]~~

87.    ~~Upon information and belief, ,~~ reports surfaced of a DHS task force ~~has been targeting the status of international students.[38]  This task force has been~~ using data analytic tools to search the social media histories of ~~about 1.5 million~~ international students ~~who study or work in the United States,~~ in an effort to deport ~~international students and recent graduates.[39]  The task force is deploying the data analytic tools to identify people on the basis of past charges that would not justify either then termination of the F-1 status or their deportation from the United States, such as municipal violations and dismissed charges that were later expunged.[40]~~them.[41] At the same time, USCIS announced viewpoint-specific social media screening "as grounds for denying immigration benefit requests,"[42] – a process intended to implement Executive Order 14161 that requires enhanced vetting processes to "ensure that admitted aliens and aliens otherwise already present in

---

[36] ~~Laim Knox, *Student Visa Dragnet Reaches Small Colleges*, Inside Higher Ed (April 8, 2025), https://www.insidehighered.com/news/global/international-students-us/2025/04/08/trump-admin-broadens-scope-student-visa.~~

[37] ~~*See, e.g.,* Annie Ma, Makiya Seminera, and Christopher L. Keller, *Visa Cancellations Sow Panic for International Students, with Hundreds Fearing Deportation*, AP News (Apr. 16, 2025), https://apnews.com/article/international-student-f1-visa-revoked-college-f12320b435b6bf9cf723f1e8eb8c67ae (reporting that at least 901 students have been impacted, according to an Associated Press count, and"[f]ew corners of higher education have been untouched").~~

[38] ~~Julia Ainsley, *Inside the DHS Task Force Scouring Foreign Students' Social Media*, NBC News (Apr. 9, 2025), https://www.nbcnews.com/politics/national-security/dhs-task-force-scouring-foreign-students-social-media-rcna198532.~~

[39] ~~*See id.*~~

[40] ~~*Id.*~~

[41] *See* Julia Ainsley, *Inside the DHS Task Force Scouring Foreign Students' Social Media*, NBC News (Apr. 9. 2025), https://www.nbcnews.com/politics/national-security/dhs-task-force-scouring-foreign-students-social-media-rcna198532.

[42] U.S. Citizenship and Imm. Servs., *DHS to Begin Screening Aliens' Social Media Activity for Antisemitism* (Apr. 9, 2025), https://www.uscis.gov/newsroom/news-releases/dhs-to-begin-screening-aliens-social-media-activity-for-antisemitism.

the United States do not bear hostile attitudes toward its citizens, culture, government, institutions, or founding principles[.]"[43]

88.    Testimony by ICE Assistant Director Andre Watson revealed that DHS was systematically terminating students' SEVIS records based on prior contacts with law enforcement that do not justify termination under the statutory scheme. Named Plaintiffs were among the 6,400 students targeted through the "student criminal alien initiative," described *infra* ¶ 19, despite the fact that "they were still in status and validly here on status," Watson Tr. at 17:13-16, 18:16-25, 19:11-23:24.  Upon information and belief, other members of the Plaintiff Class were also targeted for SEVIS termination as part of this initiative.

62.89.  Certain criminal convictions can constitute a failure to maintain status. 8 C.F.R. § 214.1(g). But the conviction must be "for a crime of violence for which a sentence of more than one year imprisonment may be imposed." *Id.* Plaintiff Class members do not have any such convictions. *See, e.g.*, Student Doe #5 Decl. ¶ 7 ("I have had some parking and driving violations in the United States, as well as a dismissed and expunged case. I have no criminal convictions."); Student Doe #6 Decl. ¶ 8 (describing a false charge of simple assault that was dismissed and expunged). Some of these are based upon a record of an encounter with a law enforcement official – no matter how innocuous and regardless of whether charges were dropped.[44] *See, e.g.*, Student Doe #3 Decl. ¶ 9 (describing a non-criminal municipal violation of loitering, and some parking and driving violations); Student Doe #5 Decl. ¶ 7 (acknowledging parking and driving violations, as well as a dismissed and expunged case).

---

[43] Exec. Order No. 14161, 90 Fed. Reg. 8451 (Jan. 20, 2025).

[44] Any encounter with criminal law enforcement is not grounds for terminating status. Students can only fail to maintain their status and therefore lose their F-1 status on the basis of criminal history if they are convicted of a crime of violence. 8 C.F.R. § 241.1(g); *see supra* ¶ 41. n. 22, ¶¶ 66, 89.

~~63.     The analytic tools used by this task force are maintained by U.S. Customs and Border Protection's ("CBP's") National Targeting Center and National Vetting Center.[45] Upon information and belief, once a student is identified in this automated system, the task force initiates a chain of actions across several agencies and ultimately "informs Immigration and Customs Enforcement agents in local field offices to arrest and deport the student."[46] Thus, the task force is seeking to effect the deportation of international students.~~

90.     ~~Upon information and belief, ICE also seeks~~The "student criminal alien initiative" and any subsequent efforts by ICE to terminate SEVIS records based on contact with law enforcement agencies fall plainly outside of the three, limited grounds under which DHS can terminate nonimmigrant status. *See* 8 C.F.R. § 214.1(d); *Jie Fang*, 935 F.3d at 185 n.100. Moreover, alleged 8 C.F.R. § 214.1(d) violations implicate deportability grounds that require immigration proceedings to determine whether someone is in fact deportable, and thus subject to consequences under INA § 237(a).

~~64.~~91. Upon information and belief, DHS has pursued these unlawful methods of terminating SEVIS records in an effort to coerce students into leaving the United States ~~by terminating their status.~~ For example, after Columbia University doctoral student Ranjani Srinivasan was informed that her SEVIS record was terminated and her F-1 student visa had been canceled, she elected to leave the United States in light of the "volatile and dangerous" atmosphere.[47] After Ms. Srinivasan traveled to Canada, Defendant Noem celebrated her departure, writing on X (formerly Twitter) that she was "glad to see" Ms. Srinivasan "use the CBPHome app

---

[45] ~~*Id.*~~

[46] ~~*Id.*~~

[47] Luis Ferré-Sadurni and Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, New York Times (Mar. 15, 2025), https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristi-noem-video.html.

to self deport."[48] Another student whose visa was revoked, Cornell University student Momodou Taal, likewise elected to leave the United States after he "lost faith [he] could walk the streets without being abducted."[49] Some students whose status has been revoked have reportedly been encouraged to "self-deport" rather than risk detention.[50] Defendant Noem has also stated that if noncitizens do not "self-deport," "we will find them, we will deport them, and they will never return."[51]

65.92.  The timing and uniformity of ~~these~~Named Plaintiffs' SEVIS record terminations, along with news of ~~this task force~~the "student criminal alien initiative" and other reports of DHS targeting students, leave little question but that DHS has adopted a nationwide policy, whether written or not, of mass terminations of F-1 student status via SEVIS record terminations, which ~~are being~~have been made indiscriminately ~~and,~~ without sufficient review, and in clear violation of the statutory scheme Congress legislated to govern F-1 status terminations.

66.93.  Upon information and belief, DHS has targeted students from China ~~and,~~ India, and/or Asia for SEVIS record terminations. Whereas more than 120 countries are represented in the Rutgers international student community,[52] Plaintiffs Students Doe ## 1-6 are all from India and China, and 13 of the 14 Rutgers students ~~who have recent~~whose SEVIS ~~record terminations~~ records were terminated in April 2025 are nationals of these two countries. Garfunkel Decl. ¶ 19.

---

[48]    Kristi Noem (@Sec_Noem), X (Mar. 14, 2025), https://x.com/Sec_Noem/status/1900562928849326488

[49]    Momodou Taal (@MomodouTaal), X (Mar. 31, 2025), https://x.com/MomodouTaal/status/1906842790778057173.

[50] Andy Rose and Carroll Alvarado, *More Than 500 Student Visas Revoked as the Government Expands Reasons for Deportation*, CNN (Apr. 11, 2025), https://www.cnn.com/2025/04/09/us/us-immigration-student-visas-revoked/index.html.

[51] Press Release, U.S. Dep't of Homeland Sec., DHS Launches CBP Home App with Self-Deport Reporting Feature (Mar. 10, 2025), https://www.dhs.gov/news/2025/03/10/dhs-launches-cbp-home-app-self-~~deport-reporting~~deportreporting-feature.

[52] Rutgers, *By the Numbers*, https://www.rutgers.edu/about/by-the-numbers (last visited ~~Apr. 19~~June 23, 2025).

Other ~~recently filed~~ lawsuits challenging the SEVIS record terminations have documented the same pattern.[53] ~~A policy brief from~~ Analysis by the ~~American Immigration Lawyers~~ National Association ~~("AILA") revealed~~ of Foreign Student Advisors ("NAFSA") in early May showed that ~~of the 327 reports of visa and/or SEVIS terminations collected by AILA, 50 percent of affected students are from~~ India, ~~and 14 percent are from~~ China far outrank other countries of origin with regard to the number of students who had their SEVIS records terminated and/or visas revoked, and that five out of the top seven countries of origin of students affected by these SEVIS record terminations were Asian countries, especially China and India.[54]

~~67.~~94.  Project 2025, which the Trump Administration has adopted as a blueprint for its policies, advises that the U.S. should "[s]ignificantly reduce or eliminate the issuance of visas to Chinese students or researchers to prevent espionage and information harvesting."[55] A ~~recent~~ tweet by Donald Trump, Jr., in April supported the idea of "pulling all the student visa [*sic*] and sending all the spies home."[56] ~~And~~ Republicans in the House of Representatives ~~recently~~ introduced legislation to amend the Immigration and Nationality Act to permanently bar all Chinese nationals

---

[53] ~~*See, e.g., Jane Doe 1, et al.,*~~ *See, e.g., Chen et al., v. Noem et al.*, No. 4:25-cv-03292-JSW (N.D. Cal. filed Apr. 11, 2025) (alleging that ICE has demonstrated a "pattern of targeting [that] disproportionately affects students of Chinese nationality"); *Jane Doe 1, et al., v. Bondi et al.*, No. 1:25-cv-01998 (N.D. Ga. filed Apr. 15, 2025) (brought on behalf of 133 plaintiffs, of which 69 are Indian nationals and 29 are Chinese nationals, far outnumbering students from other countries); *Chinmay Deore v. Noem*, No. 25-cv-11038-SJM-DRG (E.D. Mi. filed Apr. 10, 2025) (identifying one plaintiff as a citizen of India and the three other plaintiffs as Chinese citizens); *Liu et al., v. Noem*, No. 1:25-cv-00716-JPH-TAB (S.D. In. filed Apr. 15, 2025) (identifying six plaintiffs as Chinese citizens or nationals, and one plaintiff from Nigeria).

[54] ~~Shev Dalal-Dheini and Amy Grenier, Policy Brief, *supra* n.3.~~ Joann Ng Hartmann, *New Insights into the Growing Number of Actions Against International Students and Scholars*, NAFSA (May 7, 2025), https://www.nafsa.org/blog/new-insights-growing-number-actions-against-international-students-and-scholars.

[55] Heritage Foundation, *Mandate for Leadership: The Conservative Promise* ~~at~~ 790 (2023), https://static.project2025.org/2025_MandateForLeadership_FULL.pdf.

[56] Donald Trump, Jr. (@DonaldJTrumpJr), X (Apr. 9, 2025), https://x.com/DonaldJTrumpJr/status/1909967476441436561.

from obtaining student visas, called the "Stop Chinese Communist Prying by Vindicating Intellectual Safeguards in Academia Act of 2025."[57] And most recently, Secretary of State Marco Rubio announced that "the U.S. State Department will work with the Department of Homeland Security to aggressively revoke visas for Chinese students, including those with connections to the Chinese Communist Party or studying in critical fields. We will also revise visa criteria to enhance scrutiny of all future visa applications from the People's Republic of China and Hong Kong."[58] DOS has not provided any clarification on what would constitute a "connection" to the Chinese Communist Party or what fields of study qualify as "critical fields."

95.    Unlawful SEVIS record terminations have been the subject of lawsuits filed in federal district courts across the country. This Court recently issued a Preliminary Injunction in the present case, *Doe #1 v. Noem*, --- F.Supp.3d ----, 2025 WL 1348503 (D.N.J. May 8, 2025), and in another similar matter, *Student 1 v. Noem*, No. 3:25-cv-2871, 2025 WL 1431186 (D.N.J. May 19, 2025) (converting a Temporary Restraining Order into a Preliminary Injunction). A nationwide injunction was granted in an action in the Northern District of California. *Doe v.* ~~The unlawful SEVIS terminations have also been the subject of lawsuits filed in federal district courts across the country. In the last few days, several district courts have issued temporary restraining orders similar to the one sought here, and on similar legal theories, including this Court.~~ *See, e.g., ~~Doe #1 v. Trump,~~ No. 2:25-cv-02825-MCA-LDW, ECF 13 (D.N.J.,Trump*, --- F.Supp.3d ----, 2025 WL 1467543 (N.D. Cal. May 22, 2025) (granting a preliminary injunction enjoining Defendants from: arresting, incarcerating, or transferring impacted students out of the jurisdiction of their residence

---

[57]    Stop CCP VISAs Act of 2025, H.R. 2147, 119th Cong. (2025), https://www.congress.gov/bill/119th-congress/house-bill/2147/text.

[58] Press Statement, Marco Rubio, Secretary of State, U.S. Dep't of State, New Visa Policies Put America First, Not China (May 28, 2025), https://www.state.gov/releases/office-of-the-spokesperson/2025/05/new-visa-policies-put-america-first-not-china/.

while the action remains pending; imposing "any adverse legal effect…caused by the termination of their SEVIS record;" and reversing the reinstatement of SEVIS records for similarly situated individuals across the country). Several pending cases seek relief on behalf of a class. *See, e.g.*, *Pasula v. Dep't Homeland Sec.*, No. 1:25-cv-00156 (D.N.H. filed Apr. 18, 2025) (seeking relief on behalf of two classes, both of which are made up of all current or future students at any educational institution in New Hampshire, Massachusetts, Maine, Rhode Island, and Puerto Rico); *Du v. Dep't Homeland Sec.*, No. 3:25-cv-00644-OAW (D. Conn. filed Apr. 24, 2025) (seeking relief on behalf of a class of current or future students at or affiliated with any educational institutions in Connecticut).

### SEVIS Record Reactivations and Residual Notations

96.    After terminating thousands of students' SEVIS records and thereby terminating their F-1 status, ICE reversed course. Defendants first shared this change through a written statement shared with Plaintiffs' counsel on April 28, 2025: "ICE is developing a policy that will provide a framework for SEVIS record terminations. Until such a policy is issued, the SEVIS records for plaintiff(s) (and other similarly situated plaintiffs) will remain Active or shall be re-activated if not currently active." Second Linhorst Decl. Exh. C. In a declaration filed in early May, Defendants informed the Court that "SEVP has set [Named Plaintiffs'] SEVIS record[s] back to 'active.'" Hicks Decl. ¶ 3.

97.    During the Preliminary Injunction hearing in this case, the government maintained that they could not remove or correct the notations, and even if they could, it was not necessary because the SEVIS records were restored to active. Notably, the record in *Jie Fang* spoke to DHS' capacity to correct the SEVIS record; the Government acknowledged that it was able to eliminate any database notations that suggested that the students had committed fraud, yet it refused to do

so. It argued that correcting the record on a preventive basis was not necessary because the "fraudulent enrollment" determination would not have any adverse impact on the students in future immigration proceedings. *Jie Fang*, 935 F.3d at 179.

98.    Reactivating Named Plaintiffs' SEVIS records has not resolved the harm caused by the record terminations, however. Their SEVIS records still contain an "event history" entry – visible to all SEVIS users – with notations reading that the students were "identified in criminal records check." *See supra* ¶ 7; Second Linhorst Decl. Exh. A (printouts of Plaintiffs' SEVIS records showing the residual notations); Hicks Decl. ¶¶ 3-4. These false and harmful notations suggest both criminality and failure to maintain status, despite the fact that these students were, in fact, lawfully in status and had done nothing to warrant termination of their F-1 status. Watson Tr. at 27:3-18, 33:22–34:2. Upon information and belief, other members of the Plaintiff Class are in the same position as Named Plaintiffs, with reactivated records that continue to show harmful notations related to the prior termination. Although Defendants informed the Court that ICE "added a notation to each of [Named] Plaintiffs' SEVIS records" explaining that their records were restored retroactive to the date of termination, these notations "are not viewable" outside of SEVP. Notice of Compliance, ECF No. 43.

99.    In May or June, Defendants sent generic letters to at least some of the Named Plaintiffs informing each of them that their SEVIS record, which was among those terminated "between March 25, 2025, and April 11, 2025," was reset to "active" and that this activation has retroactive effect. This letter says nothing about the residual notations left in Named Plaintiffs' SEVIS records, however, nor does it admit that the SEVIS records were unlawfully terminated or correct the record that Named Plaintiffs did not fail to maintain status or have a criminal conviction warranting termination of their F-1 status.

100.    There remains "nothing showing that other users outside SEVP, such as the agencies and other governmental entities [including DOS and CBP] are made aware of [the new notations regarding retroactive activation] or are bound to that updated, accurate version of events." PI Order at 26.

101.    As a result of the residual notations in their SEVIS records, Named Plaintiffs' professional and personal lives remain disrupted, and they continue to face the risk of enforcement by CBP, denial of visas by DOS, and/or denial of status adjustments or extensions by USCIS. *See, e.g.*, Student Doe #1 Second Decl. ¶ 8 ("I am worried that [the government] will deny my request for an extension because of the termination and reported criminal history/visa revocation, and that once it is denied, I will lose any chance of re-applying."); Student Doe #2 Second Decl. ¶ 7 ("But now that my SEVIS record has a termination period with a notation that I have a criminal record, I am extremely fearful of leaving and returning to the United States. I am aware that Customs and Border Protection can deny my entry to the United States and I am afraid that I will be denied because of the notation in my record…. I fear that I will have to choose between visiting my family in China and continuing my education. I feel that my entire education and future is at risk if I visit home[.]"); Student Doe #5 Second Decl. ¶ 9 ("I am too fearful of exiting and re-entering the United States, and being denied entry or detained" because "my SEVIS record [has] a termination period and criminal record notation."); Student Doe #6 Second Decl. ¶ 12 ("In my line of work, working with power systems, I will likely need a background check for any employment, and I am worried about what will come up in those checks. Previously I have not had any issues because my only arrest has been dismissed and expunged, but the current notation in my SEVIS record actually suggests that I have a criminal record, which I do not." ), ¶ 14 ("I am even scared to travel domestically, as I do not know if I will be detained[.]"). Others in the Plaintiff Class who have

residual notations in their SEVIS records regarding failure to maintain status and criminality face the same risks.

102.    Named Plaintiffs' fear of traveling and of any activity that could result in contact with other federal agencies is well-founded so long as the residual notations remain in their records. *See* PI Order at 24-25 ("Derogatory information in SEVIS records, such as a prior termination based on a criminal records check or visa revocation, will likely trigger scrutiny by CBP on a person's arrival at a port of entry, and the information can be accessed by other agencies as well, and, according to Goss, '[t]here is every reason to believe' it will cause Plaintiffs to be flagged in future dealings with them given the nature of what was reported.") (quoting Goss Decl. ¶ 10, ECF No. 29).

**April 26 Policy Concerning Termination of SEVIS Records**

103.    Shortly after reactivating Named Plaintiffs' SEVIS records, Defendants filed a document they called "a new policy concerning the termination of records in the Student and Exchange Visitor Information System." ECF No. 32. Dated April 26, 2025, and addressed to "All SEVP Personnel," the policy purports to explain SEVP's authority to terminate SEVIS records. This policy was promulgated without undergoing any notice-and-comment process.

104.    The April 26 Policy attempts to expand the authority of DHS far broader than Congress authorized or intended under the Immigration and Nationality Act by providing additional grounds, not supported by statute or regulatory authority, under which SEVP can terminate SEVIS records. Contrary to SEVP's claim in the April 26 Policy, Defendants have no "inherent" statutory authority under 8 U.S.C. § 1372 to terminate SEVIS records. That statute merely instructs the Attorney General to "develop and conduct a program to collect information from approved institutions of higher education" concerning nonimmigrants and to "establish an

45

electronic means to monitor and verify" international students; there is no reference to terminating student records or adjudicating their compliance whatsoever. 8 U.S.C. § 1372 (a)(1)-(3).

105.    Nonetheless, the April 26 Policy empowers SEVP to terminate SEVIS records "[w]hen SEVP has objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason." ECF No. 32 at 3. In using this phrasing, the Policy replaces Congress's carefully crafted statutory language and long-standing regulations which limit ICE and SEVP's authority with broader, vaguer language that expands the very limited bases under which F-1 student SEVIS records can be terminated for "failure to maintain status" absent a removal proceeding. 8 C.F.R. § 214.2(f)(6)-(7), (12). Specifically, the April 26 Policy replaces "failure to maintain status" – a term of art used throughout the relevant regulations – with "no longer complying with the terms of their nonimmigrant status" and adds the broad modifier "for any reason." The April 26 Policy's language runs roughshod over the statutory and regulatory scheme which limits the circumstances in which SEVIS records can be terminated for "failing to maintain status" without entering removal proceedings. *See* 237(a)(1)(C); 8 C.F.R. § 214.2(f)(16)(i)(A).

106.    Under the existing statutory and regulatory framework, SEVP only has authority to terminate SEVIS prior to removal proceedings when doing so under 8 C.F.R. § 214.2(f)(16)(i)(A). As written, this policy is so vague that it fails to adequately give notice of what acts will prompt immediate SEVIS record termination absent prescribed due process under INA § 240 (8 U.S.C. § 1229a), which defines the Executive Office of Immigration Review, housed within the Department of Justice, as the sole and exclusive entity authorized to adjudicate deportability under INA § 237 (8 U.S.C. § 1227).

107.    The April 26 Policy specifically names "U.S. Department of State Visa Revocation (Effective Immediately)" as a reason that SEVP may terminate a student's SEVIS record. ECF No. 32 at 2. Nothing in the regulations governing SEVP or a student's failure to maintain status suggests authority to terminate a student's status based on a revoked visa. As explained *supra* ¶ 60, an F-1 visa and F-1 status are distinct, and the revocation of a visa has never provided the authority to immediately revoke status, particularly without due process. *See* 22 C.F.R. § 41.112(a) (noting that the "period of visa validity has no relation to the period of time the immigration authorities at a port of entry may authorize the alien to stay in the United States"). In fact, DHS guidance states that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *Supra* ¶ 31, n.18.

108.    By invoking the power of DOS to revoke visas, the Policy also provides a backdoor through which DHS attempts to circumvent the regulatory limitations to SEVP's authority to terminate status and avoid review of its SEVIS record terminations. The April 26 Policy notes that DOS can revoke a visa based on "derogatory information provided by ICE and other U.S. law enforcement agencies" and that once DOS revokes a visa "effective immediately," SEVP can then terminate the student's SEVIS record. ECF No. 32 at 3. These provisions create a system through which ICE can provide information to DOS to trigger a visa revocation and then use that revocation to justify terminating status. Because visa revocations are subject to the doctrine of consular nonreviewability,[59] they are precluded from judicial review. By piggybacking off of DOS visa revocations to terminate status, therefore, the April 26 Policy seeks to insulate SEVIS record terminations from review because the event triggering their termination – the visa revocation – is

---

[59] *See, e.g.*, *Department of State v. Muñoz*, 602 U.S. 899, 908 (2024) ("The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions. This principle is known as the doctrine of consular nonreviewability.").

purportedly not reviewable. Even if this were lawful, it still cannot authorize SEVP to terminate SEVIS records because SEVIS record termination absent removal proceedings is limited to grounds governed by 8 C.F.R. § 214.2(f). The April 26 Policy goes further in its efforts to eliminate noncitizen students by encouraging ICE to "initiate removal proceedings" once DOS has revoked a visa. ECF No. 32 at 3.

109.    This portion of the Policy inappropriately references the doctrine of consular nonreviewability in another way, too, insofar as it refers to how "State can consider derogatory information provided by ICE" to revoke visas. Pursuant to the Foreign Affairs Manual ("FAM"), DOS can prudentially revoke visas based on derogatory information without even disclosing the "derogatory information" upon which it is relying. *See* 9 FAM 403.11-5(b) ("Although the Department is not required to notify an individual of a revocation done pursuant to the Secretary's discretionary authority, you should do so unless instructed otherwise, especially in cases where the revoked visa was issued to a government official."). This contrasts with all other regulatory sections governing how the Consular Office and USCIS use derogatory information to render adverse decisions, which require affording the nonimmigrant or immigrant an opportunity to rebut the derogatory information. The April 26 Policy, therefore, intentionally takes advantage of this exception and hides behind consular non-reviewability. The Policy's language also fails to make clear what entity is exercising adjudicative authority to determine deportability such that the SEVIS record can lawfully be terminated before a determination by the Executive Office for Immigration Review ("EOIR") through removal proceedings. As such, this policy obfuscates what F-1 student behavior will be subject to punishment through SEVIS termination predicated on what appears to be a DOS determination of visa revocation, despite the fact that F-1 status within the United States has no predicate requirement for a valid visa under 8 C.F.R. § 214.2(f).

110.     The April 26 Policy does not protect Plaintiff Class members from further harm. Instead, the Policy again threatens class members with unlawful SEVIS terminations. Named Plaintiffs continue to experience severe distress in anticipation of how the April 26 Policy will affect them. *See* Student Doe #1 Second Decl. ¶ 13 ("With the new policy about terminating SEVIS appearing in media, it is unclear to me whether the government will try to take my status away in a different way tomorrow. And, I am not sure if it will be too uncertain and risky for my employer to continue to employ me."); Student Doe #2 Second Decl. ¶ 11 ("I do not know whether the government is intending to terminate my status in some other way and whether the 'new policy' that I heard about is even worse. I think about this every time I am doing research in the lab or conducting experiments for my publications – at any moment will I be forced to abandon my research like I was on April 4?"); Student Doe #4 Second Decl. ¶ 12 ("I continue to feel so stressed about my immigration status and it is hard to focus on my academic work. When I heard that ICE plans to create a new 'framework for status termination,' I felt very worried that my SEVIS record could be impacted again."); Student Doe #5 Second Decl. ¶ 12 ("I am very concerned that I will be targeted again under Immigration and Custom Enforcement's new framework and that my SEVIS record will be terminated again."); Student Doe #6 Second Decl. ¶ 3 ("Soon after learning of the reactivation, however it became clear that my euphoria was misplaced. I read in national news articles that the government was going to look for a different way to deport us. My heart sank. Once again there is fear and worry hanging over my head.").

**Class Allegations**

111.     Named Plaintiffs bring this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), and 23(b)(2). A class action is proper because this action involves questions of law and fact common to the class;

the class is so numerous that joinder of all members is impractical; Named Plaintiffs' claims are typical of the claims of the class; and Named Plaintiffs will fairly and adequately protect the interests of the class.

112.    Named Plaintiffs seek to represent a class defined as follows:

All individuals residing in the Third Circuit, enrolled in a higher education institution within the Third Circuit, or whose SEVIS record is maintained by a higher education institution within the Third Circuit, who are in the United States in F-1 nonimmigrant status whose SEVIS records have been or will be terminated by ICE on or after March 20, 2025, for reasons other than the three permissible grounds for termination set forth in 8 C.F.R. § 214.1(d) or failing to maintain status as outlined in 8 C.F.R. § 214.1(e)-(g) and 8 C.F.R. § 214.2(f).

113.    The proposed class satisfies the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members is impracticable. Named Plaintiffs have thus far identified approximately 50 individuals with F-1 student status enrolled in a higher education institution within the Third Circuit whose SEVIS records were terminated in April 2025 alone. The proposed class will likely be more numerous once Named Plaintiffs have an opportunity to identify all its members and as Defendants apply the April 26 Policy to terminate SEVIS records of additional students.

114.    The proposed class meets the commonality requirements of Federal Rule of Civil Procedure 23(a)(2) because all class members are or will be subject to Defendants' decision to terminate their SEVIS records. The class raises common legal questions that will generate common answers, including whether Defendants' termination of student SEVIS records without meeting the three limited grounds for termination enumerated in 8 C.F.R. § 214.1(d) violates the law. The class also raises common factual issues because proposed class representatives and class members are subject to the same practice whereby student status was terminated without due process and

without meeting the appropriate regulatory criteria governing student status termination. *See* 8 C.F.R. § 214.1(d); 8 C.F.R. § 214.1(e)-(g).

115.    The proposed class meets the typicality requirement of Federal Rule of Civil Procedure 23(a)(3) because the claims of the representative Plaintiffs are typical of the claims of the class as a whole. Named Plaintiffs and proposed class members are all individuals whose SEVIS records have been or will be terminated. Named Plaintiffs and the proposed class share the same legal claims, which challenge Defendants' termination of class members' SEVIS records in violation of the Administrative Procedure Act ("APA") insofar as Defendants acted outside the regulatory regime to terminate SEVIS records under 8 C.F.R. § 214.1(d), and the regulatory criteria governing failure to maintain status at 8 C.F.R. § 214.1(e)-(g) and 8 C.F.R. § 214.2(f). The class members also make the same legal claim that their SEVIS records were terminated in violation of the Fifth Amendment's Due Process Clause for lack of notice and an opportunity to be heard. Class members all challenge the procedural and substantive legality of the April 26 Policy, which threatens to re-terminate the students' SEVIS records or, for some, terminate their records in the first instance. Finally, Plaintiff Class members challenge the targeting of specific students based on their nationality and/or race in violation of the Equal Protection Clause, and the unlawful detention of class members based on the termination of their SEVIS records and in the absence of Due Process protections.

116.    The proposed class meets the adequacy requirement of Federal Rule of Civil Procedure 23(a)(4). Named Plaintiffs seek the same relief as the other members of the class.

117.    The proposed class representatives are adequately represented by a team of attorneys with significant experience in immigrants' rights litigation and class action cases from

Gibbons P.C., the ACLU of New Jersey, and the Rutgers Immigrant Community Assistance Project.

118.    Finally, the proposed class satisfies Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted on grounds generally applicable to the whole class by subjecting the entire class to the decision to terminate individuals' SEVIS records that forms the basis of this complaint, thereby making injunctive relief appropriate for the class as a whole.

68.    Apr. 18, 2025); *C.S. v. Noem,* No. 2:25-cv-00477-WSS, ECF 22 (W.D. *Pa.* Apr. 15, 2024); *Doe v. Noem,* No. 2:25-cv-00040-DLC, ECF 11 (D. Mont. Apr. 15, 2025); *Doe v. Trump,* No. 4:25-cv-00175-AMM, ECF 7 (D. Ariz. Apr. 15, 2025); *Hinge v. Lyons,* No. 1:25-cv-01097-RBW, ECF 11 (D.D.C. Apr. 15, 2025); *Rantsantiboom v. Noem,* No. 0:25-cv-01315-JMB-JFD, ECF 20 (D. Minn. Apr. 15, 2025); *Wu v. Lyons,* No. 1:25-cv-01979-NCM, ECF 9 (E.D.N.Y. Apr. 11, 2025); *Zheng v. Lyons,* No. 1:25-cv-10893-FDS, ECF 8 (D. Mass. Apr. 11, 2025); *Liu v. Noem,* No. 25-cv-133-SE, ECF 13 (D.N.H. April 10, 2025); *Bejugam v. Lyons,* 2:23-cv-0057, ECF No. 17, (N.D. Ala. April 17, 2025) .

## CLAIMS FOR RELIEF

### COUNT ONE
**Violation of the Administrative Procedure Act and *Accardi* Doctrine
(Unlawful F-1 Student Status Terminations)**

69. 119.    The foregoing allegations are realleged and incorporated herein.

70. 120.    Under the APA, this Court "shall . . . hold unlawful . . . agency action" that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and/or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D). Agency action is arbitrary and capricious

where "the agency has relied on factors which Congress has not intended it to consider, . . . offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co. (State Farm)*, 463 U.S. 29, 43 (1983). Moreover, "an agency that departs from its 'former views' is 'obligated to supply a reasoned analysis for the change . . .' in order to survive judicial scrutiny for compliance with the APA." *Prometheus Radio Project v. FCC*, 373 F.3d 372, 390 (3d Cir. 2004) (quoting *State Farm*, 463 U.S. at 43).

71.121.    Defendants' termination of ~~Plaintiffs' F-1 student~~Plaintiff Class members' SEVIS records – thereby effectuating termination of status ~~under the SEVIS system~~ is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order~~[.]").~~[.]"); *see also* PI Order at 16 n.4 ("[T]he Third Circuit has held that the termination of F-1 student status is a final agency action that this Court has jurisdiction to review.").

72.122.    Defendants' termination of ~~Plaintiffs'~~Plaintiff Class members' SEVIS records violates the ~~Administrative Procedure Act (~~"APA"~~)~~ and should be set aside pursuant to 5 U.S.C. § 706(2)(A)-(D) because it was arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of authority, including the regulatory regime at 8 C.F.R. §§§ 214.1(d), 214.2(f).

73.123.    Defendants did not follow DHS's own regulations in deciding to terminate ~~Plaintiffs'~~Plaintiff Class members' student status, as reflected in the SEVIS record terminations. Defendants ~~had~~have no statutory or regulatory authority under 8 C.F.R. § 214.1(d) to per se terminate ~~Plaintiffs'~~status, nor does 8 C.F.R. § 214.2(f) to terminate class members' SEVIS

records – effectively terminating their F-1 student status. Nothing in ~~Plaintiffs'~~the students' records provides a statutory or regulatory basis for termination or even for determining that any of ~~the Plaintiffs have~~them failed to maintain their F-1 status. Defendants further failed to consider ~~Plaintiffs'~~the students' individual circumstances, and did not provide any explanation – let alone reasoned explanation – justifying their determinations, and thereby did not comport with the regulatory regime at 8 C.F.R. § 214.~~1(d~~2(f).

74.124.    Defendants' termination of ~~Plaintiffs'~~Plaintiff Class members' SEVIS records was also a violation of the *Accardi* doctrine because in terminating the records, ICE failed to follow the federal agency's own rules, including 8 C.F.R. ~~§§~~§ 214.1(d), 214.2(f), which specifies the lawful mechanisms through which ~~F-1~~nonimmigrant status or SEVIS records can be terminated by DHS. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Leslie v. Attorney General of U.S.*, 611 F.3d 171 (3d Cir. 2010) (describing "the long-settled principle" applied in *Accardi* "that rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency").

**COUNT TWO**
**Violation of the Due Process Clause of the Fifth Amendment**
**to the United States Constitution**
**(Unlawful F-1 Student Status Termination)**

75.125.    The foregoing allegations are realleged and incorporated herein.

76.126.    The United States Constitution requires notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

77.127.    Defendants terminated ~~Plaintiffs'~~Plaintiff Class members' F-1 student ~~status and associated~~ SEVIS records effectively terminating their status without (i) notifying them

about this termination decision, (ii) providing specific grounds for this decision, (iii) providing ~~Plaintiffs~~class members with individualized hearings before an impartial adjudicator, and (iv) providing ~~Plaintiffs~~them with adverse evidence and an opportunity to confront and respond to such evidence.

~~78.~~128.        Defendants' disregard for, and failure to comply with, these fundamental well-established due process principles violated ~~Plaintiffs'~~Plaintiffs Class members' rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

### COUNT THREE
**Violation of Administrative Procedure Act and *Accardi* Doctrine**
**(Pattern and Practice of Unlawful F-1 Student Status Terminations)**

~~79.~~129.        The foregoing allegations are realleged and incorporated herein.

~~80.~~130.        Defendants have adopted a policy, or have engaged in a pattern and practice, of unilaterally terminating students' SEVIS records for reasons that are not legitimate grounds for terminating status or SEVIS records under 8 C.F.R. ~~§§~~ 214.1(d), 214.2(f).

~~81.~~131.        Defendants unlawfully terminated the SEVIS records of students ~~at Rutgers and~~ across the country, including ~~Plaintiffs~~Plaintiff Class members, indicating a loss of F-1 student status. As a part of this policy and/or practice, Defendants failed to provide notice to students or DSOs concerning the terminations, and did not clarify the reasoning for their individual status terminations. Instead, Defendants provided a vague, boilerplate notation in affected students' SEVIS records that willfully denied them notice of the grounds for their status terminations.

~~82.~~132.        This policy and/or pattern and practice constitutes a final agency action and violates the ~~Administrative Procedure Act (APA)~~APA and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary

to law, and in excess of statutory jurisdiction, and a violation of the *Accardi* doctrine and federal agencies' own rules, *see Accardi*, 347 U.S. 260.

## COUNT FOUR
### Violation of Administrative Procedure Act
### (Unlawfully Adopted April 26 Policy)

133.    The foregoing allegations are realleged and incorporated herein.

134.    Under the APA, agencies cannot issue new substantive or legislative rules without proceeding through the notice-and-comment process. *See* 5 U.S.C. § 553. This process requires the agency to publish a general notice of proposed rulemaking in the Federal Register, 5 U.S.C. § 553(b), provide interested persons an opportunity to comment on the proposed rule, 5 U.S.C. § 553(c), and thereafter, when the agency promulgates the final rule, include "a concise general statement of [its] basis and purpose," *id*. An agency is only exempt from this process if the rule is not legislative or substantive, but is instead an interpretive rule, a general statement of policy, or a rule pertaining to "agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A).

135.    The Third Circuit has "developed guiding principles to aid in distinguishing" interpretive rules from legislative rules. *Pa. Dep't of Human Servs. v. U.S.*, 897 F.3d 497, 505 (3d Cir. 2018). "Legislative rules, which have the force of law, impose new duties upon the regulated party. Interpretive rules, on the other hand, seek only to interpret language already in properly issued regulations." *Id.* (citation modified). "Interpretive rules do not add language to or amend language in the statute…but 'simply state[ ] what the administrative agency thinks the statute means, and only remind[ ] affected parties of existing duties.'" *Id.* (quoting *Chao v. Rothermel*, 327 F.3d 223, 227 (3d Cir. 2003)).

136.    The April 26 Policy constitutes a legislative rule because it goes far beyond interpreting existing regulations or statutes. The policy creates new duties for SEVP and

improperly broadens the agency's authority to terminate SEVIS records. *See supra* ¶¶ 104-109. While the April 25 Policy names 8 U.S.C. § 1372 as the authority under which the policy interprets the agency's powers, that statute is merely about information collection and verification – there is no reference therein to terminating student records. Nevertheless, the April 26 Policy creates new grounds on which SEVP can terminate student SEVIS records and thereby terminate student status. *See, e.g.*, *supra* ¶¶ 31, 107 (describing how the policy introduces visa revocation as a new ground for SEVP to terminate status, despite there being no basis for this authority in the relevant statutes and regulations, and despite incongruence with existing policy guidance).

137.    The April 26 Policy was promulgated without following the necessary process under the APA. Indeed, there was no process whatsoever before publishing the policy; Defendants informed the Court that a new policy was forthcoming and shortly thereafter filed the April 26 Policy on this matter's public docket. *See supra* ¶ 26.

138.    Accordingly, the April 26 Policy should be set aside as it was not lawfully promulgated in violation of the APA. 5 U.S.C. § 706(2)(A).

## COUNT FIVE
### Violation of Administrative Procedure Act
### (April 26 Policy Arbitrary, Capricious, and Not in Accordance with Law)

139.    The foregoing allegations are realleged and incorporated herein.

140.    "Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). However, "[a]n agency may not . . . depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515-16 (2009) (*Fox I*). Agencies may also amend or revoke regulations through appropriate procedures, but "[s]o long as [a] regulation remains in force the Executive Branch is bound by it, and indeed

the United States as the sovereign composed of the three branches is bound to respect and to enforce it." *United States v. Nixon*, 418 U.S. 683, 696 (1974). Where, as here, an agency is changing an existing policy, and its "prior policy has engendered serious reliance interests that must be taken into account[,]" the agency must "provide a more detailed justification than what would suffice for a new policy created on a blank slate" and the agency's failure to provide a "reasoned explanation" for the change constitutes arbitrary and capricious action. *Fox I*, 566 U.S. at 515.

141.    The April 26 Policy is not in accordance with existing law; namely, it contravenes Congress' comprehensive scheme of statutory removal and exceeds the authority Congress granted DHS in INA § 237 (8 U.S.C. § 1227). DHS's authority to directly terminate nonimmigrant status is limited to 8 C.F.R. § 214.1(d), and it can terminate student SEVIS records for failure to comply with 8 C.F.R. § 214.2(f) The April 26 Policy, however, unlawfully instructs SEVP personnel to terminate SEVIS records based on grounds of deportability. Section 237 enumerates grounds for deportability and does not authorize DHS to terminate active SEVIS records without a finding of deportability entered by the statutorily empowered adjudicator for § 237 violations, the Executive Office of Immigration Review ("EOIR"). While ICE bears responsibility to investigate and enforce the statutory grounds for deportation, EOIR retains sole and exclusive authority to make determinations as to deportability. INA 240(a) (8 U.S.C. § 1229a(a)). The April 26 Policy therefore unlawfully usurps EOIR's authority to adjudicate by claiming the power to terminate status.

142.    Any authority SEVP has to terminate SEVIS records is derived from its role to monitor, verify, and update records. Congress created what is now known as SEVIS under 8 U.S.C. § 1372, and authorized DHS to collect and verify information about international students from approved institutions of higher education to maintain accurate student records. The statute provides

no authority to terminate SEVIS records of an F-1 nonimmigrant, except in the very limited context of 8 C.F.R. § 214.2(f) where the accredited institution records a violation of the F-1 status requirements set forth in 8 C.F.R. § 214.2(f). Under 8 C.F.R. § 214.2(f), an F-1 student is considered to be maintaining their F-1 status if they are "making normal progress toward their course of study." *Laoye v. AG of the United States*, 352 F. App'x 714, 716-17 (3d Cir. 2009). Under this limited regulation, termination of status can be executed by SEVP, and the F-1 student has limited due process to seek reinstatement by USCIS under 8 C.F.R. § 214.2(f)(16)(i)(A). *Id.* at 717.

143.    Section 240 of the INA sets forth procedures for removal that are exclusive to immigration judges and these procedures are exclusive and "unless otherwise specified in this chapter, a proceeding is the sole and exclusive procedure for determining whether a [noncitizen] may be admitted to the United States, or, if the [noncitizen] has been so admitted, removed from the United States." INA § 240(a)(3) (8 U.S.C. § 1229a(a)(3)). Through the April 26 Policy, DHS unlawfully claims it can terminate SEVIS records – and thereby terminate F-1 status – based on deportability grounds "[w]hen SEVP has objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason." ECF No. 32 at 3. But this agency interpretation rests in diametric opposition to the unambiguous language of the governing statute. The April 26 Policy misapplies INA § 237(a)(1)(C)(i) (8 U.S.C. § 1227(a)(1)(C)(i)) by empowering DHS to render the consequences of a deportability finding – namely, the termination of status – by sidestepping the immigration judge's exclusive procedural authority under INA 240(a)(3) (8 U.S.C. § 1229a(a)(3)).

144.    The April 26 Policy also invokes the DOS doctrine of nonreviewability to effectuate deportation under INA §237(a)(1)(C) (8 U.S.C. § 1227(a)(1)(C)), which reads, "Any

[noncitizen] who is present in the United States in violation of this Act or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 221(i) [(8 U.S.C. § 1201(i))], is deportable." DHS's scheme under the April 26 Policy to share derogatory information with DOS for purposes of revoking student visas seeks to sidestep due process under the guise of the doctrine of consular nonreviewability. However, this practice does not insulate DHS's unlawful behavior from the courts because INA §240(a) (8 U.S.C. § 1229a(a)) clearly sets forth removal proceedings before an immigration judge as the sole and exclusive procedures for determining deportability and removal. To permit the implementation of this policy would not only invert the procedural order of operations requiring adjudication before consequence but also permit DHS to usurp DOJ powers defined by statute.

145.    The April 26 Policy contravenes existing regulations and constitutes an impermissible change in agency policy for which the agency has given no "reasoned explanation" whatsoever – let alone the "detailed justification" required here. *Fox I*, 566 U.S. at 515. The Code of Federal Regulations permits termination of status in three specific circumstances attended by significant procedure. *See* 8 C.F.R. § 214.1(d). First, DHS can terminate nonimmigrant status if USCIS revokes a previously granted waiver of removability. *Id.* In that case, the student has a right to inspect the evidence and an opportunity to rebut the derogatory information. 8 C.F.R. § 103.2(b)(16). Status can also be terminated where a private bill confers permanent residence status to an individual. *See* 8 C.F.R. § 214.1(d). Finally, nonimmigrant status can be terminated through notification in the Federal Register, which must comply with requirements under the Federal Register Act and its implementing regulations, 1 C.F.R. Part 51.

146.    The April 26 Policy violates these regulations because it sets forth grounds for SEVP to terminate SEVIS records for reasons that fall squarely outside the regulatory regime at 8 C.F.R. § 214.1(d), as well as the regulations governing failure to maintain status at 8 C.F.R. § 214.1(e)-(g) and 8 C.F.R. § 214.2(f). In particular, the April 26 Policy introduces visa revocation (effective immediately) as a basis for terminating a student's SEVIS record and thereby terminating their status. A visa revocation appears nowhere in the relevant regulations as a basis for terminating student status.

147.    Named Plaintiffs and the Plaintiff Class have relied upon these existing regulations – which are still in effect – as well as DHS's longstanding policies governing maintenance of F-1 status[60] in deciding to invest significant amounts of their and their families' financial resources, time, and efforts to pursuing a degree in the United States. Given these "serious reliance interests," the agency was required to "provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Fox I*, 566 U.S. at 515. DHS has not done so here. Its April 26 Policy simply disregards existing regulations and constitutes a significant change in policy for which the agency has not provided any justification. The April 26 Policy therefore is not only "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), but is also "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C). Accordingly, the April 26 Policy should be set aside as in violation of the APA.

**COUNT SIX**
**Violation of the Due Process Clause of the Fifth Amendment**
**to the United States Constitution**
**(April 26 Policy Unconstitutionally Vague)**

---

[60] *See supra* ¶ 31, n.18 (describing 2010 Policy Guidance).

148.    The foregoing allegations are realleged and incorporated herein.

149.    "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment" and "requires the invalidation of laws that are impermissibly vague." *FCC v. Fox TV Stations, Inc*., 567 U.S. 239, 253 (2012) (*Fox II*) (citations omitted) (finding an agency's change in policy both arbitrary and capricious and void for vagueness). This "void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly;" and "second, [that] precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fox II*, 567 U.S. at 253; *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.").

150.    As described herein, the April 26 Policy contains provisions that are vague, unclear, and imprecise. This vague language violates the Due Process Clause of the Fifth Amendment and allows those enforcing the Policy to do so in an arbitrary and discriminatory manner. *See Fox II*, 567 U.S. at 253.  It thus poses a grave risk to Plaintiff Class members who stand to lose their ability to study, work, and live in the United States if this unlawful April 26 Policy is enforced.

**COUNT SEVEN**
**Violation of the Equal Protection Clause of the Fifth Amendment**
**to the United States Constitution**
**(National Origin and Race Discrimination)**

151.    The foregoing allegations are realleged and incorporated herein.

152.    The Fifth Amendment of the United States Constitution prohibits the federal government from denying equal protection of the laws.

153.    Defendants have unlawfully discriminated against Plaintiff Class members based on national origin and/or race by targeting Chinese, Indian, and/or other Asian nationals for termination of SEVIS records and lawful F-1 status, despite the absence of any individualized security threat, criminal conviction, or regulatory noncompliance.

154.    Defendants' actions constitute intentional or at minimum disparate-impact discrimination based on alienage and national origin in violation of Plaintiffs' equal protection rights under the Fifth Amendment. These terminations, and the policy or practice underlying them, are not narrowly tailored to serve any compelling governmental interest, and they operate in a manner that is overbroad, unsupported by evidence, and discriminatory in effect.

**COUNT EIGHT**
**Violation of the Due Process Clause of the Fifth Amendment**
**to the United States Constitution**
**(Unlawful Detention)**

~~83.~~155.    The foregoing allegations are realleged and incorporated herein.

~~84.~~156.    The Fifth Amendment requires fair, pre-deprivation process when a person's liberty hangs in the balance.

~~85.~~157.    No such process was provided here with respect to the termination of SEVIS records.

~~86.~~158.    Nonetheless, ~~in light of this~~the unlawful termination of ~~Plaintiffs'~~Plaintiff Class members' SEVIS records and F-1 student status, ~~Plaintiffs are~~ places them at risk of abrupt detention without prior notice or an opportunity to be heard, the very fundamentals of Due Process.

~~87.~~159.    There is no credible argument for permitting ~~Plaintiffs'~~Plaintiff Class members' detention by immigration authorities. Named Plaintiffs and the class members they seek

to represent are students and recent graduates who have maintained status by complying with all conditions necessary to maintain F-1 student status; Plaintiffsthey have taken no actions that would justify a termination of status. If permitted, Plaintiffsmembers of the Plaintiff Class intend to continue studying at Rutgers Universitytheir respective educational institutions and/or working in their positions through OPT in New Jersey, Pennsylvania, Delaware, or the Virgin Islands.

88.160.        Nor can their detention, which is now during a risk,period of SEVIS termination be justified. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community).

## PRAYER FOR RELIEF

Plaintiffs, on behalf of the proposed Plaintiff Class, respectfully ask that this Court grant the following relief:

(1).    Assume jurisdiction over this matter;

(2).    Certify the case as a class action as proposed herein and in the forthcoming motion for class certification.

(2). (3).    Declare that Defendants' termination of ~~Plaintiffs'~~Plaintiff Class members' SEVIS records and F-1 student status, without affording them sufficient notice and opportunity to be heard, violated ~~Plaintiffs'~~Plaintiff Class members' Fifth Amendment due process rights and the Administrative Procedure Act (including under 8 C.F.R. § 214.1(d)), and *Accardi v. Shaughnessy*, 347 U.S. 260 (1954);

(4).    Declare that the April 26 Policy violates the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment because it was unlawfully promulgated, is arbitrary and capricious, is in excess of statutory and regulatory authority, and is impermissibly vague;

(3). (5).    Order Defendants to correct ~~Plaintiffs'~~Plaintiff Class members' SEVIS records to reflect that status was never terminated and return plaintiffs to the *status quo ante* wherein they held valid F-1 student status. and their records did not reflect any period of termination or residual notations concerning the termination;

(6).    Enjoin Defendants from terminating SEVIS records, and thereby terminating F-1 status, for all individuals residing in or enrolled in a higher education institution within the Third Circuit (New Jersey, Pennsylvania, Delaware, and the Virgin Islands) who are in the United States in F-1 nonimmigrant status when (1) none of the three grounds for termination under 8 C.F.R. § 214.1(d) have been met, and (2) they have not failed to maintain status for the reasons outlined in 8 C.F.R. § 214.1(e)-(g) and 8 C.F.R. § 214.2(f).

(4). (7).    Issue an injunction requiring Defendants – prior to terminating a Plaintiff Class member's SEVIS record – to provide each Plaintiff Class member a constitutionally adequate individualized proceeding and hearing before an impartial adjudicator, in which the Plaintiff Class member will be entitled to review any adverse evidence and meaningfully respond to such evidence, prior to determining whether each ~~Plaintiff's~~Plaintiff Class member's F-1 student status under SEVIS should be terminated;

(5). (8)._____Enjoin Defendants from directly or indirectly enforcing, implementing, or otherwise imposing legal consequences as a result of Defendants' decision to terminate Plaintiffs'Plaintiff Class members' SEVIS records or F-1 status, including arresting, detaining, or removing Plaintiffsthem from the Court's jurisdiction without 30 days' notice to the Court and to Plaintiffs' counsel during the pendency of this action;

(6). (9)._____Award attorney's fees and costs; and

(7). (10)._____Order any further relief this Court deems just and proper.

Date: ~~April 22~~June 27, 2025                    _____Respectfully submitted,

                                        /s/ ~~Farrin R. Anello~~Jeanne LoCicero

                                        **American Civil Liberties Union**
                                        **of New Jersey Foundation**
                                        Jeanne LoCicero
                                        Farrin R. Anello
                                        Molly K.C. Linhorst
                                        570 Broad Street, 11th Floor
                                        Newark, New Jersey 07102
                                        (973) 854-1715
                                        jlocicero@aclu-nj.org

                                        **Rutgers Immigrant Community Assistance**
                                        **    Project (RICAP)**
                                        ~~Center for~~Rutgers Law ~~and Justice~~School
                                        Jason Hernandez*
                                        Jessica ~~Rofe**~~Rofé *
                                        Leena Khandwala
                                        123 Washington Street
                                        Newark, New Jersey 07102

                                        **Gibbons P.C.**
                                        John J. Gibbons Fellowship in
                                        Public Interest and Constitutional Law
                                        Lawrence S. Lustberg, Esq.
                                        Ruth O'Herron, Esq.
                                        One Gateway Center
                                        Newark, NJ 07102
                                        (973) 596-4500
                                        ~~llustberg@gibbonslaw.com~~
                                        ~~roherron@gibbonslaw.com~~
                                        llustberg@gibbonslaw.com
                                        roherron@gibbonslaw.com

                                        *Attorneys for Plaintiffs*

                                        * *application for admission forthcoming*
                                        **Appearing* pro hac vice ~~motion forthcoming~~