TODD W. BLANCHE
U.S. Deputy Attorney General

ALINA HABBA
Acting United States Attorney
Special Attorney
JOHN T. STINSON
Assistant U.S. Attorney
Deputy Chief, Civil Division
401 Market Street, 4th Floor
Camden, NJ 08101
856-757-5139
john.stinson@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Student DOE #1, *et al.*, | HON. KATHARINE S. HAYDEN |
| | HON. ANDRÉ M. ESPINOSA |
| *Plaintiffs,* | |
| | Civil Action No. 25-2998 (KSH)(AME) |
| v. | |
| KRISTI NOEM, *et al.*, | |
| *Defendants.* | |

## FEDERAL DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF JURISDICTION

On the brief:
John Stinson
Deputy Chief, Civil Division

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND........................... 3

   A.   The F-1 Nonimmigrant Student Classification................................ 3

   B.   The Student and Exchange Visitor Information System (SEVIS) ............... 5

FACTUAL BACKGROUND ..................................................................... 9

   A.   Student Criminal Alien Initiative ................................................... 9

   B.   Plaintiffs' Allegations ................................................................... 10

STANDARD OF REVIEW......................................................................... 12

ARGUMENT ............................................................................................. 14

   I.   THIS CASE MUST BE DISMISSED BECAUSE IT IS MOOT OR OTHERWISE NON-JUSTICIABLE........................................................ 14

   A.   Plaintiffs' Request to Have the SEVIS Records Reactivated Has Been Redressed .......................................................................... 14

   B.   Plaintiffs have F-1 Status and Never Lost It ............................... 16

   C.   Plaintiffs Cannot Avoid Mootness with Citation to the Voluntary Cessation Doctrine ...................................................................... 21

   D.   Plaintiffs' Request for Forward-Looking Declaratory or Injunctive Relief Is Too Speculative to Avoid the Mootness Doctrine.................................................................................... 24

CONCLUSION......................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ................................................ 21, 22, 23

*Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33 (1st Cir. 2024) .............................. 25

*Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3 (1st Cir. 2021) ........................................ 21

*California v. Texas*, 593 U.S. 659 (2021) ...................................................... 12, 24, 25

*Chafin v. Chafin*, 568 U.S. 165 (2013) ............................................................... 13

*Church of Scientology of Cal. v. United States*, 506 U.S. 9 (1992) ............................ 13

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................. 14, 16, 23, 26

*Clarry v. United States*, 85 F.3d 1041 (2d Cir. 1996) .............................................. 25

*Commonwealth Dep't of Human Servs. v. United States*,
  897 F.3d 497 (3d Cir. 2018) ..................................................................... 27

*FBI v. Fikre*, 601 U.S. 234 (2024) ................................................................. 23, 25

*FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367 (2024) .......................... 14, 16, 24

*Freedom from Religion Found., Inc. v. Concord Cmty. Sch.*,
  885 F.3d 1038 (7th Cir. 2018) ................................................................... 23

*Gagliardi v. TJCV Land Tr.*, 889 F.3d 728 (11th Cir. 2018) ................................. 1, 13

*Hamilton v. Bromley*, 862 F.3d 329 (3d Cir. 2017) ................................................ 14

*Jie Fang v. ICE*, 935 F.3d 172 (3d Cir. 2019) ...................................................... 20

*Lewis v. Casey*, 518 U.S. 343 (1996) ................................................................. 26

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) ..................................................... 12

*NAGE, Inc. v. Yellen*, 120 F.4th 904 (1st Cir. 2024) ...................................... 13, 21, 24

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) ................................................ 26

*Save Long Beach Isl. v. U.S. Dep't of Comm.*, 721 F. Supp. 3d 317 (D.N.J. 2024) .... 14

*Schmidt v. United States*, 749 F.3d 1064 (D.C. Cir. 2014) ....................................... 15

*Silva v. Gonzales*, 463 F.3d 68 (1st Cir. 2006) ...................................................... 4

*Susan B. Anthony List v. Driehaus*, 573 U. S. 149 (2014) ....................................... 13

*United States v. 225 Cartons, More or Less of an Article or Drug*,
  871 F.2d 409 (3d Cir. 1989) ...................................................................... 23

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) .................................................. 12

*Wayne Educ. Ass'n v. Wayne Bd. of Educ.*,
  No. 14-492-KSH, 2015 WL 3965600 (D.N.J. June 30, 2015) ............................... 22

## Statutes

5 U.S.C. § 553 ............................................................................................. 26

6 U.S.C. § 252 ............................................................................................ 1, 7

8 U.S.C. § 1101 .......................................................................................... 3, 6

8 U.S.C. § 1372 .......................................................................................... 1, 6

**Regulations**

8 C.F.R. § 214.1 ........................................................................................... 25

8 C.F.R. § 214.2 ................................................................................... 4, 9, 25

8 C.F.R. § 239.3 ............................................................................................. 5

## **INTRODUCTION**

This case is now moot.[1] Plaintiffs have received the relief requested, eliminating redressability. They have no ongoing injury. There is no risk that the challenged conduct will recur. And they cannot show a substantial risk of future injury. There is no longer any dispute for this Court to decide. Thus, the Court should dismiss this case for lack of jurisdiction.

This lawsuit centers around the SEVIS database. SEVIS is a law enforcement system of records used to track international students enrolled in educational programs in the United States. 86 Fed. Reg. 69,663, 69,668 (Dec. 8, 2021) (presented as Ex. A to the Declaration of John Stinson). SEVIS contains a record about each international F, J, or M nonimmigrant student in the United States and information about their dependents and the school officials associated with the international student programs. *Id.* at 69,664-665. Congress granted U.S. Immigration and Customs Enforcement ("ICE") the authority to create and manage that system and to use it in immigration enforcement. 8 U.S.C. § 1372; 6 U.S.C. § 252(a)(4).

In April 2025, pursuant to the Student Criminal Alien Initiative ("SCAI"), ICE set to "terminated" the SEVIS records for the Plaintiffs and approximately 5,000 other students, based on National Crime Information Center ("NCIC") database checks. Confusion ensued as schools and students (including the Plaintiffs here)

---

[1] Federal Defendants maintain that there never was a live case or controversy because the SEVIS record is separate and apart from F-1 nonimmigrant status. But assuming there was a live case or controversy to begin with, there is not now. *See Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 732 (11th Cir. 2018) (assuming for purposes of argument that the appellants had standing at the outset of the suit and concluding that the lawsuit had become moot).

1

misapprehended the significance of SEVIS, believing that the students' F-1 nonimmigrant *status* had been terminated. *See, e.g.,* ECF No. 56, Plaintiffs' Amended Complaint ("Am. Compl.") ¶ 1 ("effectively stripping them of their F-1 status"). Lawsuits were filed around the country, including putative class actions and at least one case that named hundreds of plaintiffs. By May 6, 2025, ICE had reversed course, reactivating the SEVIS records. Plaintiffs in this lawsuit were included in that reactivation. But ICE did more than simply reactivate the records. It made the reactivation retroactive to the date of termination, it sent a letter to each student stating that the reactivation was retroactive, it issued a new policy guiding such terminations,[2] and it stated that it would not terminate the records again based solely on the NCIC records that led to the initial termination. Furthermore, ICE and USCIS have explained that the termination of a SEVIS record is *not* a termination or adjudication of F-1 student *status*. In other words, the SEVIS record change did not alter the *status* of the students; nor did the record change reflect a reality that the students' status had changed. The SEVIS record terminations were an action taken in a law enforcement database, not an adjudication of status. The contrary statements and beliefs of Plaintiffs and schools and students across the country were understandable but misinformed.

Thus, this case is now moot. Plaintiffs and the proposed class have received the requested relief, and ICE has stated in sworn declarations that it will not

---

[2]    As discussed below, Plaintiffs challenge that policy but make no allegations that ICE used the policy with respect to their SEVIS records or in any way that affected their status.

terminate the Plaintiffs' SEVIS records again solely on the NCIC hit that led to the initial termination under the SCAI. There is no relief that this Court can provide to redress any alleged injury, which is the very definition of mootness. Plaintiffs' other assertions of harm from the "event history" notations and a new policy for SEVIS are speculative and non-redressable. This Court lacks jurisdiction, and it should dismiss the case.

## STATUTORY AND REGULATORY BACKGROUND

### A.    The F-1 Nonimmigrant Student Classification

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). To qualify for F-1 nonimmigrant status, a foreign national is required to (1) apply and gain admission to an approved U.S. educational institution, (2) obtain a "Certificate of Eligibility for Nonimmigrant (F-1) Student Status (a "Form I-20"), issued by the school, and (3) when applicable, submit a visa application at the U.S. Embassy or Consulate abroad. *See* https://studyinthestates.dhs.gov/students/get-started/international-student-life-cycle (last visited Aug. 11, 2025); *see also* USCIS Policy Manual, Vol. 2, Part F, Chapter 2 (Eligibility Requirements), *available at* https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2 (last visited Aug. 11, 2025).

Once a student has received an F-1 visa from the State Department, the student may present himself or herself to a port of entry for admission to the United States. At the port of entry, an applicant must present the Form I-20, issued by a certified school in the student's name and documentary evidence of financial support; and he or she must demonstrate he or she intends to attend the school specified on the visa. 8 C.F.R. § 214.2(f)(1)(i); *see also* USCIS Policy Manual, Vol. 2, Part F, Chapter 2 (Eligibility Requirements), https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2 (last visited Aug. 11, 2025). To maintain F-1 status, at a minimum a nonimmigrant student must "pursue a full course of study" or "engage in authorized practical training." 8 C.F.R. § 214.2(f)(5)(i); (f)(6)(iii); *see also* §§ (f)(7)(iii) (failure to complete program on time because of academic probation or suspension); (f)(12)(ii) (failure to comply with OPT reporting requirements); (f)(9) (restrictions on employment).

Individuals admitted in F-1 status do not have a set time period for which they are admitted to the United States but instead are permitted to remain in the United States for the duration of status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). During that time, the students use their Form I-20 as proof of their status; for example to apply for a driver's license or other benefits, if available to them. *See* https://studyinthestates.dhs.gov/students/prepare/students-

and-the-form-i-20 ("Applying for Benefits") (last visited Aug. 11, 2025). The Form I-20 "proves that [the student is] legally enrolled in a program of study in the United States." *Id.* The Form I-20 includes an end-date for the program of study. *See* USCIS Policy Manual, Vol. 2, Part F, Chapter 8 (Change of Status, Extension of Stay, and Length of Stay) ¶C.1, https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8 (last visited Aug. 11, 2025). A Designated School Official ("DSO") can revise the end date and print a new I-20 for the student. *See* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/manage-program-dates-registration-and-course-load/manage-initial (last visited Aug. 11, 2025). If an F-1 student stays beyond their authorized end date, including any grace period, they may be considered to be failing to maintain their nonimmigrant status. https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8 (last visited Aug. 11, 2025).

An F-1 student admitted for the duration of status, who receives a decision from USCIS (through reinstatement or application for a change of status or other immigration benefit) concluding that he or she violated his or her nonimmigrant status will begin to accrue unlawful presence the day after that request is denied. *See* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," https://www.uscis.gov/sites/default/files/document/memos/revision_redesign _AFM.PDF (last visited Aug. 11, 2025); *see also* 8 C.F.R. § 239.3.

## B.    The Student and Exchange Visitor Information System (SEVIS)

SEVIS is "a law enforcement system of records." Stinson Decl. Ex. A, 86 Fed. Reg. at 69,668. It is the most recent iteration of a system created pursuant to a

Congressional mandate that "[t]he [Secretary of Homeland Security],[3] in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). SEVIS "is a web-based system" that DHS "uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." *See* "ICE, Student and Exchange Visitor Information System," found online at: https://www.ice.gov/sevis/overview (last visited Aug. 11, 2025).

In 8 U.S.C. § 1372, Congress described the system of records that should be used to maintain information about F, J, and M students. It is separate from the nonimmigrant statuses described in 8 U.S.C. § 1101(a)(15)(F), (M), and (J). Nor does § 1372 equate the records in the system to nonimmigrant status. Similarly, § 1372 does not state that the system of records is a method to adjudicate or terminate nonimmigrant status. Indeed, nonimmigrant status existed long before SEVIS. Further, Congress mandated that ICE shall administer the program to collect

---

[3] 8 U.S.C. § 1372 refers to the Attorney General, but Congress transferred those functions to DHS in the Homeland Security Act of 2002.

information on nonimmigrant foreign students described in § 1372 and "shall use" the information collected in SEVIS "to carry out the enforcement functions of the agency," 6 U.S.C. § 252(a)(4), but it does not say that the system of records is the enforcement mechanism. SEVIS is a database of information.

Consistent with § 1372 and the nature of SEVIS as a database, in 2021, in accordance with the Privacy Act of 1974, DHS "modif[ed], rename[d] and reissue[d]" its database under § 1372 as "DHS/ICE-001 Student and Exchange Visitor Information System (SEVIS) System of Records." *See* Stinson Decl. Ex. A, 86 Fed. Reg. at 69,663. That Federal Register System of Records Notice explained that "[t]he purpose of this system of records is to maintain the integrity of the U.S. immigration system by collecting, maintaining, and analyzing information so that only bona fide nonimmigrant students or exchange visitors gain entry to the United States and that institutions accepting nonimmigrant students are legitimate and certified and adhere to the federal rules and regulations that govern them." *Id.* at 69,664. It further explained that DHS and the State Department use the system for various purposes, some of which relate to the students themselves and some of which are school-specific, including:

- "validat[ing] the identity of F/M/J nonimmigrants, federal government personnel, and school and program officials to ensure data integrity, accuracy, and proper data matching";

- "*facilitat[ing] and support[ing] determination activities* related to admissibility into the United States and the eligibility and status of benefits";

- "decid[ing] whether to certify a school or designate an EV Program so that F/M/J nonimmigrants may enroll or participate in the U.S.-based school or program";

- "*support vetting of F/M/J nonimmigrant*s and their dependents and school and program officials" through the use "supplemental information such as open-source media (*e.g.,* publicly available information in newspaper articles, school websites, government websites, social media sites and blogs, online forums)";

- "*monitor[ing] the compliance* of F/M/J nonimmigrants, schools, programs, and school and program officials with immigration laws and regulations";

- "*perform[ing] administrative and criminal investigations* related to the participation of F/M/J nonimmigrants, school and EV Program sponsors, and the schools and exchange visitor programs that enroll or seek to enroll individuals through the SEVP certification process, and to identify noncompliance with U.S. laws and regulations";

- "create[ing] and provid[ing] reports for analyzing compliance issues and identifying activities and related individuals (if needed) for evidence-based decision-making."

*Id.* at 69,664-665 (emphasis added).

Consistent with these many identified purposes of the SEVIS database and the information therein, SEVIS contains biographical information such as name and date of birth, identity information such as fingerprint information and passports, criminal history, education information, employment information, financial support information, travel records, and case information such as "adjudication determinations; site visit reports; appeals determinations; administrative reviews; and information regarding investigations." *Id.* at 69,665-666. The information contained in SEVIS is obtained from "F/M/J nonimmigrants; proxy, parent, or legal guardians; school officials; program officials; federal and state government personnel; federal agency systems; governing bodies; and members of the public." *Id.* at 69,666.

## FACTUAL BACKGROUND

**A.    Student Criminal Alien Initiative**

In March and April 2025, ICE engaged in what it called the Student Criminal Alien Initiative ("SCAI"). *See* Stinson Decl. Ex. C, May 5 Hr'g Tr. at 61:18-25. As part of that initiative, ICE compared and searched for NCIC records pertaining to international students in the United States. *Id.* at 62:2-13 (Watson); Stinson Decl. Ex. B, April 29 Hr'g 9:2-11 (Watson). ICE's review led it to compile a list of approximately 6,400 students with NCIC records which it sent to State Department for further review and potential action. Stinson Decl. Ex. C, May 5, Hr'g Tr. at 62:11-19, 63:20-64:25, 65:12-15 (Watson); Stinson Decl. Ex. B, April 29, Hr'g Tr. at 11:15-12:15, 14:2-9 (Watson). The State Department made recommendations to terminate SEVIS records in some instances and also revoked over 3,200 visas. Stinson Decl. Ex. C, May 5, Hr'g Tr. at 67:25-68:2 (Watson). Ultimately, about 5,000 SEVIS records were terminated by ICE. *Id.* 66:8-18; 68:12-24 (Watson); Stinson Decl. Ex. D, May 5 Hr'g Tr. at 42:15-16 (Hicks). That corresponds to less than half a percent of the over 1.3 million international students admitted to the United States**.** *Id.* at 62:9-11; (Watson); Stinson Decl. Ex. B, April 29 Hr'g Tr. at 9:2-11 (Watson).

As ICE and USCIS have explained in sworn declarations, the SEVIS record changes were *not* a change to the students' F-1 status. Stinson Decl. Ex. G, Baldwin Decl. ¶ 9; Stinson Decl. Ex. F, Young Decl. ¶ 7. F-1 students are admitted to the United States for duration of status, which is defined by 8 C.F.R. § 214.2(f)(5)(i). Young Decl. ¶ 4. The setting of or change of SEVIS record designation is not an adjudication of the actual F-1 status. *Id.* ¶ 7. Such adjudications occur in connection

with an immigration benefit application or during proceedings before an immigration judge. *Id.* ¶¶ 9, 10.

Ultimately, by May 6, 2025, ICE reactivated the SEVIS records. This was approximately one month after the records were terminated. Stinson Decl. Ex. E, May 6 Watson Decl. ¶¶ 4-5. Critically, ICE did more than simply return the records' designation to "active." It also sent personalized letters to the F-1 students associated with the previously-terminated SEVIS records stating that the return of the SEVIS record to active was retroactive to the date of the termination such that there is no lapse in the record. Stinson Decl. Ex. G, Baldwin Decl. ¶ 15. Since the terminations, ICE also issued a new policy regarding SEVIS terminations in which it states that it will not terminate a SEVIS record based upon a Department of State revocation that is effective upon departure rather than immediately effective. Stinson Decl. Ex. H, ICE April 26, 2025 Policy. ICE has also stated in a sworn declaration that it will not "re-terminate SEVIS records based solely on the NCIC record that led to the initial termination or solely on any related visa revocation that is effective upon departure." Stinson Decl. Ex. G, Baldwin Decl. ¶ 11.

**B.    Plaintiffs' Allegations**

The six named plaintiffs are foreign students who were in the United States in F-1 nonimmigrant student status. Am. Compl. ¶ 3. The SEVIS records concerning them were changed by ICE in April 2025 to show "terminated" rather than "active." Plaintiffs filed a complaint for declaratory and injunctive relief and seeking to certify a class of similarly situated plaintiffs, on April 22, 2025. ECF No. 1. Plaintiffs sought a declaratory judgment that the past termination of the SEVIS records was unlawful.

*Id.* at Prayer ¶ 2. Plaintiffs also sought three types of injunctive relief requiring the following: (1) for DHS to return the SEVIS records and F-1 statuses to active for Plaintiffs; (2) requiring DHS to provide notice and an opportunity to challenge any future terminations of F-1 status and corresponding SEVIS record; and (3) barring the imposition of legal consequences from the SEVIS record terminations or any change to F-1 status during the pendency of the lawsuit without 30 days' notice to the Court and Plaintiffs' counsel. *Id.* ¶¶ 2-5.

Plaintiffs filed an Amended Complaint on June 27, 2025, after each Plaintiff's SEVIS record had been reactivated. ECF No. 56. They added four new DHS defendants. Am. Compl. ¶¶ 55-58. Among other allegations, Plaintiffs challenged "event history" notations in their SEVIS records from April 2025 as a source of potential injury. *See, e.g., id.* ¶¶ 23-25. They also challenged the April 26 Policy as a source of potential injury. *See, e.g., id.* ¶¶ 26-34. In their Amended Complaint, Plaintiffs seek certification as a class and two declarations for themselves and the class: (1) that the past termination of the SEVIS records was unlawful; and (2) that the April 26 Policy is unlawful. *Id.*, Prayer for Relief ¶¶ 2-4. Further, they seek four types of injunctive relief regarding SEVIS records for themselves and the class: (1) requiring DHS to return the SEVIS records and F-1 statuses to active; (2) requiring DHS to provide notice and an opportunity to challenge any future terminations of F-1 status and corresponding SEVIS record; (3) barring the imposition of legal consequences from the SEVIS record terminations or any change to F-1 status during the pendency of the lawsuit without 30 days' notice to the Court and Plaintiffs'

counsel; and (4) an injunction limiting SEVIS termination to circumstances "when (1) none of the three grounds for termination under 8 C.F.R. § 214.1(d) have been met, and (2) they have not failed to maintain status for the reasons outlined in 8 C.F.R. § 214.1(e)-(g) and 8 C.F.R. § 214.2(f)." *Id.*, Prayer for Relief ¶¶ 5-8.

## STANDARD OF REVIEW

"At all stages of litigation, a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings. To demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury. And if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021).

Furthermore, a claim for declaratory relief alone will not preserve standing because the Declaratory Judgment Act does not confer jurisdiction. *California v. Texas*, 593 U.S. 659, 672 (2021). "To consider the matter from the point of view of another standing requirement, namely, redressability, makes clear that the statutory language alone is not sufficient." *Id.* at 671. That is because "[r]emedies … operate with respect to specific parties" and not "on legal rules in the abstract." *Id.* at 672 (quotations/citations omitted); *see also Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding"). Thus, "[t]o determine whether an injury is redressable, a court will consider the

relationship between the judicial relief requested and the injury suffered." *California*, 593 U.S. at 671 (quotations/citations omitted). Accordingly, the Supreme Court's "cases have consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future." *California*, 593 U.S. at 671-72 (collecting cases) (emphasis original). "In the absence of contemporary enforcement … a plaintiff claiming standing must show that the likelihood of future enforcement is '*substantial*.'" *California*, 593 U.S. 670-71 (2021) (emphasis added), citing *Susan B. Anthony List* v. *Driehaus*, 573 U. S. 149, 164 (2014). This doctrine is rooted in the principle that federal courts cannot issue advisory opinions. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.") (citations/quotations omitted); *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("Federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.") (quotations/citations omitted).

In short, "[m]ootness demands that there be something about the case that remains alive, present, *real*, and *immediate* so that a federal court can provide redress in some palpable way. *Gagliardi*, 889 F.3d at 733 (emphasis added). A plaintiff's "personal stake in the action" is eliminated when there is no "persisting redressable injury." *NAGE, Inc. v. Yellen*, 120 F.4th 904, 911 (1st Cir. 2024). Claims "based

on…past injuries" can become moot when circumstances change. *Id.*; *see Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017).

Standing also requires that "the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "And when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Id*. There can be no standing based on a "speculative chain of possibilities" insufficient to establish injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

## **ARGUMENT**

## I.    THIS CASE MUST BE DISMISSED BECAUSE IT IS MOOT OR OTHERWISE NON-JUSTICIABLE

### A.    Plaintiffs' Request to Have the SEVIS Records Reactivated Has Been Redressed

Plaintiffs initiated this litigation because the SEVIS records about them had been changed from active designation to terminated. ECF No. 1. Plaintiffs sought, from the outset, to have those records returned to active designation, ECF No. 1, Prayer ¶¶ 2-3, and they still request that same relief, Am. Compl., Prayer ¶¶ 3, 5. However, ICE completed that months ago. *See* Stinson Decl. Ex. E, May 6 Watson Decl. ¶ 5; Stinson Decl. Ex. G, Baldwin Decl. ¶ 12. Thus, the Plaintiffs' request for relief that the SEVIS records be returned to active cannot be redressed by the Court because it has already been redressed by ICE. *Save Long Beach Isl. v. U.S. Dep't of Comm.*, 721 F. Supp. 3d 317, 338 (D.N.J. 2024) ("Plaintiffs' proposed relief would have the Court enter a judgment that would have no meaningful effect, as the ITAs no

14

longer apply to the Defendants."); *see also Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (court can "provide no effective remedy" when "a party has already obtained all the relief that it has sought").

To the extent Plaintiffs argue that the record change is insufficient because the database record history shows that the record had been terminated at one point, ICE has also addressed that concern. ICE has stated under oath that the reactivation is retroactive. Stinson Decl. Ex. E, May 6 Watson Decl., ¶ 7; Stinson Decl. Ex. G, Baldwin Decl. ¶ 13. Further, upon Order of this Court, ICE also placed a notation stating that the reactivation is retroactive in each Plaintiff's SEVIS record. ECF No. 43. ICE also sent individualized letters to each Plaintiff stating that the reactivation of the SEVIS record is retroactive to the date of record termination. Stinson Decl. Ex. G, Baldwin Decl. ¶ 15.

Plaintiffs insist that the "event history" from April 2025 in each SEVIS record "remains visible and unchanged; the notations reading that the students were 'identified in criminal records check,' . . . are visible to SEVIS users" and "pose irreparable harm." Am. Compl. ¶¶ 23-25. Such alleged harm also is abrogated by the course of events here and, at any event, is too speculative to create a live controversy. As an initial matter, Plaintiffs acknowledge that the April 2025 event history notations in SEVIS, a law enforcement database, arise from a different federal law enforcement database, the NCIC, to which the State Department and DHS had recourse. Am. Compl. ¶ 19; *see* Baldwin Decl. ¶ 6. And even with the event history notations in the SEVIS records (and the underlying information remaining in the

NCIC), ICE reactivated each SEVIS record and stated several times that the agency "will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination[.]" Baldwin Decl. ¶ 11. Plaintiffs thus have received relief with respect to any prior negative effects from the event history notes and have written documents from ICE to explain the reactivation. Plaintiffs still urge that other negative effects could flow from the notes. Am. Compl. ¶ 101 ("they continue to face the risk of enforcement by CPB, denial of visas by DOS, and/or denial of status adjustments or extensions by USCIS"). These, however, are a "speculative chain of possibilities[,]" *Clapper*, 568 U.S. at 414, not an "actual or imminent" injury, *Alliance for Hippocratic Med.*, 602 U.S. at 381.

Thus, as to the SEVIS record itself, there are no redressable issues before this Court.

**B.    Plaintiffs have F-1 Status and Never Lost It**

Plaintiffs alleged in their Amended Complaint that ICE "effectively" terminated their F-1 student status and then reflected those status terminations in the SEVIS records about them. *See, e.g.,* Am. Compl. ¶¶ 1, 20, 74. Plaintiffs argue the SEVIS record and status are inextricably linked. *See, e.g.,* Am. Compl. ¶ 67; ECF 2-1, Pls.' TRO Memo. at 6-7. These allegations are based upon a misunderstanding of SEVIS, as explained in more detail below. But even if this Court were to accept as true Plaintiff's allegations that the SEVIS record and F-1 status are inextricably linked, reactivation of the SEVIS record would thus reflect reactivation of the F-1 student status, and because the SEVIS record has been reactivated, so too then,

under Plaintiffs' theory, has their F-1 status, making the claims moot. *Bromley*, 862 F.3d at 335.

However, the reality is that Plaintiffs never lost their F-1 status and the request to restore it was never redressable, as shown by the evidence of record. First, declarations from ICE and USCIS show that a SEVIS record termination is not a termination of F-1 *status*. *See* Stinson Decl. Ex. G., Baldwin Decl. ¶ 9; Stinson Decl. Ex. F, Young Decl. ¶ 7. The Young Declaration explains ways in which F-1 nonimmigrant *status* could be terminated or adjudicated. *See* Stinson Decl. Ex. F, Young Decl. ¶¶ 8-10. None of those actions are alleged to have occurred here.

Those declarations are entirely consistent with other evidence of record concerning SEVIS. First, SEVIS is a law enforcement database that contains records about foreign nationals, schools, designated school officials, and others involved in the student nonimmigrant programs. Stinson Decl. Ex. A, 86 Fed. Reg. at 69,668. It is a tool used by DHS and Department of State to support other functions, and those functions were explained publicly in the Federal Register on December 8, 2021, over three years before the actions that led to this litigation. *See id.; see also* https://studyinthestates.dhs.gov/schools/report/maintaining-accurate-sevis-records (last visited Aug. 11, 2025). That Notice describes SEVIS's use as "validat[ing] the identity of F/M/J nonimmigrants"; "*facilitat[ing] and support[ing] determination activities* related to admissibility into the United States and the eligibility and status of benefits"; "*support vetting of F/M/J nonimmigrant*s and their dependents and school and program officials"; "*monitor[ing] the compliance*" with immigration laws

and regulations; *"perform[ing] administrative and criminal investigations* related to the participation of F/M/J nonimmigrants, school and EV Program sponsors, and the schools and exchange visitor programs"; "create[ing] and provid[ing] reports for analyzing compliance issues and identifying activities and related individuals (if needed) for evidence-based decision-making." Stinson Decl. Ex. A, 86 Fed. Reg.at 69,664-665 (emphasis added). This Notice does not suggest that SEVIS is a method by which ICE can adjudicate F-1 student status. Indeed, the only evidence Plaintiffs have ever presented to show that their F-1 student *status* was "terminated" are communications from their schools, not DHS.

In fact, the evidence shows that the SEVIS record and F-1 student status are *not* inextricably linked: setting the SEVIS record to terminated does not terminate F-1 student status; nor is a SEVIS record terminated only when F-1 student status is terminated. For example, a *school* can terminate a SEVIS record, *see* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited Aug,. 11, 2025), but there is no allegation that in doing so the *school* terminates a student's nonimmigrant *status*; nor is there any evidence that DHS has delegated the authority to terminate nonimmigrant status to schools. Indeed, "termination is not always negative. DSOs can terminate records for several normal, administrative reasons." *Id.* (webpage). Similarly, if a school mistakenly terminates a SEVIS record, it can have that record reactivated by ICE, but there is no indication that the mistaken termination of a record by a school affects the student's nonimmigrant status or that such status must

be remedied after a mistaken termination. *See* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/corrections-and-correction-requests/correction-requests/correct-1 (last visited Aug. 11, 2025). The fact that a school can terminate a SEVIS record without terminating a student's *nonimmigrant status* shows that SEVIS record and status are not inextricably linked.

USCIS's policy on accrual of unlawful presence is in accord. The USCIS Policy Manual explains that "[i]n general, F-1 students admitted for duration of status who violate the terms of their status, begin to accrue unlawful presence *the day after USCIS or an immigration judge determines that they have violated their nonimmigrant status*." Policy Manual Vol. 2, Part F, Chapter 8, section 2.A (emphasis added), https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8 (last visited Aug. 11, 2025). As USCIS explained in a sworn declaration, it does not equate termination of the SEVIS record with termination of immigration status or an adjudication of an immigration benefit, and if USCIS saw that a SEVIS record was terminated and reactivated, it would continue processing a benefit request. Stinson Decl. Ex. F, Young Decl. ¶ 7. Even if USCIS required an explanation of information in the SEVIS record when adjudicating a benefit application (such as a request for work authorization or change or status), it could seek that information from the applicant through a "Request for Evidence" or "Notice of Intent to Deny." *See, e.g.,* 8 C.F.R. 103.2(b)(8). There is no allegation here that any of the plaintiffs have had their status adjudicated by USCIS through a benefit application, or by an immigration judge in immigration proceedings—because they haven't.

19

The declarations are also consistent with information on DHS's website which explains that the I-20 is a student's proof of status, not the SEVIS record. *See* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 ("Your Form I-20 proves that you are legally enrolled in a program of study in the United States. … If you are eligible to apply for a driver's license or a social security number, remember to bring your Form I-20 with you.") (last visited Aug. 11, 2025). Students do not even have access to the SEVIS records about them because SEVIS is a government law enforcement database; SEVIS records are not owned or controlled by the students.

Plaintiffs' confusion that SEVIS record and F-1 status are linked appears to come from the notices sent by some schools stating—incorrectly—that F-1 *status* was terminated with the SEVIS record. *See, e.g.*, Am. Compl. ¶ 81 (stating school discussed limitations and options in light of students being "out of valid status"). But that information was provided by the school, not by DHS. And for that reason this scenario is entirely distinct from the Third Circuit's decision in *Jie Fang v. ICE*, 935 F.3d 172 (3d Cir. 2019), in which ICE conducted a sting operation using a fabricated university to identify visa brokers, and when the operation was complete, ICE informed students who were involved by letter that both their F-1 status and SEVIS record had been terminated. *Id.* at 174-75.

Ultimately, however, the facts of record at this juncture show that the Plaintiffs (and others like them—i.e. F-1 students for whom ICE terminated SEVIS records under the SCAI and who were not placed into removal proceedings) have F-1

status unless and until it is adjudicated otherwise by USCIS or an immigration judge, or the State Department immediately revokes their visa, none of which has occurred here. Thus, to the extent Plaintiffs ever had claims about their F-1 status (and the government maintains they did not), those claims too are moot. *NAGE*, 120 F.4th at 911.

### C.  Plaintiffs Cannot Avoid Mootness with Citation to the Voluntary Cessation Doctrine

Plaintiffs may argue that the case is not moot because the voluntary cessation exception to mootness applies and ICE could terminate the SEVIS records again. "[T]he voluntary-cessation doctrine exists to stop a scheming defendant from trying to immunize itself from suit indefinitely by unilaterally changing its behavior long enough to secure a dismissal and then backsliding when the judge is out of the picture, repeating this cycle until it achieves all its unlawful ends." *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021) (cleaned up). The doctrine is "an evidentiary presumption that the controversy . . . continues to exist," based on "skeptic[ism] that cessation of violation means cessation of live controversy." *Id.* (quoting *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 213-14 (2000) (Scalia, J., dissenting)). Under the voluntary cessation doctrine, the defendant must show that the challenged behavior cannot reasonably be expected to recur. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 96 (2013). Here, Defendants have made that showing through their actions and declarations.

First, Defendants reactivated all affected SEVIS records months ago. Stinson Decl. Ex. E, May 6 Watson Decl. ¶ 5, even though the majority of SEVIS records were

not subject to an injunction at that time.[4] Actions taken only in response to litigation may sometimes be viewed more skeptically, but no such concern exists here because ICE's actions encompassed both records subject to litigation and those that were not, showing that ICE's actions were an all-encompassing policy regardless of litigation status. Indeed, that is entirely consistent with the ICE policy issued on April 26, 2025, shortly before the reactivations. *See* Stinson Decl. Ex. H, Apr. 26, 2025 Policy.

Second, ICE has stated in a declaration that it will not terminate the records again for the same NCIC hit. Stinson Decl. Ex. G, Baldwin Decl. ¶ 11. That is consistent with stipulations of dismissal entered in cases throughout the country in which ICE has agreed not to terminate the SEVIS record again for the same reason. Thus, ICE's actions of stipulating to dismissal on those terms support the credibility of the declaration that states that "ICE will not re-terminate the SEVIS records based solely on the NCIC hits that led to the initial termination." *Id.*

Thus, ICE has shown that the challenged behavior cannot reasonably be expected to recur. *See Already, LLC*, 568 U.S. at 96; *Wayne Educ. Ass'n v. Wayne Bd. of Educ.*, No. 14-492-KSH, 2015 WL 3965600, at *2 (D.N.J. June 30, 2015) ("The Third Circuit instructs that at least two factors are significant to this analysis: (1) the length of time before, and the circumstances under which, the defendant changed the challenged policy; and (2) whether the defendant 'continue[d] to defend not only the

---

[4] The government notes that the Northern District of California subsequently entered a nationwide injunction in a case that was not a class action, even though the SEVIS records had been returned to active weeks before. *See Doe. v. Trump*, No. 25-cv-3140-JSW (N.D. Cal. May 22, 2025) at Dkt. 69.

constitutionality of its prior [policy], but also the need for the former policy.'" *(quoting DeJohn v. Temple Univ.*, 537 F.3d 301, 309 (3d Cir. 2008)).

Plaintiffs do not have a viable argument to the contrary. For example, the Court should reject any argument that the declarations are unreliable because the declarations are made pursuant to 28 U.S.C. § 1746, and as such may be used as evidence in court. *See United States v. 225 Cartons, More or Less of an Article or Drug*, 871 F.2d 409, 414 n.4 (3d Cir. 1989); *see also Freedom from Religion Found., Inc. v. Concord Cmty. Sch.*, 885 F.3d 1038, 1051 (7th Cir. 2018).

If Plaintiffs argue there is a *possibility* that it could recur, that too is insufficient. "We have never held that the doctrine--by imposing this burden [of not reasonably expected to recur] on the defendant--allows the plaintiff to rely on theories of Article III injury that would fail to establish standing in the first place." *Already LLC*, 568 U.S. at 96. Here, an allegation that conduct might potentially recur is too speculative to support standing, particularly in light of the declarations presented and the attenuated chain of possibilities that must first occur. *See Clapper*, 568 U.S. at 409-410 (the "threatened injury must be certainly impending," and "allegations of possible future injury are not sufficient" particularly when the threatened harm is "premised on a highly attenuated chain of possibilities") (quotations/citations omitted). That is particularly true where the conduct that gave rise to the terminations in the first place—NCIC records—is individualized conduct to each Plaintiff that has no constitutional protection. *Compare FBI v. Fikre*, 601 U.S. 234, 242 (2024) (case not moot where conduct that led to No Fly List listing was

constitutionally protected—attending mosque—and of a kind that the plaintiff was likely to repeat).

**D.    Plaintiffs' Request for Forward-Looking Declaratory or Injunctive Relief Is Too Speculative to Avoid the Mootness Doctrine**

The Court should reject Plaintiffs' request for forward-looking declaratory or injunctive relief. First, a claim for declaratory relief alone does not preserve standing. *California*, 593 U.S. at 672. To establish standing, Plaintiffs "need to assert an injury that is the result of … actual or threatened *enforcement*, whether today or in the future." *California*, 593 U.S. at 671-72 (collecting cases) (emphasis original). And a plaintiff "must show that the likelihood of future enforcement is *substantial*." *Id.* at 670-71 (emphasis added) (citations omitted). Plaintiffs cannot make that showing here for the same reasons that the voluntary cessation doctrine does not apply: ICE returned the records to active months ago, ICE has said it will not terminate them again on the same basis, ICE instituted a new policy regarding terminations, and any allegations about future actions are entirely speculative. Furthermore, any such future set of facts is entirely dependent upon Plaintiffs' own behavior. An allegation Plaintiffs may in the future do something (such as failing to maintain status or committing a crime) that may cause ICE to terminate the SEVIS records, is far too speculative to support standing or a declaratory judgment. *Alliance for Hippocratic Med.*, 602 U.S. at 381. There is no "persisting redressable injury" here, and the case is moot. *NAGE*, 120 F.4th at 911.

To the extent Plaintiffs rely on *FBI v. Fikre*, that case does not change the analysis because it turned on the nature of the activity involved. There, the Supreme

Court expressed concern over the likelihood of repetition because the targeted conduct—Fikre's attendance of religious services—was constitutionally protected. *See Fikre*, 601 U.S. at 242 ("To appreciate why [the case is not moot], it is enough to consider one aspect of Mr. Fikre's complaint. He contends that the government placed him on the No Fly List for constitutionally impermissible reasons, including his religious beliefs."). Fikre's conduct—visiting religious establishments—was also of a nature that may recur frequently, making a potential future injury more concrete. Here, there is no such similar conduct. Police encounters and violations of law are not constitutionally protected activities, nor are they activities that (should) recur frequently. *See Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 45 (1st Cir. 2024) (analyzing voluntary cessation doctrine vis-a-vis declaratory judgment claims after *Fikre* and finding claims moot).

In their request for injunctive relief, plaintiffs seek an injunction requiring DHS to comply with certain regulations when adjudicating F-1 student status, including 8 C.F.R. § 214.1(d) and § 214.2(e)-(g). Prayer ¶¶ 5-6. Plaintiffs do not, however, make any showing, let alone a substantial showing, that DHS has not complied with its own regulations (as DHS did not terminate F-1 student status to begin with, as explained *supra*) or that it is not likely to comply with its own regulations in the future. *See California*, 593 U.S. at 671-72 (a plaintiff "must show that the likelihood of future enforcement is *substantial*") (emphasis added); *see also Clarry v. United States*, 85 F.3d 1041, 1050 (2d Cir. 1996) (no standing because no allegation that plaintiffs had been injured by continued enforcement of policy).

25

Indeed, an agency is required to comply with its own regulations. *See Clarry*, 85 F.3d at 1047 (2d Cir. 1996) (explaining *Accardi* doctrine as requiring "that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."). Without a substantial showing, there is no controversy for this Court to address, and those claims are also moot. *See California*, 593 U.S. at 670-71.

Finally, Plaintiffs seek a declaration that the April 26 Policy violates the APA and was unlawfully promulgated. Am. Compl., Prayer ¶ 4. However, Plaintiffs allege no injury from the April 26 Policy, which ICE released while it was also in the process of reactivating their SEVIS records. Thus, any future injury Plaintiffs contend could arise from the April 26 Policy is purely speculative and creates no standing to attack the policy under the APA or the Constitution. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution."); *Clapper*, 568 U.S. at 414. Further, Plaintiffs cannot establish that the April 26 Policy is subject to notice-and-comment rulemaking, which "does not apply" to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b); *see also Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). The April 26 Policy does not "impose new duties" upon any Plaintiff or putative class member, "add language to" the statute, or "amend language in the statute."

*Commonwealth Dep't of Human Servs. v. United States*, 897 F.3d 497, 505 (3d Cir. 2018). Thus, Plaintiff's prayer for relief regarding the April 26 Policy is both speculative and unfounded.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the case for lack of jurisdiction.

Respectfully submitted,

TODD W. BLANCHE
U.S. Deputy Attorney General

ALINA HABBA
Acting United States Attorney
Special Attorney

August 11, 2025                    By:    */ s / John T. Stinson*
JOHN T. STINSON
Assistant United States Attorney
Deputy Chief, Civil Division