**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| Student DOE #1, Student DOE #2, Student DOE #3, Student DOE #4, Student DOE #5, and Student DOE #6, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs,*<br><br>  v.<br><br>Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security, Todd LYONS, Acting Director, U.S. Immigration and Customs Enforcement, Ricky J. PATEL, in his official capacity as Newark Special Agent in Charge, Homeland Security Investigations, U.S. Immigration and Customs Enforcement, John TSOUKARIS, in his official capacity as Newark Field Officer Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, Edward V. OWENS, in his official capacity as Philadelphia Special Agent in Charge, Homeland Security Investigations, U.S. Immigration and Customs Enforcement, Brian McSHANE, in his official capacity as Philadelphia Acting Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, Rebecca C. GONZÁLEZ-RAMOS, in her official capacity as San Juan Special Agent in Charge, Homeland Security Investigations, U.S. Immigration and Customs Enforcement, and Garrett J. RIPA, in his official capacity as Miami Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement,<br><br>    *Defendants.* | Civ. No. 25-cv-2998 (KSH) (AME)<br><br><br><br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

I.      **Introduction**

Last year, this Court granted preliminary injunctive relief to plaintiffs, who are five Rutgers University students and one recent graduate, and are citizens of China or India. Specifically, in D.E. 39, the Preliminary Injunction Order, the Court ordered that pending final judgment, defendants "[s]hall not . . . impose any consequences arising out of [their] prior decision to terminate Plaintiffs' SEVIS records or F-1 status . . . [or] terminate these Plaintiffs' SEVIS records or F-1 status without providing at least 20 days' notice . . . ." (*Id.* at 32-33.) In addition, the Court ordered defendants to restore plaintiffs' SEVIS records retroactive to the original date of termination and notify the Court they had done so by a date certain. (*Id.* at 33.)

The Court's Order set forth the history of this litigation, which is well known to the parties and need not be set forth again. For context here, the Student and Exchange Visitor Information System ("SEVIS") is a "web-based system that the U.S. Department of Homeland Security uses to maintain information regarding" F-1 "students studying in the United States" and their dependents. (D.E. 56, Am. Compl. ¶ 1 & n.2.) The database tracks students' compliance with their "F-1 student status." (*Id.*; *see also* ¶ 61.) "F-1 student status" is a nonimmigrant classification that requires compliance with certain regulatory requirements. *See* 8 C.F.R. §§ 214.1, 214.2. It is separate from the F-1 visa that authorizes admission to the United States upon arrival at a port of entry. (D.E. 56, Am. Compl. ¶¶ 59-60.) The Student and Exchange Visitor Program ("SEVP") "administers the F-1 student program and tracks information on students in F-1 student status through SEVIS." (*Id.* ¶ 61.)

In April 2025, as part of its "Student Criminal Alien Initiative," Immigration and Customs Enforcement ("ICE") ran the names of the 1.3 million noncitizen students in the United

States through the National Crime Information Center ("NCIC") database. (*Id.* ¶ 19.) ICE then terminated the SEVIS records of students that received a "hit" on the NCIC database—including plaintiffs and approximately 6,400 other noncitizen students pursuing degrees in the United States. (*Id.* ¶¶ 19, 21.) ICE acted under its authority to terminate SEVIS status if a student receives a "conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed." 8 C.F.R. § 214.1(g).

In obtaining preliminary relief, plaintiffs showed that a NCIC hit does not necessarily mean that the student has a criminal conviction, and in fact, none of these plaintiffs had one. The NCIC database catalogs *any* contact an individual has with the criminal justice system including, but not limited to, information relating to traffic violations, missing persons, crime victims, or people charged with an offense. (D.E. 56, Am. Compl. ¶ 19 & n.16.) Notwithstanding, Rutgers alerted plaintiffs that their SEVIS records were terminated for "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked." (*Id.* ¶ 7.)

The effect of a SEVIS record termination is drastic; the student must stop his or her education and leave the United States immediately or apply for reinstatement. *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 175-76 (3d Cir. 2019) (quoting 8 C.F.R. § 214.2(f)(5)(iv)). Afraid that their forthcoming degrees, research, time and money, livelihoods, and ability to stay in the United States would be lost, in April of 2025 students across the country—including plaintiffs—filed lawsuits to reactivate their SEVIS records and moved for temporary restraints to enjoin consequences arising out of their SEVIS record terminations.

Shortly before this Court granted the relief set forth above, defendants represented that ICE had reactivated plaintiffs' SEVIS records and circulated a new policy for SEVIS record

terminations (the "April 26 Policy") to SEVP personnel.  The Court granted plaintiffs injunctive relief nonetheless because the prior terminations—and notations that plaintiffs were "identified in criminal records check" and thus failed to maintain status—still appear on their SEVIS records and were causing them ongoing harm.  After the Order was entered, plaintiffs filed an amended complaint, realleging their Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* and Due Process claims and adding new claims that challenge the legality of the April 26 Policy.  (D.E. 56.)

Currently before the Court is defendants' motion to dismiss the amended complaint on grounds that plaintiffs' lawsuit is now moot:

> Plaintiffs have received the relief requested, eliminating redressability.  They have no ongoing injury.  There is no risk that the challenged conduct will recur.  And they cannot show a substantial risk of future injury.  There is no longer any dispute for this Court to decide.  Thus, the Court should dismiss this case for lack of jurisdiction.

(D.E. 83-2, Mtn. to Dismiss, at 1.)

In support of their motion, defendants refiled a declaration of Andre Watson, an Assistant Director of the National Security Division for Homeland Security Investigations within ICE, stating:  "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on NCIC record that led to the initial termination."  (D.E. 83-8, Declaration of Andre Watson ("Watson Decl.") ¶ 6; *see also* D.E. 38.)  Defendants also filed a declaration of Akil Baldwin, the Acting Assistant Director of the National Security Division for Homeland Security Investigations within ICE, which attests:  "Consistent with its new SEVIS policy, ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination or solely on any related visa revocation that is effective upon departure.  However, ICE maintains the authority to terminate a SEVIS record for other reasons, such as if a student

fails to maintain his or her nonimmigrant status after the record is reactivated or engages in other unlawful activity."  (D.E. 83-10, Declaration of Akil Baldwin ("Baldwin Decl.") ¶ 11.)

## II.    Legal Standard[1]

The Constitution empowers federal courts to decide only live "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).  That is, if a plaintiff "manages to secure outside of litigation all the relief he might have won in it . . . a federal court must dismiss the case as moot."  *Fikre*, 601 U.S. at 240.

However, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."  *Already*, 568 U.S. at 91 (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).  Instead, there must be an inquiry as to why the defendant stopped his conduct and whether he is likely to repeat it; "[o]therwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."  *Id.*  A defendant asserting mootness in such a scenario therefore bears the "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again."  *Friends of the Earth, Inc. v. Laidlaw*

---

[1]  In evaluating this Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court accepts plaintiffs' uncontested factual allegations as true.  *FBI v. Fikre*, 601 U.S. 234, 237 & n.1 (2024).  The Court also accepts as true defendants' sworn declarations representing that ICE currently has "no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on NCIC record that led to the initial termination" (D.E. 83-8, Watson Decl. ¶ 6), and that "[c]onsistent with its new SEVIS policy, ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination" (D.E. 83-10, Baldwin Decl. ¶ 11). *See Fikre*, 601 U.S. at 242.

*Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).

Courts have recognized that a defendant's voluntary cessation of challenged conduct does not moot a case "unless subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (citation modified) (quoting *Friends of the Earth*, 528 U.S. at 189); *see Fikre*, 601 U.S. at 241. That is, "[t]o show that a case is truly moot, a defendant must prove 'no reasonable expectation' remains that it will 'return to [its] old ways.'" *Fikre*, 601 U.S. at 241 (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632-33 (1953)).

## III.    Discussion

In opposing this motion, plaintiffs submitted updated declarations on how the fallout from their SEVIS record terminations continue to affect their lives, academic studies, and degree progress. (*See* D.E. 95, Doe #1 3d Decl. ¶¶ 3-7, 11 (F-1 visa revoked, cannot travel internationally, cannot plan for future), D.E. 95-1, Doe #2 3d Decl. ¶¶ 7-9, 12-13 (time-sensitive cancer research "wasted," decided to forgo PhD degree and instead pursue master's degree due to worry that record will be terminated and research will be lost again), D.E. 95-2, Doe #3 3d Decl. ¶¶ 5-12 (missed research paper deadline and professional events due to record termination, cannot plan for future), D.E. 95-3, Doe #4 3d Decl. ¶¶ 6-12, 16 (dissertation defense and PhD graduation postponed due to disruption in research from record termination, fear that current notations will hinder future OPT, H1-B, I-485 applications and background checks), D.E. 95-4, Doe #5 3d Decl. ¶¶ 7-8, 10-11 (F-1 visa revoked, cannot travel internationally and worried about domestic travel, cannot plan for future), D.E. 95-5, Doe #6 3d Decl. ¶¶ 3, 5-9 (two months of research progress lost, postponed exams and applications leading to loss of income for months,

work requires passing background checks and current notations incorrectly imply a criminal record).)

When they argued in support of preliminary injunctive relief at the May 7 hearing, plaintiffs represented that the "single most significant harm" was that their SEVIS records still identify them as having been terminated based on identification in a criminal records check. (D.E. 41, May 7, 2025 Hearing Tr. at 21:2-22:6.)  Moreover, the notations made by ICE that the records have been restored retroactively to the original date of the termination are not viewable to users outside of SEVP personnel.  (*Id.* at 24:13-26:2; *see* D.E. 43, Notice of Compliance.)  To date, those challenged records remain the same.

Defendants do not seriously dispute that plaintiffs' SEVIS records were not restored to the *status quo ante*.  They also do not grapple with the fact that Student Doe #1 and #5's F-1 visas were revoked, apparently as a consequence of their SEVIS record terminations, which effectively prohibits them from leaving the country.  Instead, defendants narrow the type of harm plaintiffs are alleging and claim it has been taken care of:  "Plaintiffs' request for relief that the SEVIS records be returned to active cannot be redressed by the Court because it has already been redressed by ICE."  (D.E. 83-2, Mtn. to Dismiss, at 14.)

This ignores that plaintiffs' prayer for relief actually requests for the Court to "[o]rder Defendants to correct Plaintiff[s'] SEVIS records to reflect that status was never terminated and return plaintiffs to the *status quo ante* wherein they held valid F-1 student status and their records did not reflect any period of termination or residual notations concerning the termination."  (D.E. 56, Am. Compl., Prayer for Relief ¶ 5.)  Plaintiffs also request the Court to enjoin termination of their records for reasons prohibited by the governing regulations.  (*See id.* ¶ 6.)  Thus, it can't be

said that plaintiffs have "secured outside of litigation all the relief they might have won in it."[2] *Fikre*, 601 U.S. at 240 (citation modified); *see also Patel v. Lyons*, 2026 WL 587640, at *8 (D.D.C. Feb. 27, 2026) (reasoning that the plaintiff had not secured "all the relief he might have won in" the litigation since ICE had not "asserted that a comparable future event, such as another non-criminal event that causes [plaintiff] to appear in the NCIC, would not again trigger such impermissible termination").

In *FBI v. Fikre*, 601 U.S. 234 (2024), the Supreme Court dealt with an analogous fact pattern. There, the government placed Yonas Fikre on the No Fly List. *Fikre*, 601 U.S. at 236-37. After he sued, without explanation the government removed his name. *Id.* at 237-39. The government argued that its voluntary actions rendered the lawsuit moot and moved to dismiss it, submitting a declaration that Fikre "will not be placed on the No Fly List in the future based on the currently available information." *Id.* at 239-40. The district court dismissed, but the Ninth Circuit reversed. *Id.* at 240.

In affirming the reversal, the Supreme Court held that the government fell short of satisfying its "formidable burden" to establish mootness because its supporting declaration did not speak "to whether the government might relist [Fikre] if he does the same or similar things in the future." *Id.* at 241-42. As to the government's argument that years had passed without incident since Fikre's delisting, the Court reiterated that "[a] case does not automatically become moot when a defendant suspends its challenged conduct and then carries on litigating for some specified period." *Id.* at 243. The Court reasoned that the key consideration in a voluntary

---

[2] On June 20, 2025, the Court granted limited, expedited discovery as to defendants' technical capabilities to alter students' SEVIS records and remove residual notations. (D.E. 48, 53.) If ICE lacks the capability to completely remove the notations—as defendants represent—plaintiffs have provided theories of alternative relief including "public-facing" notice that the SEVIS terminations were erroneous. (D.E. 94, Opp., at 21.)

cessation mootness analysis is the potential for a defendant to repeat its challenged conduct.  *Id.* at 244.

Defendants here have not carried the heavy burden of establishing that their challenged conduct "cannot 'reasonably be expected to recur.'"  *Id.* at 241 (quoting *Friends of the Earth*, 528 U.S. at 189).  Their supporting declarations, the Watson Declaration—which defendants had previously submitted, and the Court considered in advance of its Preliminary Injunction Order—and the Baldwin Declaration fall short of establishing the required reassurance.  In the Watson Declaration, defendants attest that "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on NCIC record that led to the initial termination." (D.E. 83-8, Watson Decl. ¶ 6.)  The limitation in the latter part of this statement is an obvious hedge.  The Baldwin Declaration similarly hedges that "[c]onsistent with its new SEVIS policy, ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination."  (D.E. 83-10, Baldwin Decl. ¶ 11.)  Then the Baldwin Declaration goes on: "However, ICE maintains the authority to terminate a SEVIS record for other reasons, such as if a student fails to maintain his or her nonimmigrant status after the record is reactivated or engages in other unlawful activity."  (*Id.*)

Neither statement "prevents ICE from altering its 'position' or 'plans' tomorrow—or terminating Plaintiff[s'] SEVIS record[s] based on" their NCIC hits "alongside other inadequate factors."  *Patel*, 2026 WL 587640, at *8.  Indeed, it appears that the Watson and Baldwin Declarations have been offered elsewhere without success.  *See id.* (finding the Watson Declaration "do[es] not make 'absolutely clear' that termination of Plaintiff's SEVIS record because of his dismissed speeding charge or something similarly inadequate 'could not reasonably be expected to recur'" (quoting *Parents Involved*, 551 U.S. at 719)); *Zhou v. Lyons*,

__ F. Supp. 3d __, 2025 WL 3691816, at *6 (C.D. Cal. Nov. 6, 2025) ("Mr. Watson's declaration does not provide assurance that the Government will not invoke the same basis for terminating Plaintiff's SEVIS records in the future, just that it does not plan to right now."); *Roe v. Noem*, 2026 WL 194636, at *5 (D. Mont. Jan. 26, 2026) (finding the "hedging and narrow language" contained within the Watson and Baldwin Declarations "falls short of demonstrating that [defendants] cannot reasonably be expected to do again in the future what [they are] alleged to have done in the past" (quoting *Fikre*, 601 U.S. at 242)).  The Baldwin Declaration's statement that "ICE maintains the authority to terminate a SEVIS record . . . if a student . . . engages in other unlawful activity" shelters in its broad "other unlawful activity" category, the very same practice that occasioned this lawsuit—termination of SEVIS records based on interactions with law enforcement that did not result in criminal convictions.

And the April 26 Policy itself "does little to ensure that the challenged conduct will not recur." *Du v. United States Dep't of Homeland Sec.*, 2025 WL 1549098, at *6 (D. Conn. May 31, 2025) (finding that the April 26 Policy "leaves open the glaring possibility that . . . ICE may invoke a new (but still improper) justification to terminate Plaintiffs' records in the future"). Rather, the April 26 Policy allows for SEVIS record termination when a student fails to comply "with the terms of their nonimmigrant status for any reason" or when a student's visa is revoked by the Department of State (D.E. 83-11, April 26, 2025 Policy, at 1-2), grounds that plaintiffs submit are not supported by any relevant statutory or regulatory text (D.E. 94, Opp., at 29-33). The Court notes that defendants characterized plaintiffs' NCIC hits as a "fail[ure] to maintain status."  The same vague language appears in the April 26 Policy as a basis for termination, which cuts against defendants' argument that "'no reasonable expectation' remains that it will 'return to [its] old ways.'" *Fikre*, 601 U.S. at 241 (quoting *W. T. Grant*, 345 U.S. at 632-33).

10

The defendants' burden is to make "absolutely clear" that termination of plaintiffs' SEVIS records "could not reasonably be expected to recur." *Parents Involved*, 551 U.S. at 719 (quoting *Friends of the Earth*, 528 U.S. at 189). The submissions on their motion leave plaintiffs exposed to having their SEVIS records terminated, and their status threatened, from a combination of the NCIC hits plus an ill-defined category of defendants' choosing. As such, the Court denies their motion to dismiss on grounds of mootness.

## IV.    Conclusion

For the foregoing reasons, defendants' motion to dismiss is denied. An appropriate order accompanies this opinion.


Dated: March 25, 2026                                          */s/ Katharine S. Hayden*
                                                                Katharine S. Hayden, U.S.D.J.